**ML** 65 24 13                                                                A STOCK COMPANY

## MULTI-LINE LIABILITY EXCESS POLICY

### Puritan Insurance Company

ADMINISTRATIVE OFFICE

1515 Summer Street          Stamford, Connecticut 06905

Name of Assured:  GENERAL REFRACTORIES COMPANY

Address:  50 MONUMENT ROAD
BALA CYNWYD, PENNSYLVANIA    19004

Type of Coverage:  EXCESS UMBRELLA LIABILITY

Limits of Liability:  AS PER FORM GL-218 ATTACHED HERETO

Term:
Beginning at  12:01 A.M. on the  1st  day of  AUGUST          1979
and ending at 12:01 A.M. on the  1st  day of  AUGUST          1980
Standard time at the place of location of risks insured, and in accordance with terms and conditions of the form(s) attached
and the Standard Clauses on the reverse side of this page.

Forms:
At time of issuance this Policy contains a ___4___ page insuring Form and Endorsements 1 through ___3___ inclusive. Standard
Clause ___X___ shall not apply.

The Puritan Insurance Company, Stamford, Connecticut, (hereinafter called the Company), agrees with the
assured named above, in consideration of the premium to be paid and subject to the limits of liability. exclusions, condi-
tions and other terms of this policy, to provide insurance as set forth in the form(s) and endorsement(s) attached.

Premium:                          At Inception      1st Anniversary      2nd Anniversary

|  | At Inception | 1st Anniversary | 2nd Anniversary |
|---|---|---|---|
| PREMIUM | $ 45,000 | $    N/A | $    N/A |
|  |  |  |  |
| TOTAL | 45,000 |  |  |

IN WITNESS WHEREOF, this Company has executed and attended these presents; but this policy shall not be valid
unless countersigned by a duly authorized representative of the Company.

*William P. Thornton Jr.*
Secretary

*[signature]*
President

Dated at  PHILADELPHIA, PENNSYLVANIA
this __24th__ day of _____JULY_____, 19_79___  By _____

ORIGINAL POLICY

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $10,500.00 IT IS AGREED

THAT THE NAME OF ASSURED IS AMENDED TO INCLUDE THE FOLLOWING:

ADD: FURNCO CONSTRUCTION CORPORATION

The Effective Date of this Endorsement is     AUGUST 1, 1979                    At PHILADELPHIA, PENNSYLVANIA

All other terms and conditions remain unchanged.

This endorsement is attached to and made a part of   ML 65 24 13

Issued To:     GENERAL REFRACTORIES COMPANY

Broker/Agent:  ROLLINS, BURDICK HUNTER OF PENNSYLVANIA, INC.
               726 PUBLIC LEDGER BUILDING
Address:       PHILADELPHIA, PENNSYLVANIA   19106

Date Of Issue:  9/17/79        By    rn        End No.    4

                                                    By  _Jack Sharp_

SIS-70                                          BACCALA & SHOOP INSURANCE SERVICES

IT IS UNDERSTOOD AND AGREED THAT THE TERMS OF THE LEAD UMBRELLA ISSUED

BY THE FIRST STATE ARE AS FOLLOWS:

        CONTRACTORS LIMITATION ENDT.
        C.C.C. EXCLUSION
        ERISA EXCLUSION
        CONCURRENCY ENDORSEMENT
        ARCHITECTS & ENGINEERS PROFESSIONAL EXCLUSION
        FOLLOW FORM ADVERTISING
        ASBESTOSIS EXCLUSION
        OCCUPATIONAL DISEASE EXCLUSION
        COAL MINE EXCLUSION
        UNDERGROUND MINES EXCLUSION

The Effective Date of this Endorsement is   AUGUST 1, 1979       At PHILADELPHIA, PENNSYLVANIA
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of  ML65 24 13

Issued To:  GENERAL REFRACTORIES COMPANY

Broker/Agent:  ROLLINS, BURDICK HUNTER OF PENNSYLVANIA
             726 PUBLIC LEDGER BUILDING
Address:      PHILADELPHIA, PENNSYLVANIA   19106

Date Of Issue:   8/27/79   By  rn     End No. ORO ENDT.     By _Jack Shoop_
                                                BACCALA & SHOOP INSURANCE SERVICES

BSIS-70

## SEEPAGE & POLLUTION ENDORSEMENT CLAUSE

THIS POLICY SHALL NOT APPLY TO PERSONAL INJURY OR PROPERTY DAMAGE ARISING
OUT OF THE DISCHARGE, DISPERSAL, RELEASE OR ESCAPE OF:

1. SMOKE, VAPORS, SOOT, FUMES, ACIDS, ALKALIS, TOXIC CHEMICALS,
   LIQUIDS OR GASES, WASTE MATERIALS OR OTHER IRRITANTS,
   CONTAMINANTS OR POLLUTANTS INTO OR UPON LAND, THE ATMOSPHERE
   OR ANY WATERCOURSE OR BODY OF WATER, BUT THIS EXCLUSION DOES
   NOT APPLY IF SUCH DISCHARGE, DISPERSAL, RELEASE OR ESCAPE IS
   SUDDEN AND ACCIDENTAL:

2. OIL OR OTHER PETROLEUM SUBSTANCE OR DERIVATIVE (INCLUDING ANY
   OIL REFUSE OR OIL MIXED WITH WASTES) INTO OR UPON ANY WATER-
   COURSE OR BODY OF WATER, WHETHER OR NOT SUCH DISCHARGE,
   DISPERSAL, RELEASE OR ESCAPE IS SUDDEN AND ACCIDENTAL.

The Effective Date of this Endorsement is    AUGUST 1, 1979          At PHILADELPHIA, PENNSYLVANIA
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of   ML 65 24 13

Issued To:   GENERAL REFRACTORIES COMPANY

Broker/Agent:   ROLLINS, BURDICK HUNTER OF PENNSYLVANIA, INC.
                726 PUBLIC LEDGER BUILDING
Address:        PHILADELPHIA, PENNSYLVANIA    19106

Date Of Issue:   7/24/79      By   rn          End No.   3          By _____

BSIS-70                                                      BACCALA & SHOOP INSURANCE SERVICES

EMPLOYEE RETIREMENT AND INCOME SECURITY ACT
EXCLUSION ENDORSEMENT


IN CONSIDERATION OF THE PREMIUM CHARGED, SUCH INSURANCE AS IS
AFFORDED BY THIS POLICY SHALL NOT APPLY WITH RESPECT TO ANY
CLAIM OR CLAIMS BROUGHT ABOUT AS A RESULT OF ANY VIOLATION OF
ANY RESPONSIBILITIES, OBLIGATIONS OR DUTIES IMPOSED UPON FIDU-
CIARIES BY THE EMPLOYEE RETIREMENT AND INCOME SECURITY ACT OF
1974 OR AMENDMENTS THERETO.


THE EFFECTIVE DATE OF THIS ENDORSEMENT IS AUGUST 1, 1979        AT   LOS ANGELES, CALIFORNIA

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS ENDORSEMENT IS ATTACHED TO AND MADE A PART OF   ML 65 24 13


ISSUED TO:   GENERAL REFRACTORIES COMPANY

BROKER/AGENT:   ROLLINS, BURDICK HUNTER OF PENNSYLVANIA, INC.
                726 PUBLIC LEDGER BUILDING
ADDRESS:        PHILADELPHIA, PENNSYLVANIA   19106

DATE OF ISSUE:   7/24/79        BY  rn        END NO.  2        BY _____

SIS 64                                                BACCALA & SHOOP INSURANCE SERVICES

# CANCELLATION FOR
# NON-PAYMENT OF PREMIUM

It is agreed that irrespective of any other terms or conditions contained in this policy or endorsements attached thereto, this policy may be cancelled by the company, or by Baccala & Shoop Insurance Services, in their behalf, for non-payment of any unpaid portion of the premium by delivering to the insured or by sending to the insured by mail, registered or unregistered, at the insured's address as shown herein, not less than ten days written notice stating when the cancellation shall be effective.

All other terms and conditions remain unchanged.

The effective date of this endorsement is:   AUGUST 1, 1979

This endorsement is attached to and made a part of Policy No.   ML 65 24 13

Issued To:   GENERAL REFRACTORIES COMPANY

Broker/Agent:   ROLLINS, BURDICK HUNTER OF PENNSYLVANIA, INC.

Address:       726 PUBLIC LEDGER BUILDING
               PHILADELPHIA, PENNSYLVANIA   19106

Date of Issue:   JULY 24, 1979

END. No:     1

BY _____

Baccala & Shoop Insurance Services

## PURITAN INSURANCE COMPANY

---

### EXCESS UMBRELLA LIABILITY

NAMED ASSURED:   As stated in Item 1 of the Declarations forming a part hereof
GENERAL REFRACTORIES COMPANY
and/or subsidiary associated, affiliated companies owned or
controlled companies as now or hereafter constituted and of
which prompt notice has been given to the Company.

### INSURING AGREEMENTS

I.   COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions
hereinafter mentioned, to indemnify the Assured for all sums which the Assured
shall be obligated to pay by reason of the liability

(a) imposed upon the Assured by law, or

(b) assumed under contract or agreement by the Named Assured and/or any officer,
director, stockholder, partner or employee of the Named Assured while acting
in his capacity as such,

for damages, direct or consequential and expenses on account of:

(i)    Personal Injuries, including death at any time resulting therefrom,

(ii)   Property Damage,

(iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and
arising out of the hazards covered by and as defined in the Underlying Umbrella
Policies stated in Item 2 of the Declarations and issued by FIRST STATE INSURANCE
COMPANY
(hereinafter called the "Underlying Umbrella Insurers").

II.  LIMIT OF LIABILITY - UNDERLYING LIMITS.

It is expressly agreed that liability shall attach to the Company only after the
Underlying Umbrella Insurers have paid or have been held liable to pay the full
amount of their respective ultimate net loss liability as follows:

$   (as stated in Item 3    ultimate net loss in respect each occurrence, but
of the Declarations)

$   (as stated in Item 4    in the aggregate for each annual period during the
of the Declarations)       currency of this Policy separately in respect of
Products Liability and separately in respect of
Personal Injury (fatal or non-fatal) by Occupational
Disease sustained by any employee of the Assured.

and that the Company shall then be liable to pay only the excess thereof up to
a further

GL-218                                (1)

$   (as stated in Item 5        ultimate net loss in all respect of each
     of the Declarations)        occurrence subject to a limit of

$   (as stated in Item 6        in the aggregate for each annual period during
     of the Declarations)        the currency of this policy separately in respect
                                 of Products Liability and separately in respect
                                 of Personal Injury (fatal or non-fatal) by Occu-
                                 pational Disease sustained by any employee of
                                 the Assured.

## CONDITIONS

I.  PRIOR INSURANCE AND NON CUMULATION OF LIABILITY

It is agreed that if any loss covered hereunder is also covered in whole or in
part under any other excess Policy issued to the Assured prior to the inception
date hereof, the limit of liability hereon as stated in Items 5 and 6 of the
Declarations shall be reduced by any amounts due to the Assured on account of
such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions
of this Policy in the event that personal injury or property damage arising
out of an occurrence covered hereunder is continuing at the time of termination
of this Policy, the Company will continue to protect the Assured for liability in
respect of such personal injury or property damage without payment of additional
premium.

2.  MAINTENANCE OF UNDERLYING UMBRELLA

This policy is subject to the same terms, definitions, exclusions and conditions
(except as regards the premium, the amount and limits of liability and except as
otherwise provided herein) as are contained in or as may be added to the Under-
lying Umbrella Policies stated in Item 2 of the Declarations prior to the happening
of an occurrence for which claim is made hereunder.

It is a condition of this Policy that Underlying Umbrella Policies shall be
maintained in full effect during the currency hereof except for any reduction of
the aggregate limits contained therein solely by payment of claims in respect of
accidents and/or occurrences occurring during the period of this Policy.

3.  CANCELLATION

This policy may be cancelled by the Named Assured or by the Company or its repre-
sentatives by mailing written notice to the other party stating when, not less than
thirty (30) days thereafter, cancellation shall be effective.  The mailing of notice
as aforesaid by the Company or its representatives to the Named Assured at the ad-
dress shown in this Policy shall be sufficient proof of notice, and the insurance
under this Policy shall end on the effective date and hour of cancellation stated in
the notice.  Delivery of such written notice either by the Named Assured or by the
Company shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured, the Company shall retain the
customary short rate proportion of the premium for the period this Policy has been
in force.  If this Policy shall be cancelled by the Company, the Company shall retain
the pro rata proportion of the premium for the period this Policy has been in force.
Notice of cancellation by the Company shall be effective even though the Company
makes no payment or tender of return premium.

The following person is expected to have information about matters relating to alleged asbestos-related claims of the General Refractories Company ("GRC") under the Great Southwest Fire Insurance Company ("Sentry") policy and information on the terms and conditions of the Sentry policy.  Contact with this individual should be made through Sentry's counsel.

    (1)    Ron Plaster
              Sentry Claims Service
              P.O. Box 8032
              Stevens Point, Wisconsin 54481-8032
              800-739-3344

The following persons are expected to have information about asbestos claims pending against GRC, communications pertaining to certain alleged asbestos-related claims against GRC, and GRC's relevant insurance coverage.

    (2)    Barry Katz, Esq.
              Attorney for Plaintiff
              225 City Avenue, Suite 14
              Bala Cynwyd, PA 19004
              610-660-8806

    (3)    General Refractories corporate designees

    (4)    GRC's defense counsel in the underlying asbestos litigation

The following persons are likely to have information concerning the solicitation, negotiation and procurement of policies of insurance allegedly issued to GRC in this litigation:

    (5)    Insurance brokers to be identified through discovery

The following persons are likely to have information about regulatory practices and requirements of the Pennsylvania Insurance Department during the time period relevant hereto.

    (6)    David F. Wulf
              Pennsylvania Department of Insurance
              (current address is unknown)

MICHIGAN       Assured, if the Assured shown that it was not reasonably possible to
(Cont.)        give such notice within that prescribed time and that notice was given
               as soon as was reasonably possible."
               Condition 6., BANKRUPTCY AND INSOLVENCY, is added as follows:  "The
               insolvency or bankruptcy of the Assured will not relieve the Company of
               its liability for injury sustained or loss occasioned during the term of
               this policy.  In the event execution of judgement against the Assured is
               returned unsatisfied because of such insolvency or bankruptcy, then the
               injured party or his legal respresentative(s) may maintain such action
               against the Company for the amount of the judgement, not to exceed the
               limits of liability stated in this policy."

NEW YORK:      The definition of NAMED ASSURED, is amended by the addition of the following
               words:  "and/or officer, directors, stockholders, partners of the Assured
               while acting within the scope of their duties as such and of which prompt
               notice has been given to the Company."
               The section entitled, EXCLUSIONS, is added as follows:  "This policy shall
               not apply ~ 1.  to any liability arising out of the violation of any statute,
               law or regulation prohibiting discrimination or humiliation because of race,
               color, creed or national origin; 2.  to the liability of the Assured here-
               under for any loss, damage or expense caused intentionally by or at the
               direction of the Named Assured."

ATTACHED TO AND FORMING A PART OF POLICY:    ML 65 24 13

ISSUED TO:  GENERAL REFRACTORIES COMPANY

DATED AT:  PHILADELPHIA, PENNSYLVANIA        BY _____
                                                    Jack Sharp
                                                Authorized Representative

GL-218  (2/78)                    (4)

## REINSURANCE CHECKLIST

| | COMPANY | LIMITS | GROSS PREMIUM | COMMISSION + PERCENT − | | COMMISSION + AMOUNT − |
|---|---|---|---|---|---|---|
| **Orig.** | 07-01000 | 4m x 1m x u/c | 10,500 | 25 | / | 2625 |
| **Retention** | | 37.5% | | | | |
| **Cession** | | 62.5% | | / | 30 | 1968.75 |
| **Assumptions** | Facility BS15 / Facility Code 99 / Reinsurer Greitens / Ident. # 000400 / Cert. # 21-21881 | 1.5m P/o 4m x 1m x u/c | 3937.50 | 25 | / | 984.38 |
| | Facility BS15 / Facility Code 99 / Reinsurer Allstate / Ident. # 00035 / Cert. # 62042519 | 1m P/o 4m x 1m x u/c | 2625 | 25 | / | 656.25 |
| | Facility _____ / Facility Code _____ / Reinsurer _____ / Ident. # _____ / Cert. # _____ | | | | | |
| | Facility _____ / Facility Code _____ / Reinsurer _____ / Ident. # _____ / Cert. # _____ | | | | | |
| | Facility _____ / Facility Code _____ / Reinsurer _____ / Ident. # _____ / Cert. # _____ | | | | | |
| | Facility _____ / Facility Code _____ / Reinsurer _____ / Ident. # _____ / Cert. # _____ | | | | | 4265.63 / 1968.75 |

**Gross Commission** 2296.88

NAMED INSURED.
General Refractories Co.
ML 65 2413
8/1/79 - 80

Original Entry ☐   Endorsement ☒   10
Endorsement # ___4___

Net
11.9%

Producers Comm. 1050

Policy Fee +

Override 1246.88

-39 (Rev. 3/79)

REINSURANCE CHECKLIST

| | COMPANY | LIMITS | GROSS PREMIUM | COMMISSION + PERCENT − | | COMMISSION + AMOUNT − |
|---|---|---|---|---|---|---|
| **Orig.** | 07-01000 | 4m x 1m x u/L | 45,000 | 25 | | 11,250 |
| **Retention** | | 37.5% | 16875 | | | |
| **Cession** | | 62.5% | 28,125 | | 30 | 8437.50 |
| **Assumptions** | Facility BSIS<br>Facility Code 99<br>Reinsurer Gerling<br>Ident. # 00046<br>Cert. # 71-21881 | 1.5m P/o 4m x 1m x u/L | 16875 | 25 | | 4218.75 |
| | Facility BSIS<br>Facility Code 99<br>Reinsurer Allstate<br>Ident. # 00035<br>Cert. # 62042519 | 1m P/o 4m x1m x u/L | 11250 | 25 | | 2812.50 |
| | Facility ___<br>Facility Code ___<br>Reinsurer ___<br>Ident. # ___<br>Cert. # ___ | | | | | |
| | Facility ___<br>Facility Code ___<br>Reinsurer ___<br>Ident. # ___<br>Cert. # ___ | | | | | |
| | Facility ___<br>Facility Code ___<br>Reinsurer ___<br>Ident. # ___<br>Cert. # ___ | | | | | |
| | Facility ___<br>Facility Code ___<br>Reinsurer ___<br>Ident. # ___<br>Cert. # ___ | | | | | 7828.25 | 8437.50 |

NAMED INSURED

General Refractories Company
ML 65 2413
8/1/79 - 8/1/80

(Rev. 3/79)

Original Entry ☒ Endorsement ☐

Endorsement # _____

NET
11.9%

Page _____ of _____

| | |
|---|---|
| | 9843.75 |
| | Gross Commission |
| 10% | 4500 |
| | Producers Comm. |
| + | ____ |
| | Policy Fee |
| | 5343.75 |
| | Override |



CERTIFICATE OF FACULTATIVE REINSURANCE     71- 21881

# GERLING GLOBAL REINSURANCE CORPORATION

UNITED STATES BRANCH                C/O Baccala & Shoop Inc.
717 Fifth Avenue, New York, N. Y. 10022          Philadelphia, Pa.

(herein called the "Reinsurer")

## DECLARATIONS (Items 1 through 8)

1. Does hereby reinsure_____**Puritan Insurance Company**_____
   Name and Address of Ceding Company

   (herein called the Company) in respect of the Company's policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein, as follows:

2. Name of Insured:_____**General Refractories Company**_____

3. Company Policy No.:___**ML 65 24 13**___  Address of Insured ___**Bala Cynwyd, Pa.**___
   City and State

   Effective From: _____**August 1, 1979**_____ To: _____**August 1, 1980**_____
   (12:01 A. M. Standard Time at the Address of the Insured)

4. Reinsurance Period: From___**August 1, 1979**___ To:___**August 1, 1980**___
   (12:01 A. M. Standard Time at the Address of the Insured)

5. DETAILS OF REINSURANCE AFFORDED:

| SECTION 1. TYPE OF INSURANCE | SECTION 2. POLICY LIMITS AND APPLICATION | SECTION 3. COMPANY RETENTION | SECTION 4. REINSURANCE ACCEPTED | SECTION 5. BASIS OF ACCEPTANCE |
|---|---|---|---|---|
| Excess Umbrella Liability | $4,000,000 each occurrence/annual aggregate where applicable excess $1,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or S.I.R. | $1,500,000 part of $4,000,000 each occurrence/annual aggregate where applicable excess $1,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or S.I.R. | $1,500,000 part of $4,000,000 each occurrence/annual aggregate where applicable excess $1,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or S.I.R. | ☐ Excess of Loss  ☒ Contributing Excess  ☐ Non-Concurrent |

6. Reinsurance Premium Computation

   ☒ Flat Charge

   ☐ Adjustable on Basis of_____ per_____

   Deposit Premium $  16,875.00                    Minimum Premium $  16,875.00

## PREMIUM IF PAID IN INSTALLMENTS

| EFFECTIVE DATE | 1st ANNIVERSARY | 2nd ANNIVERSARY | TOTAL PREMIUM → | $ |
|---|---|---|---|---|
|  |  |  |  |  |

7. Audit Period:  none

8. Ceding Commission:  27½%

8/21/79
af

GERLING GLOBAL OFFICES INC.
U. S. Manager

WDT59
9-17-79

................................................
Authorized Signature

CERT. 1 Rev. 4/77

COPY

). The Company warrants to retain for its own account, subject to other Reinsurance, the amount of liability specified in Section 3, Item 5 of Declarations, and the liability of the Reinsurer specified in Section 4, Item 5 of Declarations shall follow that of the Company and except as otherwise specifically provided herein, or designated as non-concurrent reinsurance in the Declarations, shall be subject in all respects to all the terms and conditions of the Company's policy. In no event shall anyone other than the Company, or in the event of the Company's insolvency, its Receiver, Liquidator, or Statutory successor, have any rights of assignment of rights under this contract. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of the Reinsurer, at reasonable times, any of its records relating to this reinsurance or claims in connection therewith.

10. The Company shall notify the Reinsurer promptly, in writing, of any occurrence which in the Company's estimate of the value of the injuries or damages sought, without regard to liability, might result in a judgement in an amount sufficient to involve this Certificate, or wherein the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention as specified in Section 3, Item 5 of Declarations, or if this reinsurance applies on a contributory excess basis, when notice of claim is received by the Company. The Company will further advise the Reinsurer of subsequent developments, in writing, in a complete and timely manner. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel, at its own expense, and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate, if not excluded in other parts of this Certificate.

11. Reinsurer shall pay its proportion of expenses, other than Company salaries and office expenses incurred by the Company in the investigation and settlement of claims or suits provided loss payment is made by the Company affecting this Certificate, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, and with the prior notice to and consent of Reinsurer to trial, court proceedings, its proportion of court costs and interest on any judgement or award.

12. Payment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following the receipt of proof of loss.

13. The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e.; reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

14. The Company undertakes not to claim any deduction in respect of the premium herein when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or the District of Columbia.

15. In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its Receiver, Liquidator, or Statutory successor pursuant to the Statute of any State of the United States having jurisdiction and to the extent that such reinsurance as is afforded hereunder may be credited to the Company as an admitted asset or deduction from liability, it being understood that subject to such amendment, the Reinsurer may avail itself of any other provisions of any such Statute applicable. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its Receiver, Liquidator, or Statutory successor. The expense thus incurred by the Reinsurer, shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

16. The Reinsurer may offset any balance(s) whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and Reinsurer, whether acting as assuming Reinsurer or as Ceding Company.

17. Should an irreconcilable difference of opinion arise as to the interpretation of this Certificate, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbitrator to be chosen by the Company, one arbitrator by the Reinsurer and an umpire to be mutually agreed upon and chosen by the two arbitrators before they enter upon arbitration. The arbitrators and umpire so selected shall be officers or former officers of other insurance or reinsurance companies. In the event that either party should fail to choose an arbitrator within sixty (60) days following receipt of a written request by the other party to enter upon arbitration, the requesting party may then choose a second arbitrator and the two selected arbitrators shall in turn choose an umpire before entering upon arbitration. In the event, the two selected arbitrators fail to agree on the selection of an umpire, after meeting together and within ten (10) days of their appointment, then each arbitrator shall select one name from a list of three names submitted by the other arbitrator and the umpire shall be selected by lot between the two names chosen.

Each party shall thereupon present its case to the arbitrators within sixty (60) days after date of their appointment. The decision of the arbitrators shall be final and binding upon both parties, but failing to agree they shall call upon the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expense of the umpire and of the arbitration. In the event that two of the arbitrators are chosen by one party, as above provided, the expense of the arbitrators, the umpire and the arbitration shall be equally divided between the two parties. The arbitrators shall adopt their own rules and procedures and may waive the requirements of the rules of evidence. Any such arbitration shall take place in New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

18. Cancellation of the policy of the Company shall constitute automatic cancellation of this Certificate and it may also be cancelled on a pro rata basis by either party mailing or delivering to the other written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. If, at any time during the continuance of this Certificate, the Company should lose the whole or any part of its paid-up capital or go into liquidation or receivership, whether voluntary or involuntary, or should have a Conservator or Rehabilitator appointed or undergo any process of reconstruction or reinsure itself in any other business or be acquired or controlled or merged with any other company, corporation or body, the Reinsurer shall have the right to terminate this Certificate forthwith upon the giving of notice in writing to the Company.

19. The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, and executed by a duly authorized representative of the Reinsurer.

20. It is agreed that this Certificate specifically excludes any reinsurance coverage for any sums which the Company may become obligated to pay as damages, either by judgment or agreement, due to the alleged or actual bad faith, fraud, or negligence of the Company, its employees or representatives, in the handling of, or failure to settle a claim on behalf of or by the named insured under its policy(ies), or for the costs or expense incurred, therefrom, unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages and shall have agreed to pay its share of any loss relating thereto, subject to the limits of its coverage provided within the Declarations of the Certificate.

21. Definitions:
As used in this Certificate under Section 5, Item 5 of the Declarations, the following terms shall have the meaning set opposite each:

Excess of Loss: The limit(s) of liability of the Reinsurer, as stated in Section 4, Item 5 of the Declarations, applies(y) only to that portion of loss within the policy limits, in excess of the applicable retention of the Company as stated in Section 3, Item 5 of the Declarations.

Contributing Excess: The Company's policy(ies) applies(y) in excess of other valid insurance, reinsurance or self-insured retention and the limit(s) of liability of the Reinsurer applies(y), proportionately to all loss within the policy limits in the amount(s) set forth in Section 4, Item 5 of the Declarations.

Non-Concurrent: The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy, which are specifically excluded in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risks of loss or damage which would not be excluded in the Declarations.

In Witness Whereof, the Reinsurer has caused this Certificate to be signed by its authorized representative.

To the extent not listed above, the following persons are reasonably likely to have discoverable information concerning the claims and defense that Sentry has asserted.

(7)    All persons identified in pleadings, motions or discovery in this action whether by Sentry, GRC or any other defendant or third party defendant.

(8)    Expert witnesses designated by the parties.

B.    The following general categories of documents are in Sentry's possession, custody or control and may be used to support its claims or defenses:

(1)    The insurance policy that Sentry issued to the plaintiff.  Attached hereto is a copy of said policy.

(2)    The Sentry claims and underwriting files, which will be made available at a mutually agreeable date and time.

C.    Documents referenced in Fed. R. Civ. P. 26(a)(1)(C) are not applicable.

D.    While Sentry disputes that it may be liable for satisfaction of part or all of a judgment that may be entered in this action or that its insurance policy may be applicable to this claim,  a copy of Sentry's insurance policy has been produced.  In addition insurance policies produced by GRC and any other liability policies issued to GRC by any other insurance company  may be liable to satisfy part or all of any potential judgment which may be entered in this action.

Sentry respectfully reserves the right to change or supplement any automatic disclosure which may subsequently appear to be incomplete or incorrect.   Sentry

**GERLING GLOBAL REINSURANCE CORPORATION, U. S. Branch**
717 Fifth Avenue, New York, New York 10022

·ENDORSEMENT·   NO. 3            CERTIFICATE NO. 71-218t            DATE September 27, 1979

It is hereby understood and agreed that this Certificate is amended as follows:

ADDITIONAL PREMIUM: $3,990.00            RECEIVED **RECEIVED**
                                                    BACCALA & SHOOP, INC.
                                                    NEW YORK
ITEM #8 Commission: 25%                     OCT 11 1979

Per Reinsured's endorsement #4.

                                                    OCT   4 1979

All other terms and conditions remain unchanged.

Attached to and forming part of Reinsurance Certificate to Policy No. ML 65 24 13 of ................................

Puritan .............................................. Insurance Co.

Effective ....... 8/1/79                                GERLING GLOBAL OFFICES INC.
                                                              U. S. Manager
Original Insured .......... General Refractories Co.

/af                                                    Authorized Signature

ORIGINAL



# FACULTATIVE CASUALTY REINSURANCE CERTIFICATE

Baccala & Shoop
2000 Market Street
Philadelphia, Pennsylvania  19102

CERTIFICATE NUMBER: 62 042 519
RENEWAL OF:  62 042 129
DATE ACCEPTED:
BROKER FILE NUMBER:

REINSURED:  Puritan Insurance Company

INSURED:  General Refractories Company

ADDRESS:  50 Monument Road, Bala Cynwyd, Pennsylvania  19004

CERTIFICATE PERIOD: August 1, 1979 – August 1, 1980

COMPANY POLICY NUMBER(S):  ML 65 24 13

## REINSURANCE COVERAGE

| | |
|---|---|
| SECTION 1 TYPE OF INSURANCE | Excess Umbrella Liability |
| SECTION 2 POLICY LIMITS AND APPLICATION | $4,000,000 each occurrence and in the aggregate annually where applicable excess of $1,000,000 each occurrence and in the aggregate annually where applicable excess of the schedule of underlying insurance or a self-insured retention. |
| SECTION 3 COMPANY RETENTION | $1,500,000 part of $4,000,000 each occurrence and in the aggregate annually where applicable excess of $1,000,000 each occurrence and in the aggregate annually where applicable excess of the schedule of underlying insurance or a self-insured retention. |
| SECTION 4 REINSURANCE ACCEPTED | $1,000,000 part of $4,000,000 each occurrence and in the aggregate annually where applicable excess of $1,000,000 each occurrence and in the aggregate annually where applicable excess of the schedule of underlying insurance or a self-insured retention. |
| SECTION 5 CANCELLATION | 45 Days |

## PREMIUM

| PREMIUM DUE: | $11,250.00 | FLAT TERM | 25% | CEDING COMMISSION | $2,812.50 |
|---|---|---|---|---|---|
| | --- | DEPOSIT | | BROKERAGE | --- |
| | --- | MINIMUM | | NET | $8,437.50 |

| PREMIUM ADJUSTMENT | | INSTALLMENTS DUE |
|---|---|---|
| AUDIT PERIOD: | Not Applicable | AUDIT 9-17-79 |
| RATE: | --- | |
| RATE BASE: | --- | |

AUTHORIZED REPRESENTATIVE

DATE  8/24/79

BROKER

# ALLSTATE INSURANCE COMPANY
(Herein Called Allstate)
## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein, Allstate does hereby reinsure the named Reinsured (hereinafter called the Company) in respect of the Company's policy as follows:

## APPLICATION

The Company warrants to retain for its own account, the amount specified in Section 3 of this certificate which amount may be subject to treaty reinsurance, unless otherwise declared to Allstate.

The liability of Allstate shall follow that of the Company and, except as otherwise specifically provided in this certificate, shall be subject to the terms and conditions of the policy(ies) reinsured.

Except as provided by the insolvency clause and any amendments thereto, the obligations under this certificate shall run to the Company and Allstate shall have no obligation to the original insured or anyone claiming under the policy(ies) reinsured.

## COMPANY DUTIES

The Company shall furnish Allstate with a copy of its policy and all endorsements thereto which in any manner affect this certificate, and shall make available for inspection and place at the disposal of Allstate at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

## STANDARD WAR AND NUCLEAR EXCLUSIONS

It is understood and agreed that the reinsurance hereunder is subject to:

a.   Standard War Exclusion Clause or Clauses

b.   Nuclear Incident Exclusion Clause-Physical Damage Reinsurance and/or Liability Reinsurance

## NOTICE OF LOSS

Prompt notice shall be given to Allstate by the Company of any occurrence or accident which appears likely to involve this reinsurance and while Allstate does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance with the full cooperation of the Company.

## CLAIM SETTLEMENT

All claims involving this reinsurance, when settled by the Company, shall be binding on Allstate, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that Allstate's loss payment bears to the Company's gross loss payment, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of Allstate to trial court proceedings, its proportion of court costs and interest on any judgment or award.

Payment of its proportion of loss and expense paid by the Company will be made by Allstate to the Company promptly following receipt of proof of loss.

Allstate will be paid or credited by the Company with its proportion of salvages, i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

## TAXES

The Company undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or to the District of Columbia.

## INSOLVENCY

In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company      failed to pay all or a portion of any claim.

## DATE OF ACCEPTANCE

If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this certificate as of the date this reinsurance is accepted.

## ARBITRATION

Should any difference of opinion with respect to the interpretation of this certificate arise between Allstate and the Company which cannot be resolved in the normal course of business, the difference shall be submitted to arbitration.

One arbitrator shall be chosen by Allstate, one by the Company, and an umpire by the two arbitrators before they enter upon arbitration. If the arbitrators have not chosen an umpire at the end of fifteen days following the last date of the selection of the two arbitrators, each of the arbitrators shall name three of whom the other declines two and the decision shall be made of the remaining two by drawing lots. Such drawing shall be done within fifteen additional days.

The arbitrators and umpire shall be officials or former officials of Insurance Companies transacting business in one or more states of the United States of America. The arbitrators and umpire are relieved from all judicial formalities and may abstain from following the strict rules of law and they shall make their written award with a view to effecting the general purpose of this certificate rather than in accordance with the literal interpretation of the language. The written decision of the majority shall be final and binding upon the parties under this certificate.

If either party fails to choose an arbitrator within one month after receiving the written request of the other party to do so, the latter shall choose both arbitrators, who shall choose the umpire as provided.

Each party shall submit its case to the arbitrators and umpire within one month after receipt of advices of the selection of the umpire unless the period is extended by the arbitrators.

The costs of arbitration, including the fees of the umpire, shall be borne equally. However, each party shall pay its own attorney's fees and its own arbitrator's fees and related costs. The arbitration shall be held in Cook County, Illinois at the times and place agreed upon by the arbitrators and umpire. The arbitration shall be governed by the legal interpretations, customs and usages prevalent in the insurance industry as understood and applied by the arbitrators and umpire.

## CANCELLATION

This certificate may be cancelled by either Allstate or the Company mailing or delivering written notice to the other stating when cancellation will be effective. Such advance notice to be mailed at least thirty days before the effective date of cancellation, unless the number of days notice is otherwise stated in Section 5. Actual delivery or telex of written notice shall be equivalent to mailing. Proof of mailing shall be deemed proof of notice.

In the event of non-payment of any original, renewal or additional premium, Allstate may cancel this certificate at any time by written notice to the Company at least thirty days before the effective date of cancellation.

If the Company's policy is cancelled, this certificate shall also be cancelled at the same time and date. Earned premium shall follow the Company's cancellation in the use of short rate or pro rata tables.

## OFFSET

Allstate and the Company shall be entitled to deduct from amounts due each other under this certificate any amounts due each other under this or any other agreement heretofore or hereafter entered into between the Company and Allstate.

## AMENDMENTS

The terms of this certificate shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of Allstate.

# ALLSTATE INSURANCE COMPANY HOME OFFICE • NORTHBROOK, ILLINOIS

**FACULTATIVE REINSURANCE ENDORSEMENT**

CERTIFICATE NO.: __62 042 519__
Reinsured's Identification: __ML 65 2413__
Producer's Identification: _____
Endorsement Number: __1__

**Name of Reinsured**   Puritan Insurance Company

**Name of Assured**   General Refractories Companies

It is agreed that this certificate is amended as follows:   Endorsement Premium $ __2,625.00__

Additional premium is due of $2,625.00 per reinsured's endorsement
Number 4.

This endorsement is effective from _____ **August 1** _____ , 19 __79__ .

IN WITNESS WHEREOF, Allstate has caused this endorsement to be signed by its Secretary and its President at
Northbrook, Illinois, and countersigned by an authorized representative of Allstate.

_Donald L. Schaffer_
Secretary

_T. Robert B. Sheppard_
President

Countersigned By _____ __11/1/79__ , Authorized Representative

this __15th__ day of __October__ 19 __79__ .

NY   ml

DATE: 7/24/79                              BROKER: RBH

NAME OF RISK: General Refractories

DESCRIPTION OF OPERATIONS: Refractory products, building materials, filtration and filler products

COVERAGE: Excess Umbrella

Sales $450,000,000  Foreign _____
Payroll 52m
Products yes   XCU yes
Blkt. Cont. yes   Liquor yes
Aircraft N/O   Empl. Ben. N/O
Watercraft N/O   Inc. Malp. yes
BFPD yes   PI yes
RP CCC No   PP CCC No
Total Autos 413
PP 330   P/U —
Tractor/Trailer _____
Other 83   Radius —
        Trucks

| | PRIMARY LIMITS | COMPANY | PREMIUM | EXCESS PREMIUM |
|---|---|---|---|---|
| BI: | 1m CSC | Travelers | 150,000 | |
| PD: | | | | |
| PROD/BI: | | | | |
| PROD/PD: | | | | |
| ABI: | 1m CSC | Travelers | 100,000 | |
| APD: | 1 | 1 | 1 | |
| E.L.: | 500,000 | Travelers | | |
| OTHER: | | | | |

N/o Aircraft   5m   INA          250,000
                                 x 25%
Foreign - placed locally         62,500

| Agg. Losses | | AL | GL |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Large Losses _____ $
Largest paid - 12624,
         1975

Largest reserve - 1975
         150,000 -

Umbrella - 1st State - 90,000 Flat
                    x 50
                 45,000   4 x 1

COMMENTS: 1st State Terms - Contractors Limitation, x CCC
ERISA, Concurrency, X Arch & Eng E&O, F F Advertis.,
Asbestos claims, x O.D. claims, x mixing

COMPANY: Puritan

EXCLUSIONS: ERISA, Poll S & A

FOR XS WC.: _____
PAYROLL: _____
MAN. PREM.: _____
BSIS RATE: _____
SIR: _____

AUTHORIZED: _____   BOUND EFF: _____   C/C: _____ / _____   Initials

BSIS 55 (Rev. 7/21/78)

**POLICYWRITING WORKSHEET**

DEC 12 02
2:00 PM
R

☒ ML 652413    ☐   Contract ☐          ☐          ☐
☐          ☐   OM ☐          ☐          ☐

| Loss Information | Underwriting Information |

① 50% Underlying layer
② mfg Refractory products, building materials
③ Largest Reserve $58000 - 1975
   " " Paid   12,624 - 1975

| 07 | 01000 | 32 | 03 | 90 | K | 10 | 14008 | 37 | 14 |
|----|-------|-----|------|-----------|----------|----------|----------|-------|------|
| CO. | CONTRACT | SUBLINE | CLASS | MAJOR LINE | GA COMM. | BKRS. COMM. | PRODUCER | STATE | OFF |

Renewal of _ML 651906_ Producer _Rollins Burdick Hunter of Penna Inc_ Contract No. _____
Rewrite of _____ Address _726 Public Ledger Building_
Extra Dailies _____ _Phila, Pa 19406_ Cert. Copies _____

In favor of _General Refractories Company_

Address _50 Monument Road_
_Bala Cynwyd, Penna 19004_
Type of Coverage _Excess Umbrella Liability_
Amount _As Per Form GL-218 Attached Hereto_

Term: Beginning _8/1/79_ Ending _8/1/80_ 12:01 A.M.
Nuclear: Standard Clause _____ shall not apply.
Insurance is subscribed _____ % Lloyds _____ % Companies

| Surplus Lines Information | | Cross References |
First State Ins Co.
3#4   1,000,000 PI/PD CSC
5#6   4,000,000 PI/PD CSC

☒ Annual Review

| Premium | 45,000 | | |
|---------|--------|---|---|
| (Premium subject to | | | |
| Fed. Tax: $ | | | |
| Service Fee | | | |
| Policy Fee | | | |
| % Federal Tax | | | |
| % State Tax | | | |
| % Stamping Fee | | | |
| | 45,000 | | |

☐ Adjustable
☐ Installments
☐ Enter Fire
☐ Enter Quake

Instructions to Policywriter

① — 20
② — 34
③  56