IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENERAL REFRACTORIES COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST STATE INSURANCE CO., et al. | : | No. 04-3509 |
| (Lexington Insurance Company and | : | |
| AIU Insurance Company) | : | |

**MEMORANDUM**

Ludwig, J.                                                                                                        January 27, 2012

      Plaintiff General Refractories Company (GRC) and defendants Lexington Insurance Company and AIU insurance Company cross-move for partial summary judgment (doc. nos. 315, 360, 361 (sealed)). Fed. R. Civ. P. 56. Jurisdiction is diversity. 28 U.S.C. § 1332.

      In 2004, plaintiff GRC sued its insurance carriers for a declaration of excess insurance coverage against asbestos-related claims. A manufacturer and supplier of asbestos-containing products, GRC is a defendant in numerous asbestos-related suits throughout the United States. Two of the insurance carriers are defendants Lexington and AIU.

      As to each of these defendants, GRC moved for partial summary judgment (doc. nos. 277 and 278, respectively), because their policies of insurance did not contain an exclusion for asbestos products liability. Those motions were granted. (Orders and mem., June 20, 2011, doc. nos. 318-320.) Before those motions were ruled on, Lexington and AIU were permitted to amend their joint answer to add counterclaims for reformation and rescission of the policies. (Order, Mar. 24, 2011, doc. no. 304; Counterclaims, doc. no. 284 at 29-37.)

1

On June 8, 2011, GRC again moved for partial summary judgment, contending that the counterclaims should be dismissed (doc. no. 315).[1] On September 9, 2011, defendants cross-moved for partial summary judgment, contending the policies should be reformed to exclude asbestos- related claims or should be rescinded (doc. no. 360).

None of the policies or a policy endorsement contains an exclusion for claims related

---

[1] On July 23, 2004, GRC filed the complaint against 16 of its umbrella and excess insurance carriers, suing for a declaration of insurance coverage against asbestos-related claims and for breach of insurance contract. On June 3, 2005, five of the insurers originally named as defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join indispensable parties under Federal Rule of Civil Procedure 19. (Doc. no. 149.) Defendants contended GRC had failed to name all of the insurers which had provided coverage from 1979 to 1986, and that the absent insurers were indispensable to the action. On September 27, 2005, the court dismissed the action, ruling that the absent insurers were necessary and indispensable parties under Rule 19. Gen. Refractories Co. v. First State Ins. Co., 234 F.R.D. 99, 100 (E.D. Pa. 2005). On October 27, 2005, reconsideration of that ruling was denied. (Orders and mem., doc. nos. 158, 159, 166.) Defendants appealed these two orders. On August 28, 2007, our Court of Appeals reversed the September 27, 2005 order that dismissed the action for lack of necessary parties and remanded this action. Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306 (3d Cir. 2007).

On June 7, 2010, nearly six years after this litigation had commenced, fact discovery closed. (Orders, Jan. 21, 2010 and Feb. 19, 2008, doc. nos. 239, 199.) During that time, defendants Lexington and AIU contended that their policies contained exclusions for asbestos products liability. On October 22 and November 2, 2010, GRC moved for partial summary judgment as to each of these defendants (doc. nos. 277 and 278, respectively), because their policies did not contain such an exclusion. Defendants changed course. On November 22, 2010, defendants moved to amend their answer to state counterclaims for reformation and rescission of their policies, submitting that "no further discovery is required regarding the counterclaims." (Defs. br., doc. no. 284 at 8-9.) They were permitted to amend the answer. (Order, Mar. 24, 2011, doc. no. 304; Counterclaims, doc. no. 284 at 29-37.) GRC's motions for summary judgment were granted. (Orders and mem., June 20, 2011, doc. nos. 318-320.)

On June 8, 2011, before the court had ruled on the summary judgment motions, GRC again moved for partial summary judgment requesting dismissal of the amended counterclaims. (Doc. no. 315.) On July 11, 2011, defendants' response to the motion was due. (Order, June 9, 2011, doc. no. 317.) By July 8, 2011 letter, defendants requested and were granted an enlargement of the deadline to July 20, 2011. (Order, July 11, 2011, doc. no. 328.) On July 19, 2011, defendants made their first request for additional discovery to support the counterclaims, which plaintiff opposed. (July 19, 22, and 29, 2011 letters, doc. nos. 332, 336, 351.) After a conference, defendants were granted limited discovery and were directed to respond to the motion for summary judgment by September 9, 2011. (Order, Aug. 3, 2011, doc. no. 352.)


to asbestos products.[2] Both defendants concede as much, but assert the omission resulted from a series of mistakes by defendants' underwriters and that the intent of the parties to include such an exclusion can be shown by extrinsic evidence. (Counterclaims, ¶¶ 9, 16, 23.) That issue – whether these policies should be reformed to include asbestos-related exclusions – is presented in the pending cross-motions for partial summary judgment on these defendants' counterclaims. The issue of whether the policies cover the underlying asbestos-related claims is not decided. Today's order holds that reformation or rescission of the policies is not warranted. Plaintiff's motion for partial summary judgment will be granted, the counterclaims will be dismissed, and defendants' cross-motion will be denied.

Discovery has been completed, and the following facts are not in dispute. From 1982 to 1986, Jennifer Romano of Marsh & McLennan was GRC's broker for the procurement of policies. GRC received Romano's March 30, 1984 letter requesting authorization to approach umbrella and excess insurance carriers to obtain policies for the August 1, 1984-85 period. On July 2, 1984, Romano submitted GRC's insurance application to Michael Bruzzi, vice president of Pacific Starr of New York, a managing general agent with authority to bind policies for Granite State Insurance Company. In the cover letter, Romano stated: "The current Umbrella program excludes asbestos and warrants the underlying aggregates will not be impaired by asbestos. We expect this condition to be duplicated for the 1984-85

---

[2] For the period, August 1, 1984 to August 1, 1985, the policies at issue are: Lexington issued to GRC policy no. 552 6337. Doctors Aff. 9/9/11, Ex. 31, doc. no. 361. AIU issued to GRC policy no. 75-103894. Id., Ex. 30. The AIU policy follows form to the Granite State Insurance Company policy no. 6484-0088 issued to GRC. Id., Ex. 28.

program." Doctors Aff. 9/9/11, Ex. 17, doc. no. 361. On July 19, 1984, Bruzzi sent Marsh a telex of Granite State's quote for umbrella coverage that stated: "Terms and Conditions: Exclude all claims arising out of asbestos and no aggregate impairment of asbestos products." Id., Ex. 23. An August 1, 1984 binder, prepared on Marsh letterhead and signed by Bruzzi, stated that Granite State agreed to issue GRC "$5 million excess of various primaries as submitted . . . Subject to: . . . Exclude claims arising out of asbestos; and warrant U/L aggregate not exhausted by asbestos." Id., Ex. 24.

Marsh also approached Lexington and AIU, which agreed to issue excess coverage for the August 1, 1984-85 period. Two binders were prepared on Marsh's letterhead and dated August 1, 1984 – one signed by Didi Devane on behalf of Lexington and the other signed by Albertha Garrett on behalf of AIU. Each binder stated: "Subject to: Following all wordings and coverages of first layer Umbrella with Granite State Ins. Co., including but not limited to: . . . Exclude asbestos and warrant U/L aggregate not exhausted by aggregate." Doctors Aff. 9/9/11, Ex. 24. Romano testified that someone else was responsible for preparing the binders and it was "possible that information [contained in the binder] was provided by the carrier." Romano dep. 278:15-279:6, Nov. 11, 2009, Conley Aff. 9/23/11, Ex. Q, doc. no. 372-1.

By letter of August 23, 1984, Marsh forwarded these binders, along with binders for the other four excess liability carriers on the risk during the 1984-85 period,[3] to GRC's vice

---

[3] The other excess carriers were: International Insurance Company, Republic Insurance Company, First State Insurance Company, and Harbor Insurance Company.

4

president, Joseph Mulvaney, who was responsible for the placement of general liability insurance. GRC received the binders. The letter covering the binders stated: "These will provide evidence of coverage until you receive the actual policies." Doctors Aff. 9/9/11, Ex. 24. The Lexington and AIU binders also stated: "Please notify the undersigned immediately of changes, if any, you wish to make in the above arrangements; otherwise, completing documents or premium statement will be prepared and sent to you." Id. Before Lexington issued its policy, Warren Berm of Midtown Risk Specialists, Inc., a broker involved in the underwriting of that policy, issued on August 4, 1984 a "Cover Note" that stated:

> This cover note is based on cable and/or mail and/or telephone advices from the above insurer(s) [Lexington] and is subject to policy conditions, when, as and if issued and is issued by the undersigned without any liability whatsoever as insurer, being solely for the convenience of the insured and is to be automatically cancelled and superceded by the policy upon issuance.

Id., Ex. 27. The record does not reflect any objections to the binders.

AIU issued its policy on August 6, 1984, but the policy did not specify an underlying umbrella policy. The single page policy included preprinted follow-form language:

> The company agrees with the Insured named below, in consideration of the premium paid and subject to all the terms and conditions set forth below of Policy No.  TBA  issued by ____ including all renewals and rewrites thereof.

Doctors Aff. 9/9/11, Ex. 30. On September 4, 1984, Lexington issued its policy. The policy referenced an underlying umbrella policy issued by "Century Indemnity" with the policy number to be advised, "TBA." Id., Ex. 31. The Lexington and AIU policies did not contain asbestos products liability exclusions. On September 10, 1984, Granite State issued its

5

policy, which was sent to Marsh on September 24, 1984. Id., Ex. 28. That policy also did not contain an asbestos products liability exclusion. According to the record, none of the carriers, brokers, or agents took any action to endorse the policies with such an exclusion.

On May 2, 1985, Romano forwarded the Granite State, Lexington, and AIU policies to GRC, which GRC received. In the cover letter, Romano stated she had found "discrepancies" in the policies, including: "As you are well aware, asbestos is not covered in the Umbrella program, but Granite State omitted their exclusion." Doctors Aff. 9/9/11, Ex. 32. In regard to the AIU policy, Romano stated: "Should mention lead Umbrella carrier." Id. In regard to the Lexington policy, Romano stated: "Needs following form endorsement" and "[s]hows wrong underlying Umbrella carrier." Id. In a separate letter of May 2, 1985 to Granite State's underwriter, Bruzzi, Jennifer Romano wrote:

> An asbestos exclusion was critical to our negotiations, but your policy does not exclude it. We suggest this wording: 'This policy does not apply to any damages or expenses [from claims] arising out of the manufacture, distribution, or handling of asbestos or asbestos components of other products. It is further agreed that the underlying insurance limits cannot be impaired by such damages arising out of asbestos.'

Id., 33 (Romano handwrote "from claims" on the letter). Bruzzi received the letter.

The record does not establish whether Romano, when she wrote the letter to Bruzzi, was acting as a broker for GRC. Romano testified: "I really don't have much memory working on the [GRC] account." Romano dep. 54:8-11, Nov. 11, 2009, Doctors Aff. 9/9/11, Ex. 14. She did not recall working with Bruzzi on the GRC account. She did not remember the letter at all and was "not sure that this was me necessarily proposing the language." Id.

6

153:4-10, 155:3-156:12, 157:12-19, 158:23-159:6, 160:20-163:17, 171:2-17.  She had no recollection of the insurance transaction or the negotiations leading up to the Granite State binder.  Id. 174:23-175:11, 176:14-19.  Romano could not "recall whether the Granite State policy was modified or amended or in any which way changed as a result of our letter of May 2, 1985."  Id. 172:18-22.  The record does not reflect that Bruzzi responded to Romano or any conversations or negotiations with Granite State after the May 2, 1985 letter.  No amendment appears to have been made to the Granite State policy.

There is no testimony offering firsthand, personal knowledge about the negotiations, underwriting, binding, or clerical compilation of the policies issued for the 1984-85 period:

Barry Katz, GRC's Rule 30(b)(6) witness, testified to discussions concerning an asbestos exclusion in the Granite State policy:  "I wasn't involved in those negotiations nor have I been able to find any facts relating what went on during those negotiations."  Katz dep. 439:17-23, Apr. 20, 2010, Doctors Aff. 9/9/11, Ex. 6.  Katz testified that "GRC does not have any independent facts as to what was involved in the original negotiations" and "what took place."  Id. 426:14-427:15; see also Katz dep. 1673:8-13, 1675:19-1676:5, 1681:6-23, May 21, 2010, Doctors Aff. 9/9/11, Ex. 8.

Joseph Mulvaney testified that he did not remember whether asbestos was covered.  Mulvaney dep. 137:4-14, Nov. 12, 2009, Doctors Aff. 9/9/11, Ex. 3.  Mulvaney could not recall any discussions with Marsh during 1982-86.  Id. 55:3-13.

Bruzzi, Granite State's Rule 30(b)(6) witness regarding underwriting, testified that

he did not "remember being involved in any way in the sale of the policies" to GRC. Bruzzi dep. 66:11-15, June 29, 2010, Conley Aff. 9/23/11, Ex. H; Bruzzi dep. 31:3-5, 31:22-25, 32:3-7, 42:5-10, June 29, 2010, Doctor's 9/9/11, Ex. 19. When asked to assume an asbestos exclusion should have been part of the Granite State policy, Bruzzi testified that the omission "had to be a clerical error somewhere in the process of issuing the policy." Id. 43:512. He had no personal knowledge of any error and offered no other reason for the omission.

John Gibson, Lexington's Rule 30(b)(6) witness regarding underwriting, testified that he stopped working for Lexington in 1982. He offered no testimony from personal knowledge about the 1984-85 insurance transaction or the underwriting of the Lexington policy. He offered numerous opinions concerning Lexington's intent not to insure asbestos risks and its underwriting policies, practices, and procedures in general. However, he was unable to state facts in support of those opinions. Gibson dep. 7:13-15, Oct. 14, 2009, Doctors Aff. 9/9/11, Ex. 25.

Paul Sanchez, AIU's Rule 30(b)(6) witness regarding underwriting, testified that he did not work for AIU in 1984-85. He did not know what AIU's underwriting procedures or policies were during that time. Sanchez dep. 35:16-36:4, Jan. 20, 2010, Conley Aff. 9/23/11, Ex. E. He had no involvement with AIU. Sanchez. dep. 33:5-12, 34:12-17, 35:16-23, Jan. 20, 2010, Doctors Aff. 9/9/11, Ex. 12.

Defendants maintain that the policies should be reformed in order to carry out the intent and agreement of the parties to exclude any claims related to asbestos. Defendants

8

submit that the omission of such an exclusion was due to a "fundamental mistake" – an "erroneous belief shared by GRC, Lexington and AIU" – that the Granite State policy contained an asbestos exclusion endorsement. Defs. sur-reply br., doc. no 387 at 2. Defendants formulate this question somewhat differently in their counterclaims, stating that the Granite State, Lexington, and AIU policies each "inadvertently failed to include its own endorsement excluding coverage for claims arising out of exposure to asbestos," and the Lexington and AIU policies "not only followed form to, but also relied on" the Granite State policy. Counterclaims, ¶¶ 9, 16, 23.

An insurance contract may be reformed to correspond to the understanding of the parties where the mistake is mutual between the parties. Recent authority for this well known principle does not exist. What follows has not been overruled or criticized. Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co., 263 A.2d 448, 456 (Pa. 1970) (citing Bugen v. N.Y. Life Ins. Co., 184 A.2d 499, 501 (Pa. 1962) and Easton v. Washington County Ins. Co., 137 A.2d 332, 337 (Pa. 1958)). The moving party has the burden of showing mistake by "clear, precise and indubitable evidence." Id. at 456 (citing Easton, 137 A.2d at 337); Felix v. Giuseppe Kitchens & Bath, Inc., 848 A.2d 943, 948 (Pa. Super. Ct. 2004) (evidence must be "clear, precise and convincing") (citing Bugen, 184 A.2d at 500)); Patterson v. Reliance Ins. Cos., 507 F.2d 1332, 1337 (Pa. Super. Ct. 1984) (a "heavy burden") (citing Easton, 137 A.2d at 337)); Stowe v. Standard Life Ins. Co., 507 F.2d 1332, 1337 (3d Cir. 1975) (requiring "'clear, precise and convincing evidence' of the basis for reformation") (citing Gen. Elec.

9

Credit Corp. and Easton). The understanding that is proffered as the basis for reformation must be shown to have existed at the time the contract is executed. Patterson, 481 A.2d at 950-51 (citing Dudash v. Dudash, 460 A.2d 323, 326-27 (Pa. Super. Ct. 1983) (basis must be shown in "the clearest manner" to have "existed and continued concurrently in the minds of the parties down to the time of . . . execution of [the contract]")). The proffered mistake as well as the parties' intentions must be clearly proven. Kramer v. Schaeffer, 751 A.2d 241, 246 (Pa. Super. Ct. 2000) (citing Dudash, 460 A.2d at 327 and Hassler v. Mummert, 364 A.2d 402, 403 (Pa. Super. Ct. 1976) ("It is necessary that the mistake as well as the parties' actual intent be clearly shown.")).

Defendants, which have the burden of proof for reformation based on mutual mistake, must point out record evidence beyond the pleadings showing a genuine trial issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). After adequate time for discovery, summary judgment is appropriate against a party that does not present evidence of an element essential to that party's burden of proof at trial. Id. at 323 ("a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial"). A thorough and careful review of the record compels the conclusion that defendants have not met this standard of proof. The evidence submitted is speculative about the parties' intent and the purported mistake.

The Lexington and AIU binders provide some evidence of the parties' discussions before the insurance contracts were executed. "A binder offers temporary protection for the

insured pending the investigation of the risk by the insurance company until a formal policy of insurance is issued." Erie Ins. Exch. v. Lake, 671 A.2d 681, 685 n.7 (Pa. 1996); Harris v. Sachse, 52 A.2d 375, 378 (Pa. Super. Ct. 1947) (A binder is "evidence that the insurance coverage attaches at a specified time, and continues . . . until the policy is issued or the risk is declined and notice thereof is given."). Here, the binders do not memorialize an integrated oral agreement finally arrived at by the parties. At most, they evidence an "agreement to agree" that did not come to full fruition in regard to asbestos-related claims. See MDL Capital Mgmt., Inc. v. Fed. Ins. Co., 274 Fed. App'x 169, 171 (3d Cir. 2008) (citing Onyx Oils & Resins, Inc. v. Moss, 80 A.2d 815, 816 (Pa. 1951) ("[a]n agreement to agree is incapable of enforcement")). Moreover, the binders were effective only until the policies were executed at which time the binders were terminated. Harris, 52 A.2d at 378.

The policies could be viewed as inconsistent with the binders, as suggested by defendants, but only if an agreement to the binders' terms and conditions were established. No such agreement has been shown here. The record does not contain testimony from any witness offering firsthand, personal knowledge about what the parties knew, intended, understood, and agreed in regard to the binders for the 1984-85 period.

Defendants submit voluminous documents concerning GRC's insurance in various policy periods both before and after 1984-85.[4] Based on their view of custom and trade

---

[4] These documents are not germane to the insurance transactions at issue. They do not retroactively or prospectively evidence the parties' intent as to the insurance contracts actually made in 1984-85. See Doctors Aff. 9/9/11, Exs. 1, 2, 10, 11, 13, 15, 16, 34, 35, 38, 40- 48.

practices in the insurance industry from the mid-1970's forward, defendants urge that insurance was virtually impossible to obtain for a company that had asbestos products liability exposure in 1984-85. Against that backdrop, they conclude that GRC could not have expected to procure such insurance and knew that the Granite State, Lexington, and AIU policies did not contain asbestos exclusions. This position is not supported by competent expert testimony or the record. Simply stated, these submissions do not fill the vacuum of evidence as to what the parties knew, intended, and agreed to in regard to the policies issued for the 1984-85 period. On this record, the written insurance contracts provide the only reliable evidence of the agreements that were actually made.

The proffered mistake, a clerical error, is also speculative. That the policies did not contain an asbestos exclusion is no more indicative of a clerical mistake in compiling the policies than a prior agreement to insure asbestos liability. The record does not show that either possibility is more likely than the other. Absent a mutual mistake warranting equitable relief, the policies cannot be rewritten in order to give effect to the parties' conflicting views about the underwriting history of the policies. See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010) ("mutual intention of the parties at the time they formed the contract governs its interpretation"); Guardian Life Ins. Co. of Am. v. Zerance, 479 A.2d 949, 953 (Pa. 1984) ("we may not rewrite the insurance contract, under the guise of judicial interpretation, to expand [or contract] the coverage beyond that as provided in the policy.").

Defendants controlled the contents of their policies. See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) ("'the insurer drafts the policy, and controls coverage'") (quoting 401 Fourth Street, Inc. v. Investors Ins. Group, 879 A.2d 166, 171 (Pa. 2005)). The mistake, if any, concerning the omission of an exclusion appears to have been on the defendant insurers' part and, therefore, a unilateral mistake not warranting equitable relief:

> It falls stale upon the ear to be told that a formal contract was not read, or was hurriedly prepared, or was signed in haste. Such things are no ground for reforming or invalidating a contract . . . .

Thrasher v. Rothrock, 105 A.2d 600, 604 (Pa. 1954). An insurer's failure to read its own policy before issuing it to the insured does not justify supplanting well-accepted tenets of contract and insurance law with considerations of equity to reform a policy. Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, 653 F.3d 225, 234 (3d Cir. 2011) (Nygaard, J., dissenting) ("This is particularly so where, as here, the insurer seeks reformation post-loss."). This type of unilateral mistake is not a ground for reformation or rescission. Rusiski v. Pribonic, 515 A.2d 507, 511 (Pa. 1986); Patterson, 481 A.2d at 951 ("If the mistake is not mutual, but unilateral, and not due to the fault of the party not mistaken, but to the negligence of the party acting under the mistake, no basis for relief has been afforded." (internal quotation marks and citation omitted)).

Next, relief can be granted for mutual mistake only if it is not a mistake for which the party claiming reformation or rescission bears the risk. Hart v. Arnold, 884 A.2d 316, 333-34

(Pa. Super. Ct. 2005), appeal denied, 897 A.2d 458 (Pa. 2006); Loyal Christian Benefit Ass'n v. Bender, 493 A.2d 760, 762 (Pa. Super. Ct.1985); Restatement (Second) of Contracts §§ 152, 154 (1981). Given the circumstances here, the risk of mistake as to the contents of the policies is reasonably allocable to defendants. The omission of the desired exclusions should have been readily apparent to defendants when the policies were issued or no later than May 1985, when Romano so informed Bruzzi. Defendants do not give a persuasive explanation of why they did not read and discover the omission during the many years of discovery in this litigation.

In addition, reformation and rescission may be granted only when the contracting parties can be restored to their former positions. Hart, 884 A.2d at 334; Gocek v. Gocek, 612 A.2d 1004, 1006 (Pa. Super. Ct. 1992); Sullivan v. Allegheny Ford Truck Sales, Inc., 423 A.2d 1292, 1295 (Pa. Super. Ct. 1980). Here, that is not feasible. GRC cannot purchase replacement policies for the 1984-85 period covering its liability for bodily injury claims related to its asbestos-containing products. Had defendants acted before the occurrence of substantial injuries and a mutual mistake were established, reformation or rescission and refund of the premiums might have been possible. Equitable relief is not warranted.

An order accompanies this memorandum. That order holds that reformation or rescission of the Lexington and AIU policies is not granted and defendants' counterclaims

for such relief will be dismissed with prejudice.  The question of whether the Granite State policy should be deemed to contain an asbestos-related exclusion has not been presented or decided.

                          BY THE COURT:

                          /s/ Edmund V. Ludwig
                          Edmund V. Ludwig, J.