IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENERAL REFRACTORIES COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST STATE INSURANCE CO., et al. | : | No. 04-3509 |
| (Granite State Insurance Company | : | |
| Applicant for Intervention ) | : | |

**MEMORANDUM**

Ludwig, J. Originally filed January 27, 2012
(revised February 7, 2010)

Citing Federal Rule of Civil Procedure 24(a) and (b), Granite State Insurance Company applies to intervene as of right or by permission (doc. no. 389). Jurisdiction is diversity. 28 U.S.C. § 1332.

In this litigation, Plaintiff General Refractories Company (GRC), a manufacturer and supplier of asbestos-containing products, sues its insurance carriers for a declaration of excess insurance coverage for underlying asbestos-related claims. GRC is a defendant in numerous asbestos-related suits throughout the United States. Two of those insurance carriers are Lexington Insurance Company and AIU Insurance Company.

On July 23, 2004, GRC filed a complaint, naming among other defendant insurers Granite State, Lexington, and AIU. On November 1, 2004 (doc. no. 59), these defendants, represented by the same counsel, filed a joint answer. On April 14, 2005, after Granite State answered that it is incorporated in Pennsylvania (id. at ¶ 7), GRC dismissed its claims against Granite State without prejudice for lack of diversity (doc. no. 134), and on April 15, 2005,

Granite State in turn dismissed its counterclaim against GRC (doc. no. 136). Discovery was closed as of June 7, 2010.[1] On October 31, 2011, shortly before all briefs on dispositive

---

[1] On July 23, 2004, GRC commenced this action against 16 of its umbrella and excess insurance carriers, suing for a declaration of insurance coverage against asbestos-related claims and for breach of insurance contract. GRC sues for a declaration "that any asbestos-related exclusions in the Policies are invalid and unenforceable" and that defendants are required "to pay for GRC's defense of the Underlying Actions, and to reimburse GRC for, or pay on behalf of GRC, any and all judgments or settlements reached in the Underlying Actions, until such time as the total aggregate limits of each of the foregoing insurance policies have been exhausted." (Compl., doc. no. 1 at 10.) GRC also sues for breach of contract, claiming that defendants "refused to honor their obligations to provide GRC with a defense or indemnification in and for the Underlying Actions." (Id., ¶ 73, at 11.)

On June 3, 2005, after Granite State had been dismissed, five insurers named as defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join indispensable parties under Federal Rule of Civil Procedure 19. (Doc. no. 149.) Defendants contended that GRC had not named all insurers that had provided coverage from 1979 to 1986, and that the absent insurers were indispensable to the action. On September 27, 2005, this court dismissed the action, ruling that the absent insurers were necessary and indispensable parties under Rule 19. Gen. Refractories Co. v. First State Ins. Co., 234 F.R.D. 99, 100 (E.D. Pa. 2005). On October 27, 2005, reconsideration of that ruling was denied. Defendants appealed both orders. (Orders and mem., doc. nos. 158, 159, 166.) On August 28, 2007, our Court of Appeals reversed the September 27, 2005 order that dismissed the action for lack of necessary parties and remanded the action. Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306 (3d Cir. 2007).

On June 7, 2010, nearly six years after this litigation had been commenced, fact discovery closed. (Orders, Jan. 21, 2010 and Feb. 19, 2008, doc. nos. 239, 199.) During that time, defendants Lexington and AIU contended that their policies contained exclusions for asbestos products liability. On October 22 and November 2, 2010, GRC moved for partial summary judgment as to each of these defendants (doc. nos. 277 and 278, respectively), because their policies did not contain such an exclusion. Defendants changed their course. On November 22, 2010, defendants moved to amend their answer to plead state counterclaims for reformation and rescission of their policies, submitting that "no further discovery is required regarding the counterclaims." (Defs. br., doc. no. 284 at 8-9.) They were granted leave to amend. (Order, Mar. 24, 2011, doc. no. 304; Counterclaims, doc. no. 284 at 29-37.) GRC's motions for summary judgment were then granted. (Orders and mem., June 20, 2011, doc. nos. 318-320.)

On June 8, 2011, before the court had ruled on the summary judgment motions, GRC again moved for partial summary judgment requesting dismissal of the amended counterclaims. (Doc. no. 315.) Defendants were granted an enlargement of the response deadline to July 20, 2011. (Order, July 11, 2011, doc. no. 328.) On July 19, 2011, defendants made their first request for additional discovery to support the counterclaims, which plaintiff opposed. (July 19, 22, and 29, 2011 letters, doc. nos. 332, 336, 351.) After conference, defendants were granted limited discovery and were directed to respond to the motion for summary judgment by September 9, 2011. (Order, Aug. 3, 2011, doc. no. 352.) On that date, defendants cross-moved for partial summary judgment, contending the policies should be reformed to exclude asbestos-related claims or should be rescinded (doc. no. 360). On October 31, 2011, Granite State moved to intervene.

motions were submitted by November 15, 2011, Granite State filed this motion to intervene.

Granite State, Lexington, and AIU each issued to GRC a separate policy for the 1984-85 period. None of the policies or a policy endorsement has an exclusion for claims related to asbestos products.[2] These insurers concede as much, but assert the omission resulted from a series of mistakes by their underwriters, and the intent of the parties to include such an exclusion can be shown by extrinsic evidence.[3] That issue – whether these policies should be reformed to assert asbestos-related exclusions – was presented by GRC and defendants Lexington and AIU on cross-motions for summary judgment on the counterclaims for reformation and rescission (doc. nos. 315, 360, 361 (sealed)); Counterclaims ¶¶ 9, 16, 23, doc. no. 284). By separate order today (January 27, 2012), GRC's motion for summary judgment will be granted, and Lexington and AIU's counterclaims will be dismissed with prejudice.

According to Granite State, its policy rights and obligations "have been put in jeopardy" by the cross-motions for summary judgment filed by GRC, Lexington, and AIU. Def. br., doc. no. 389 at 4-5. Granite State requests intervention to assert affirmative claims for reformation or rescission of its policy, describing the alignment of its interests as being those of a "defendant." Id. at 6, 7; Def. reply br., doc. no. 405 at 3-4; Compl. in intervention,

---

[2] For the period, August 1, 1984 to August 1, 1985, the policies at issue are: Lexington to GRC policy no. 552 6337. Doctors Aff. 9/9/11, Ex. 31, doc. no. 361. AIU to GRC policy no. 75-103894. Id., Ex. 30. The AIU policy follows form to the Granite State Insurance Company policy no. 6484-0088 issued to GRC. Id., Ex. 28.

[3] Granite State: "Compelling evidence exists demonstrating that the underlying Granite policy failed to contain an asbestos exclusion by mistake . . . ." Def. br., doc. no. 389 at 10, 13.

doc. no. 389, Ex. A. It submits that much of the same extrinsic evidence in support of those motions shows the parties' intent to include an asbestos-related exclusion in the Granite State policy. It requests an opportunity for further discovery. Def. br., doc. no. 389 at 14-15.

Because of the dismissal of Lexington's and AIU's counterclaims, the rest of this memorandum constitutes dicta. As the complaint for intervention asserts only state law claims, no independent jurisdictional basis exists for intervention.

In a letter dated May 2, 1985, GRC's broker, Jennifer Romano of Marsh McLennan, wrote to Granite State's underwriter, Michael Bruzzi: "An asbestos exclusion was critical to our negotiations, but your policy does not exclude it." Doctors Aff. 9/9/11, Ex. 33, doc. no. 361. While evidence shows Bruzzi's receipt of the letter, the record does not reflect any response to Romano or thereafter any communication that took place with Granite State about such an exclusion.

Granite State maintains that it did not become aware until October-November, 2010 that its policy contained no exclusion until GRC filed motions for summary judgment contending that Lexington's and AIU's policies did not contain one (doc. nos. 277, 278). Granite State believed "available copies of [its] policy were merely incomplete." Def. br., doc. no. 389 at 13. It did not discover "definitive information" and "did not realize its policy failed to contain an asbestos exclusion endorsement until the March 2010 conclusion of a search . . . pursuant to the subpoena of GRC." Id. at 3, 13-14.

As the party moving to intervene, Granite State has the burden of showing that its

claims are properly before the court. Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 158 (3d Cir. 1995). Here, jurisdiction depends on complete diversity between all plaintiffs and all defendants. See Exxon Mobil Corp. v. Allapattah Serv., Inc., 545 U.S. 546, 553 (2005) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806)). However, there is no diversity of citizenship between GRC and Granite State because both are Pennsylvania corporations. As the complaint in intervention asserts only state law claims, no independent basis exists for exercising federal jurisdiction.

Granite State maintains the court has supplemental jurisdiction over the complaint in intervention under 28 U.S.C. § 1367(a) and (b). According to Granite State, the proposed claims share common questions of law and fact arising out of the transaction or occurrence which is the subject of this action. In particular, Granite State relies on the subject matter of GRC's claims against Lexington and AIU, and these defendants' counterclaims for reformation and rescission of their policies. Therefore, it submits, the proposed claims are "so related" to the current claims before the court that they form part of the same "case or controversy" for purposes of supplemental jurisdiction under § 1367(a). Further: §1367(b)'s restrictions on the extension of jurisdiction over claims asserted by plaintiffs do not preclude Granite State's intervention as a defendant. GRC: Granite State proposes to intervene as a plaintiff "to assert a declaratory judgment action against GRC for reformation and rescission in the guise of intervening as a defendant"; and § 1367(b) removes such jurisdiction. Pl. br., doc. no. 394 at 4-5.

Section 1367 codifies common law "pendent" and "ancillary" jurisdiction. In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig., 15 F.3d 1230, 1237-38 & n.7 (3d Cir. 1994) (Congress has confirmed the principle of ancillary jurisdiction in the enactment of § 1367, using the new statutory term, "supplemental jurisdiction."). Subsection 1367(a) provides:

> Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

This subsection codifies the minimum constitutional requirements for exercise of federal judicial power when jurisdiction is based on federal question or diversity of citizenship. See Owen Equip. and Erection Co. v. Kroger, 437 U.S. 98, 371-2 & n.10 (1978). To satisfy the case or controversy requirement, all claims, including claims by persons moving to intervene, must derive from a "common nucleus of operative fact." Doherty v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, 142 Fed. App'x 573, 575 (3d Cir. 2005) (Becker, J.).

Subject matter jurisdiction is limited not only by the provisions of Article III, but also by Acts of Congress. Owen, 537 U.S. at 372 ("Constitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy."). Subsection 1367(b), which interposes the most obvious problems for Granite State's intervention, limits the general grant of supplemental jurisdiction in conformity with

statutory law:

> In any civil action of which the district courts have original jurisdiction, founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) . . . over claims by persons . . . seeking to intervene as plaintiffs under Rule 24 . . . , when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

By its terms, § 1367(b) expressly limits jurisdiction over claims by persons intervening as plaintiffs under Rule 24; see Dev. Fin., 54 F.3d at 159 (supplemental jurisdiction over the claims of a plaintiff-intervenor who shares citizenship with a defendant is eliminated). See also Owen, 437 U.S. at 376 (court lacked jurisdiction over plaintiff's counterclaim against an impleaded third-party, where the claim did not depend upon resolution of the original claims within the court's diversity jurisdiction, and there was no independent basis for federal jurisdiction). Although Granite State captions its motion as one to intervene as a defendant, the court must "penetrate the nominal party alignment and . . . consider the parties' actual adversity of interest." Dev. Fin, 54 F.3d at 159-60.

Granite State's defensive counterclaims are not proposed because it was haled into court against its will. In early 2005, GRC and Granite State stipulated to dismissal of their claims. Moreover, Granite State moves to initiate affirmative claims for reformation and rescission that do not depend on resolution of any current claims within the court's diversity jurisdiction.

Nonetheless, Granite State, Lexington, and AIU have concerns that coincide. Granite State's liability, along with that of the other defendant excess insurers, is joint and several.

J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502, 508 (Pa. 1993) (insured is "free to select the policy or policies under which it is to be indemnified"). Each insurer is adverse to plaintiff's claims for performance under the policies and adverse to another defendant's cross-claims for contribution and indemnity. In this context, Granite State desires a ruling that its policy should be reformed to include an asbestos-related exclusion. Granite State suggests that Lexington's and AIU's policies would follow form to its reformed policy exclusion, and such a ruling would aid Lexington's and AIU's policy defenses against GRC.[4]

Granite State's alignment with Lexington and AIU is grounded on shared business concerns, not on questions of law or fact that are common to the interpretation and enforcement of these insurer's separate policies. Granite State's party alignment is more properly considered to be that of a plaintiff for purposes of § 1367(b). As a nominal intervening defendant of the same citizenship as plaintiff, Granite State would avoid the requirement of diversity of citizenship. Granite State waited years after suit to proceed against the diverse defendants, but now attempts to interpose affirmative claims for relief for which no basis to extend federal jurisdiction has existed since this litigation commenced. See Owen, 437 U.S. at 2400 ("It is axiomatic that the Federal Rules of Civil Procedure do not

[4] It is unclear, however, whether Granite State's liability to Lexington and AIU for contribution or indemnity is at issue, since these three insurers are affiliated. Granite State, Lexington, and AIU are separate corporations. In 1984-85, they operated as "sister companies" of the American International Group, but are now known as "Chartis companies." Defs. br., doc. no. 360-2 at 19 n.6; Defs. br., doc. no. 284 at 1 n.2, 11; Def. reply br., doc. no. 405 at 1 ("AIG" was a holding company).

create or withdraw federal jurisdiction.").

It is correct that in situations involving intervention as of right, supplemental (ancillary) jurisdiction over claims as to which there is no independent basis for federal jurisdiction has been upheld. See, e.g., Owen, 437 U.S. at 375 n.18 (citing Phelps v. Oaks, 117 U.S. 235, 241 (1886)). However, Granite State's claims do not present the type of legal interests that have been protected by intervention. Federal Rule of Civil Procedure 24(a)(2) provides:

> Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

As a litigant moving to intervene as a matter of right under Rule 24(a)(2), Granite State must demonstrate four elements: a timely motion; sufficient interest in the litigation; which might be impaired, as a practical matter, by disposition of the action; and inadequate representation of the movant's interest by existing parties to the litigation. Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005), Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998). "Each of these requirements must be met to intervene as of right." Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995).

An interest sufficient for intervention must be one "relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2), and is "significantly

protectable," Donaldson v. United States, 400 U.S. 517, 531 (1971). Granite State maintains that its umbrella policy "established the scope of coverage for the 1984-85 policy year" and, therefore, its contractual rights and obligations are at issue. Def. br., doc. no. 389 at 4, 8-9. Granite State: "Consideration and determination of the terms and conditions of the Lexington and AIU contracts necessarily requires consideration of the terms of the Granite State policy . . . to which the Lexington and AIU policies follow form." Id. at 9. This does not state an adequate interest for intervention in the present litigation.

Granite State does not have a legal interest in the insurance transactions and contracts that are the subject of this action, and is not a party to the Lexington and AIU contracts. It has no standing to assert Lexington's or AIU's contractual rights. See Petty v. Hosp. Serv. Ass'n of N. Pa., 23 A.3d 1004, 1013 (Pa. 2011) ("party to an insurance contract has standing to sue to enforce the terms of the insurance contract"); Catroppa v. Carlton, 998 A.2d 643, 646-47 (Pa. Super. Ct. 2010), appeal denied, 26 A.2d 1100 (Pa. 2011) ("While an insurer is in privity with its insured regarding matters implicating the insurance policy that establishes this relationship, this privity does not extend to matters arising from other insurance contracts between the insurer and third parties."). Granite State is unable to obtain reformation or rescission of the other defendants' policies. Navarro v. Ohio Cas. Ins. Co., 472 A.2d 701, 702 (Pa. Super. Ct. 1984) (to be entitled to reformation due to mutual mistake, "a person must be either a party to the instrument or in privity with said parties").

Granite State says it should be allowed to intervene because the excess policies at

issue in this action "follow form" to its first-layer umbrella policy.[5] This position relies on the unstated premise that if the defendant excess insurers are found liable on their insurance agreements, Granite State must be as well. This is a faulty proposition. "By definition, a following form policy incorporates terms from an underlying, primary policy [or here, umbrella policy]." Kropa v. Gateway Ford, 974 A.2d 502, 505 n.3 (Pa. Super. Ct. 2009), appeal denied, 990 A.2d 730 (Pa. 2010) (citing Lexington Ins. Co. v. W. Pa. Hosp., 318 F. Supp.2d 270, 274 n.3 (W.D. Pa. 2004) ("It is well settled that the obligations of following form excess insurers are defined by the language of the underlying policies, except to the extent that there is a conflict between the two policies, in which case the wording of the excess policy will control."), aff'd, 423 F.3d 318 (3d Cir. 2005)).

While the excess policies at issue here cannot be interpreted in isolation from the umbrella policy, a determination of the defendant insurers' rights and obligations can occur in Granite State's absence. The umbrella policy does not create any contract rights or obligations for Granite State under the excess policies. A ruling whether the excess policies follow form to the umbrella policy would not impinge on any existing contract rights or responsibilities held by Granite State under the umbrella policy. See Continental Cas. Co. v ZHA, Inc., 154 F.R.D. 281, 282-83 (M.D. Fla. 1994) (general liability insurer had no interest relating to a professional liability policy issued to a common insured and could not intervene in a declaratory judgment action to determine rights and obligations under the

[5] This issue has not been ruled on, and GRC disputes that Lexington's policy follows Granite State's policy form.

professional liability policy).

Granite State cannot show it has an interest that might be impaired by disposition of the action. In the prior appeal in this case, defendant insurers asserted that the "absent insurers whose policies must be interpreted in [this] declaratory judgment action have an interest relating to the subject of the action – the interpretation of their policies – and the disposition of the action in their absence might, as a practical matter, impair or impede their ability to protect the interpretation of their policies." Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 316-17 (3d Cir. 2007) (internal quotation marks omitted). Our Court of Appeals rejected this position as being "without support." Id. (citing Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 401-02 (3d Cir. 1993)). Although this was decided in the context of whether defendants' interests were sufficient to qualify them as necessary parties under Rule 19(a)(2), the same analysis applies to Granite State's application for intervention under Rule 24(a). Granite State would not be bound by any ruling in this action. Moreover, as to Granite State, the outcome of this litigation would not result in *res judicata*, claim preclusion, or significant *stare decisis*. See Gen. Refractories, 500 F.3d at 317 (merely "persuasive precedent" against an absent party would not impair that party's ability to protect its interest within the meaning of Rule 19(a)(2)(i)); Janney Montgomery, 11 F.3d at 409 ("an argument that issue preclusion is possible is not enough").

Granite State also submits that its interests are "so divergent" from Lexington's and AIU's that those defendants "cannot devote proper attention to Granite State's" and their

representation would therefore be inadequate. Def. br., doc. no. 389 at 11. However, Granite State does not have any protectable interests to be represented in this action. Its concern that the excess insurers do not have first-hand knowledge of its "more extensive negotiations" for the umbrella policy would be relevant only if that policy were at issue in this litigation, which it is not. Id. at 11-12.

In the alternative, Granite State moves for permissive intervention under Rule 24(b), which provides in part: "On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3). Permissive intervention is within the court's discretion. Brody by and Through Sugzdinis v. Spang, 957 F.2d 1108, 1124 (3d Cir. 1992). Unlike intervention as of right, an applicant for intervention by permission must establish an independent jurisdictional basis for its claims. Beach v. KDI Corp., 490 F.2d 1312, 1319-20 (3d Cir. 1974); Westra Constr., Inc. v. U.S. Fid. & Guar. Co., 546 F. Supp.2d 194, 199-200 (M.D. Pa. 2008).

Permissive intervention is not appropriate whether or not Granite State's claims for reformation and rescission "share common questions of law and fact with GRC's action against its insurers . . . ." Def. br., doc. no. 389 at 16. The complaint in intervention posits only affirmative state law claims as to which there is no independent federal basis for

jurisdiction. Also, Granite State's presence would make case management unduly complex. It would delay and prejudice the timely adjudication of the parties' numerous dispositive motions. Granite State's practical concerns about this litigation are adequately represented by defendants Lexington and AIU inasmuch as these three insurers are represented by the same counsel.

Intervention, whether by right under Rule 24(a) or by permission under Rule 24(b), must be timely, which Granite State's motion is not. "Timeliness of an intervention request 'is determined by the totality of the circumstances.'" In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005) (quoting United States v. Alcan Alum., Inc, 25 F.3d 1174, 1181 (3d Cir. 1994)). "Among the factors to be considered are: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Id. (citing Mountain Top, 72 F.3d at 369).

In this case, Granite State knew as far back as May 1985 that its policy did not contain an exclusion related to asbestos products liability. The participation of its counsel in many years of discovery in this action afforded ample opportunity to identify shortcomings in the underwriting or compilation of the Granite State, Lexington, and AIU policies. In October and November, 2010, GRC filed summary judgment motions based on the absence of such an exclusion in the Lexington and AIU policies. Even then, Granite State did not move for intervention to cure the alleged omission. At this stage in the case, intervention is untimely. The delay would prejudice the existing parties and waste judicial resources. See Choike v.

Slippery Rock Univ. of Pa. State Sys. of Higher Educ., 297 Fed. App'x 138, 141 (3d Cir. 2008) (intervention properly denied where case was in relatively advanced stage and discovery closed five months before the motion was filed).

An order accompanies this memorandum.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.