IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GENERAL REFRACTORIES COMPANY    :        CIVIL ACTION
            :
     v.                :
            :
FIRST STATE INSURANCE CO., et al.    :        No. 04-3509

## MEMORANDUM

Ludwig, J.                                    March 21, 2012

Each of the eleven defendants in this action moves for summary judgment.[1]  Fed. R.

Civ. P. 56.  See footnote 1 for case history.  Jurisdiction is diversity.  28 U.S.C. § 1332.

---

[1] On July 23, 2004, plaintiff General Refractories Company commenced this action against 16 of its umbrella and excess insurance carriers, suing for a declaration of insurance coverage against asbestos-related claims and for breach of insurance contract.  All defendants denied coverage, maintaining that the policies sold to plaintiff GRC contain exclusions of such claims.

On June 3, 2005, five of the insurance carriers moved to dismiss the action under Fed. R. Civ. P. 12(b)(7) for failure to join indispensable parties under Fed. R. Civ. P. 19 (doc. no. 149).  Those defendants contended that the complaint had not named all of the excess and umbrella carriers that insured GRC from 1979 to 1986, and that the absent carriers were indispensable to the action.  Some of the absent carriers were non-diverse.  On September 27, 2005, this court dismissed the action, ruling that the unnamed insurers were necessary and indispensable parties under Rule 19.  Gen. Refractories Co. v. First State Ins. Co., 234 F.R.D. 99, 100 (E.D. Pa. 2005).  On October 27, 2005, reconsideration of that ruling was denied.  (Orders and mem., doc. nos. 158, 159, 166.)  Defendants appealed both orders.  On August 28, 2007, our Court of Appeals reversed the September 27, 2005 order and remanded this action.  Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306 (3d Cir. 2007).

On November 15, 2007, discovery was commenced.  (Order, Nov. 13, 2007, doc. no. 191).  After remand, on June 7, 2010, nearly six years after this litigation had been begun, fact discovery closed.  (Orders, Jan. 21, 2010 and Feb. 19, 2008, doc. nos. 239, 199.)  On April 29, 2011, expert discovery was closed.  (Order, Mar. 17, 2011, doc. no. 303).

On August 1, 2011, defendants moved for summary judgment, contending that one or more policy exclusions preclude coverage for the underlying asbestos-related bodily injury claims (doc. nos. 338, 339, 340, 341, 342 (sealed), 343 (sealed), 344 (sealed), 345 (sealed), 347-350 (sealed)).  GRC opposed the motions (doc. nos. 365, 368 (sealed), 373, 374, 375, 376, 377 (sealed), 378 (sealed), 379).  Defendants replied (doc. nos. 395, 396, 397, 398, 399, 401(sealed), 402 (sealed), 403 (sealed), 404 (sealed)).  By November 15, 2011, all briefs were submitted.

Plaintiff General Refractories Company (GRC), a manufacturer and supplier of asbestos-containing products, sues its insurance carriers for a declaration of excess liability insurance coverage for underlying asbestos-related claims.[2] GRC is a defendant in some 33,000 asbestos-related lawsuits throughout the United States. It purchased the insurance policies between 1979 and 1985.

Defendants'[3] motions for summary judgment (doc. nos. 338, 339, 340, 341, 342 (sealed), 343 (sealed), 344 (sealed), 345 (sealed), 347-350 (sealed))) assert that one or more exclusions in the policies sold to GRC preclude coverage. They say the plain language of each exclusion unambiguously eliminates coverage for all of the underlying asbestos-related claims.

In its responses to the motions, GRC denies that the exclusions are that broad: "different exclusions meant different things." Pl. br. at 7, doc. no. 368. While GRC

---

[2] GRC sues for a declaration "that any asbestos-related exclusions in the Policies are invalid and unenforceable" and that defendants are required "to pay for GRC's defense of the Underlying Actions, and to reimburse GRC for, or pay on behalf of GRC, any and all judgments or settlements reached in the Underlying Actions, until such time as the total aggregate limits of each of the foregoing insurance policies have been exhausted." (Compl., doc. no. 1 at 10.) GRC also sues for breach of contract, claiming that defendants "refused to honor their obligations to provide GRC with a defense or indemnification in and for the Underlying Actions." (Id., ¶ 73, at 11.) Among other things, GRC seeks "entry of an award requiring Defendants to pay GRC all monetary damages suffered by GRC caused by their breaches, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs." (Id. at 12.)

[3] Defendants:  Hartford Accident and Indemnity Company; First State Insurance Company; Government Employees Insurance Company; Republic Insurance Company; Westchester Fire Insurance Company; AIU Insurance Company; Continental Insurance Company as successor-in-interest to certain policies of insurance issued by Harbor Insurance Company; Lexington Insurance Company; Sentry Insurance A Mutual Company, as assumptive reinsurer of Great Southwest Fire Insurance Company, sued herein as Vanliner Insurance Company; Travelers Casualty and Surety Company (formerly known as The Aetna Casualty and Surety Company and incorrectly designated in the complaint as "St. Paul Travelers"); and Westport Insurance Corporation, formerly known as Puritan Insurance Company.

concedes that some policy terms would exclude allegations contained in the underlying lawsuits, it contends that coverage exists for most of the claims.[4]

The following facts are not in dispute.  GRC manufactured, distributed, and sold products that contained asbestos.  Defendants drafted the policy exclusions; they were not specially crafted or designed for GRC and GRC did not negotiate any of the exclusionary terms.  GRC received copies of the exclusions only after the policies were sold.  The underlying lawsuits are for injuries arising from exposure to GRC's products.[5]

"Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999); accord Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 962 (Pa. Super. Ct. 2007), appeal denied, 946 A.2d 688 (Pa. 2008). "An exclusion from liability

---

[4] GRC agrees that exclusionary terms in Continental/Harbor's 1985 policy HI 178742 and GEICO's 1982 policy GXU 30166 would exclude the pertinent underlying lawsuits, see, e.g., Pl. br. at 3 n.3, 13 (doc. no. 375); Pl. br. at 1-3, 22 (doc. no. 368).  Despite those terms, disputed issues remain whether those exclusions are enforceable.  On April 29, 2011, GRC moved for partial summary judgment against all defendants, asserting that the exclusions were not submitted to or formally approved by the Pa. Insurance Commissioner as required by Pennsylvania's insurance laws – in particular, 40 P.S. § 477b (doc. nos. 311, 312 (sealed)).  GRC's position is that the exclusions are invalid and unenforceable because they violate public policies expressed in those laws.  On June 28, 2011, defendants cross-moved for partial summary judgment (doc. nos. 321, 322, 323 (sealed), 324 (sealed), 366), maintaining  that the exclusions do not violate public policy and are enforceable as a matter of law.  On February 21, 2011, the court denied the  motions, ruling that genuine triable disputes exist on these issues (Order, doc. no. 418).

[5] A few  underlying complaints are contained in the record.  See, e.g., Conley Aff. ¶ 3, Ex. 1, Compl. ¶9, Yeamans v. A.W. Chesterton, Inc., No. 00122-CC10263, Circuit Court for the City of St. Louis, Mo., 22nd Judicial Circuit ("Plaintiff was . . . exposed to . . . asbestos and asbestos-containing products. . . .") (doc. no. 368); DiFebbo Aff. ¶ 14, Ex. 13, Compl. ¶ 35(b), Kovich v. A.P. Green Indus., Inc., No. 92-07790, Court of Common Pleas of Chester County, Pa. ("Plaintiff . . . exposed to asbestos dust and fibers created when their previously installed asbestos products were removed and replaced.") (doc. no. 343).

must be clear and exact and unambiguous to be given effect." Id. at 963 (citing Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1177 (Pa. 2006)).

"Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." Heller v. Pa. League of Cities & Mun., 32 A.3d 1213, 1220 (Pa. 2011). "Whether ambiguity exists cannot be resolved in a vacuum, . . . but must instead be considered in reference to a specific set of facts." Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 978 (Pa. 2001) (citing Madison, 735 A.2d at 106); accord Kropa v. Gateway Ford, 974 A.2d 502, 508 (Pa. Super. Ct. 2009) (citing Madison), appeal denied, 990 A.2d 730 (Pa. 2010).

In the interpretation of written, integrated contracts, such as the insurance policies here, Pennsylvania follows the Restatement (Second) of Contracts § 202 (1981), et seq. AstenJohnson, Inc. v Columbia Cas. Co., 562 F.3d 213, 220 (3d Cir. 2009) (citing Sunbeam Corp. v. Liberty Mut. Ins. Co., 781 A.2d 1189 (Pa. 2001)). Under that approach, "[p]arole evidence cannot be used to contradict the provisions of such a contract." Id. However, in determining whether such a contradiction exists, "the text of the contract must first be interpreted in light of any evidence of trade usage and the performance of the parties under the contract." Id. (citing Sunbeam, 781 A.2d at 1193); accord Hussey Copper, Ltd. v. Arrowood Indem. Co., 391 Fed. App'x 207, 210-11 (3d Cir. 2010). Even in the absence of a showing of ambiguity, evidence of industry custom and trade usage may be offered:

> In the law of contracts, custom in the industry or usage in the trade is always relevant and admissible in construing commercial contracts and does not depend on any obvious ambiguity in the words of the contract.

Sunbeam, 781 A.2d at 1193 (Pa. 2001); see also Restatement (Second) of Contracts § 202, cmt. a (rules in aid of interpretation do not depend on any determination of ambiguity"); id. § 220 cmt. d ("no requirement that an ambiguity be shown before usage can be shown").  "If after the consideration of such evidence, the intent of the parties remains unclear, evidence concerning the pre-contract negotiations of the parties may also be considered in reaching a conclusion regarding the intention of the parties." AstenJohnson, 562 F.3d at 220 (citing Resolution Trust Corp. v. Urban Redev. Auth. of Pittsburgh, 638 A.2d 972, 975-76 (Pa. 1994) ("but extraneous evidence is admissible to show local usage which would give a particular meaning to the language").

Defendants:  The plain language of each exclusion is susceptible to only one reasonable interpretation – claims for all injuries related to asbestos in any form are excluded. Defendants submit extrinsic evidence of the parties' communications and course of conduct contemporaneous with the issuance of the policies, as well as numerous documents and deposition transcripts.  This evidence, they assert, confirms the proffered plain meaning of the exclusions and the parties' intent to exclude all types of asbestos-related claims.[6]  Some defendants submit extrinsic evidence of industry custom and trade usage,[7] to show that this evidence also reflects the proffered plain meaning of the terms.  On the other hand, GRC submits extensive extrinsic evidence as to how the insurance industry, insurance policies, and

_____

[6] See Rosenblum Aff., doc. nos. 342, 403 (sealed); DiFebbo Affs., doc. nos. 343, 344, 345 (sealed); Zwick and Ruggeri Affs., doc. nos. 348-50 (sealed), Weinberg Aff., 404 (sealed).

[7] See, e.g., DiFebbo Affs., 401, 402 (sealed).

litigants of asbestos-related claims used and regarded the terms.[8]  According to GRC, this evidence establishes other reasonable interpretations of the terms and gives insurance protection to GRC.

As a result, substantially all of the proffered evidence presents triable disputes as to the  meaning and application of each exclusion at issue.  The meaning of the exclusionary terms  as evidenced by custom in the industry and usage in trade must be established first – only  then may it be determined whether parole evidence should be considered.  See AstenJohnson,  562 F.3d at 221.  Moreover, the meaning of the exclusionary terms must be shown before the  terms can be compared and applied to the allegations in the underlying complaints.  Resolution of these disputes depends on the credibility of the parties' witnesses, experts, and  proofs at trial.

The question whether the exclusionary terms contain ambiguity as applied to the allegations used in the underlying lawsuits cannot be determined on this record.  At present this question has been submitted based solely on the parties' summary characterizations of the allegations.  Defendants have the burden of proving that the policy terms exclude the specific factual allegations at issue, and these affirmative defenses have not been fully developed.

Rulings on the meaning of the various exclusionary terms, and whether those terms are clear and unambiguous, will be reserved for trial.

---

[8]  Conley Affs., 9/16/11, doc. no. 368 (sealed), 9/26/11, doc. no. 378 (sealed).

An order accompanies this memorandum.  That order holds that genuine triable disputes exist as to the meaning and applications of the exclusionary terms.  The questions whether those terms are clear or ambiguous and whether those terms provide or preclude insurance coverage for GRC's defense or indemnification of the underlying claims are not decided.

BY THE COURT:


 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J.

7