IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENERAL REFRACTORIES COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST STATE INSURANCE CO., et al. | : | No. 04-3509 |

**MEMORANDUM**

Ludwig, J.                                                                                               March 26, 2012

All of the eleven defendants in this action again move for summary judgment (doc. no. 346 sealed).[1]  Fed. R. Civ. P. 56.  See footnote 1 for case history.  Jurisdiction is diversity.  28 U.S.C. § 1332.

---

[1] On July 23, 2004, plaintiff General Refractories Company commenced this action against 16 of its umbrella and excess insurance carriers, suing for a declaration of insurance coverage against asbestos-related claims and for breach of insurance contract.  All defendants denied coverage, maintaining that the policies sold to plaintiff GRC contain exclusions of such claims.

On June 3, 2005, five of the insurance carriers moved to dismiss the action under Fed. R. Civ. P. 12(b)(7) for failure to join indispensable parties under Fed. R. Civ. P. 19 (doc. no. 149).  Those defendants contended that the complaint had not named all of the excess and umbrella carriers that insured GRC from 1979 to 1986, and that the absent carriers were indispensable to the action.  Some of the absent carriers were non-diverse.  On September 27, 2005, this court dismissed the action, ruling that the unnamed insurers were necessary and indispensable parties under Rule 19.  Gen. Refractories Co. v. First State Ins. Co., 234 F.R.D. 99, 100 (E.D. Pa. 2005).  On October 27, 2005, reconsideration of that ruling was denied.  (Orders and mem., doc. nos. 158, 159, 166.)  Defendants appealed both orders.  On August 28, 2007, our Court of Appeals reversed the September 27, 2005 order and remanded this action.  Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306 (3d Cir. 2007).

On November 15, 2007, discovery was commenced.  (Order, Nov. 13, 2007, doc. no. 191).  After remand, on June 7, 2010, nearly six years after this litigation had been begun, fact discovery closed.  (Orders, Jan. 21, 2010 and Feb. 19, 2008, doc. nos. 239, 199.)  On April 29, 2011, expert discovery was closed.  (Order, Mar. 17, 2011, doc. no. 303).

On August 1, 2011, defendants moved for summary judgment, contending that the action should be dismissed with prejudice because GRC lacks any insured damages (doc. no. 346 (sealed)).  GRC opposed the motion (doc. no. 369 (sealed)), and defendants replied (doc. no. 400 (sealed)).  By November 15, 2011, all briefs were submitted.

1

Plaintiff General Refractories Company (GRC), a manufacturer and supplier of asbestos-containing products, sued its insurance carriers for a declaration of excess liability insurance coverage in some 33,000 underlying asbestos-related suits pending throughout the United States.[2] GRC purchased the insurance policies between 1979 and 1985. After defendants denied coverage, GRC entered into "two-tiered or conditional" settlements[3] with many of the underlying claimants.

Defendant insurers'[4] motion asserts that GRC under the pertinent policies cannot prove any damages. Its position is that under each policy the insuring agreement is to pay

---

[2] The lawsuit asks for a declaration "that any asbestos-related exclusions in the Policies are invalid and unenforceable" and that defendants are required "to pay for GRC's defense of the Underlying Actions, and to reimburse GRC for, or pay on behalf of GRC, any and all judgments or settlements reached in the Underlying Actions, until such time as the total aggregate limits of each of the foregoing insurance policies have been exhausted." (Compl., doc. no. 1 at 10.) GRC also sues for breach of contract, claiming that defendants "refused to honor their obligations to provide GRC with a defense or indemnification in and for the Underlying Actions." (Id., ¶ 73, at 11.) Among other things: the "entry of an award requiring Defendants to pay GRC all monetary damages suffered by GRC caused by their breaches, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs." (Id. at 12.)

[3] "A settlement in which the plaintiff is paid additional money in the event a specified condition is met is . . . 'two-tiered.' The conditional portion of the settlement constitutes the 'second tier.'" Greater N.Y. Mut. Ins. Co. v. N. River Ins. Co., 85 F.3d 1088, 1090 n.1 (3d Cir. 1996). "[T]his type of settlement provides for the tort victim to recover a larger amount if the insurer is liable than if the tortfeasor must pay the settlement out of its own pocket." Trustees of the Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890, 893 (3d Cir. 1987).

[4] Defendants insurers: Hartford Accident and Indemnity Company; First State Insurance Company; Government Employees Insurance Company; Republic Insurance Company; Westchester Fire Insurance Company; AIU Insurance Company; Continental Insurance Company as successor-in-interest to certain policies of insurance issued by Harbor Insurance Company; Lexington Insurance Company; Sentry Insurance A Mutual Company, as assumptive reinsurer of Great Southwest Fire Insurance Company, sued herein as Vanliner Insurance Company; Travelers Casualty and Surety Company (formerly known as The Aetna Casualty and Surety Company and incorrectly designated in the complaint as "St. Paul Travelers"); and Westport Insurance Corporation, formerly known as Puritan Insurance Company.

only what GRC is obligated to pay "by reason of liability imposed by law for damages."[5] GRC, they say, "has not paid one penny to the claimants" in thousands of the settlements and "never will." Defs. br. at 1, doc. no. 346. This is so, they continue, because GRC's promises to fund the settlements are restricted to the proceeds of whatever may be collected in the present action, and policy exclusions eliminate coverage for the underlying claims. Id. at 1, 6-7.[6] According to defendants, they have no legal obligation to pay what GRC is not obligated to pay "from its own financial resources": "[I]n return for a complete and absolute release . . . , GRC agreed that the claimants would be paid if, and only if, GRC prevails in this coverage litigation. . . . [In the event GRC does not recover damages in this litigation], claimants agreed to receive nothing and have no recourse against GRC." Id. at 1-2, 3, 8, 9.[7] Because the settlements "impose no legal liability on GRC whatsoever" to pay the underlying claimants' damages, defendants aver that they have no obligation to indemnify GRC. Id. at 2; Defs. reply br. at 1-2, doc. no. 400.

GRC opposes the motion. It asserts entitlement to an award of each defendant's share necessary to pay for the underlying settlements as well as GRC's defense costs and other

---

[5] Defendants submitted each policy's insuring agreement, LoCasale Aff., Exs. 2-11, and Def. br., App. A, doc. no. 346 (sealed). Their position is that "differences in these provisions are insignificant for purposes of this motion." Id. at 3.

[6] See LoCasale Aff., Ex. 16, Jan. 1, 2001 Assignment and Security Agreement; Ex. 17, Feb. 10, 2004 Amendment to Assignment and Security Agreement.

[7] See LoCasale Aff., Ex. 18, Compromise Settlement Agreement and Release; Ex. 19, Barry L. Katz's Nov. 6, 2002 letter to counsel for underlying claimants.
  "No recourse" is defined: "The lack of means by which to obtain reimbursement from, or a judgment against, a person or entity." Black's Law Dictionary (9th ed. 2009).

3

declaratory judgment relief. According to GRC, each policy's insurance agreement encompasses the settlements it made in the underlying lawsuits.[8] Pl. br. at 10-11, doc. no. 369.

Barry L. Katz, Esq., GRC's Rule 30(b)(6) representative, testified:

A. There was a time period in 2000-2001 where there were settlements that had a cash component and a non-cash component.

\* \* \*

Q. Is it your understanding . . . that every entry on the queue that shows a cash payment is related to a settlement for which GRC has already been indemnified by some other insurer other than the ones that are defendants in this action?
A. If there was a cash payment, it was paid by an insurance company. I believe that's the case.

\* \* \*

Q. [A]re there any claims where GRC has paid cash out of pocket and it's seeking recovery in this litigation for such claims?
A. Not that – leaving aside defense costs, separate-issue claims, I don't believe so.

\* \* \*

---

[8] The record does not contain complete copies of all of the policies. However, it is not disputed that each policy would insure settlement obligations, subject to all policy terms and conditions. For example:

The Company hereby agrees . . . [t]o indemnify the INSURED . . . for ULTIMATE NET LOSS . . . [which means in part] sums paid as damages in settlement of a claim . . . for which the INSURED is legally liable . . . . (First State policy nos. 943208, 942632, doc. no. 348 (sealed)).

\* \* \*

The Company hereby agrees . . . to indemnify the Insured . . . for damages . . . as more fully defined by the term "ultimate net loss" [which means in part] . . . settlement . . . of claims and suits . . . . (Century Indemnity policy nos. CIU 42 89 94, CIU 54 91 38, doc. no. 339.)

\* \* \*

The Company hereby agrees . . . to indemnify the Assured . . . for damages . . . as more fully defined by the term "ultimate net loss" . . . [which means in part] . . . the total sum which the Assured . . . becomes obligated to pay by reason of personal injury . . . either through adjudication or compromise . . . and for . . . settlement . . . of claims and suits . . . . (Granite State policy no. 6484-0088, doc. no. 277-4, Ex. E; see also Insurance Company of the State of Pennsylvania policy no. 4485-1093, doc. no. 338.)

> Q. Am I correct that when GRC enters into one of these settlement agreements, where it gives the plaintiffs an interest in the outcome of this litigation, that GRC does not pay any cash out of pocket with respect to those settlements?
> A. Yes.
> Q. Is that true in all instances?
> A. Yes.
>
> * * *
>
> Q. Who first proposed that the underlying claimants settle cases without accepting a present cash payment?
> A. I did. . . . Because General Refractories was running out of insurance . . . as to which the carriers had agreed to provide coverage. . . . Originally the proposal was that as to any settlements entered into, they would get half cash and half an interest in the litigation . . . . The reason being that there was still insurance companies covering General Refractories and money available. But it was clear that the writing was on the wall . . . . GRC would run out. And, so, originally it was half cash, half the arrangement to be paid later. And when the insurance actually ran out, it became fully to be paid later.
>
> * * *
>
> Q. Aside from insurance proceeds, at the time when – I'm using your words – the insurance ran out, did GRC have any other assets?
> A. Effectively, no. It did not.
>
> * * *
>
> Q. If this case comes to a conclusion, say there's a judgment in favor of the defendants, and GRC recovers no money, what do the underlying claimants get in that instance?
> A. No money.
>
> * * *
>
> Q. So, if the defendants win this case and GRC recovers nothing, do any of the underlying claimants . . . have any recourse to GRC for any further payment?
> A. I don't believe so. . . . I can tell you that my understanding of the actual agreements with them, the settlement agreements and releases, is that they've released General Refractories with respect to their cases and the only consideration that they're getting is their settlement amount. And that payment obligation is only with respect to the outcome of this case.

Katz dep., 1058:12-15, 1059:6-14, 1060:5-9, 1109:12-20, 1110:4-1111:6, 1111:17-21,

1222:25-1223:5, 1223:6-1224:25, LoCasale Aff., Ex. 12, doc. no. 346.

Pennsylvania substantive law, as the parties agree, governs this damages dispute. In an action based on diversity of citizenship, a federal court generally applies the damages law of the jurisdiction in which it sits. Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 621 (3d Cir. 2009) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)); Thabault v. Chait, 541 F.3d 512, 521 (3d Cir. 2008) (validity of a theory of damages is "a matter uniquely subject to state law principles") (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under Pennsylvania law, an insurance contract is governed by the law of the state in which the contract was made. Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 162 (3d Cir. 2011) (citing Crawford v. Manhattan Life Ins. Co. of N.Y., 221 A.2d 877, 880 (Pa. Super. Ct. 1966)). The law of the state where the insurance policy was delivered to the insured is the law to be applied in construing its terms. Peele v. Atl. Exp. Transp. Group, Inc., 840 A.2d 1008, 1011 (Pa. Super. Ct. 2003); Crawford, 221 A.2d at 881. Here, GRC's business premises in Pennsylvania will be presumed to be the place of delivery, and the record does not contain evidence to the contrary. See Compl. (premises located in Bala Cynwyd, Pa.).

A federal court sitting in diversity must apply the law of the state that governs the issue to be decided. Mitchell Partners, L.P. v. Irex Corp., 656 F.3d 201, 203 (3d Cir. 2011) (citing Klaxon, 313 U.S. at 496-97)). "In the absence of a definitive ruling by a state's highest court, we must predict how that court would rule if faced with the issue." Meyer, 648 F.3d at 164. For this purpose, "decisions of state intermediate appellate courts, of federal

6

courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as . . . analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand" offer guidance. Id. (citations and internal quotation marks omitted). "'Although not dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise.'" Allstate Prop. & Cas. Ins. Co. v. Squires, 667 F.3d 388, 391 (3d Cir. 2012) (quoting Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996)).

The question here is whether the conditional settlements entered into by GRC are permissible under Pennsylvania law. Because the Pennsylvania Supreme Court has not ruled on this issue, it is necessary to predict the conclusion it would reach in the event that it did so. The controlling case in this area, decided by our Court of Appeals, is Trustees of the Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890 (3d Cir. 1987) (Becker, J., later C.J.). Judge Becker found Alfiero v. Berks Mut. Leasing Co., 500 A.2d 169 (Pa. Super. Ct. 1985), appeal denied (Sept. 9, 1986) "the most persuasive indication of the position of Pennsylvania law," predicting that Pennsylvania would uphold the validity of two-tiered conditional settlements when the insurer refused to defend against the plaintiff's suit, subject to the requirements of good faith and reasonableness. Trustees, 815 F.2d at 902. Our Court of Appeals repeated this prediction in Greater N.Y. Mut. Ins. Co. v. North River Ins. Co., 85 F.3d 1088, 1090, 1092 (3d Cir. 1996) (Scirica, now C.J.) (a two-tiered conditional settlement between a

plaintiff, an insured, and the insured's excess insurer, when the primary insurer refused to settle the plaintiff's claim). Judge Scirica: "Alfiero is the most persuasive statement of Pennsylvania law." Id. at 1092 n. 4.

The best indicators of Pennsylvania law on the subject today remain Alfiero, together with Trustees of the Univ. of Pa. (1987) and Greater N.Y. Mut. Ins. Co. (1996). Since Alfiero was decided in 1985, Pennsylvania intermediate appellate courts have not re-examined the validity of conditional settlement agreements. Two Pennsylvania trial courts have endorsed and followed Trustees and Alfiero in cases involving comparable settlements. See Resource Am., Inc. v. Certain Underwriting Members of Lloyd's Subscribing to Policy No. 501/FT98AAAF ("Resource"), No. 02709 Apr. Term 2003, 69 Pa. D. & C.4th 496, 2004 WL 2580554, *1, *4, *5 n.5 (Pa. Com. Pl., Phila. Co. Nov. 12, 2004) (Sheppard, J.) (Trustees "appears to be a logical extension of the Superior Court's views expressed in Alfiero"); Nat'l Union Fire Ins. Co. of Pittsburgh v. Sharon Reg'l Health Sys., GD01-14026, 69 Pa. D. & C.4th 374, 388-92, 2004 WL 3259083, *8-10 (Pa. Com. Pl., Allegheny Co. Dec. 1 2004) (Wettick, Jr., A.J.). See generally Annotation, "Insured's payment of excess judgment, or a portion thereof, as prerequisite of recovery against liability insurer for wrongful failure to settle claim against insured," 63 A.L.R.3d 627 §§ 5[a], 5[b] (1975 & West Supp. 2012) (pre-payment is not a condition of recovery in Pennsylvania).

Defendants cite one Pennsylvania case: Dennis v. New Amsterdam Cas. Co., 264 A.2d 436 (Pa. Super. Ct. 1970). There, after the insurer refused coverage, the insured settled

with plaintiff, agreeing to pay a relatively small sum and to sue the insurer to recover additional money. Recovery against the insurer would be the sole source for the balance of the settlement. Dennis affirmed the trial court's ruling that the insurer had no duty to indemnify its insured principally because the original suit involved workers' compensation, which was excluded under the policy. As relates to this action, Dennis added without elaboration that indemnification would be denied because "under the settlement agreement, [the insured] is not obligated to pay the same, this being a secondary and minor consideration." Id. at 439. Defendants contend that just as the insured in Dennis "was not obligated to pay" the balance of the settlement, GRC is under no legal obligation to fund its settlements. Id. When presented with a similar argument in Trustees, Judge Becker found the "language in Dennis . . . was at most an alternative holding" that "was so offhand and self-consciously 'minor' that we cannot consider it controlling authority." 815 F.2d at 901.

Defendants' damages theory of damages is based on Dennis – as well as on a line of similar cases from jurisdictions other than Pennsylvania that strictly construed the "legally obligated" policy language and refused recovery for the conditional upper tier.[9] The principal policy concern of these courts is the danger that an insured will enter into a

---

[9] Defendants cite: United States Fire Ins. Co. v. Lay, 577 F.2d 421 (7th Cir. 1978); Bendall v. White, 511 F. Supp. 793 (N.D. Ala. 1981); Clock v. Larson, 564 N.W.2d 436 (Iowa 1997); Silvers v. Horace Mann Ins. Co., 378 S.E.2d 21 (N.C. 1989); Stubblefield v. St. Paul Fire & Marine Ins. Co., 517 P.2d 262 (Or. 1973); Bumgarner v. Burlington Ins. Co., 691 S.E.2d 133 (N.C. Ct. App. 2010); Stroop v. N. County Mut. Ins. Co., 133 S.W.3d 844 (Tex. App. 2004); McDonough v. Dryden Mult. Ins. Co., 713 N.Y.S.2d 787 (N.Y. App. Div. 2000); Erdman v. Eagle Ins. Co., 658 N.Y.S.2d 463 (N.Y. App. Div. 1997); Terrell v. Lawyers Mut. Liab. Ins. Co. of N.C., 507 S.E.2d 923 (N.C. Ct. App. 1998); Lida Mfg. Co., Inc. v. U.S. Fire Ins. Co., 448 S.E.2d 854 (N.C. Ct. App. 1994). See also Trustees, 815 F.2d at 900 (discussing the differences among jurisdictions on this issue); Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes, "Potentially Collusive Settlements Involving Assignment of Insured's Rights to Injured Party," § 22.03 at 1630-31 (15th ed., vol. 3 & Supp. 2011) (same).

collusive or unreasonably high settlement. Here, defendants assert that inasmuch as GRC made no payment and no payment obligation will ever be imposed on it, the settlements are uninsured because they are entirely contingent on recovery from defendants. They contend that Trustees is inapposite because some portion of the settlement was paid by the insured,[10] and Alfiero is also inapposite because there a judgment was entered against the insured.[11]

Even assuming, as posited by defendants, the underlying settlement documents extinguished GRC's liability to the underlying, that would not produce a different outcome. Both Trustees and Alfiero hold that once an insurer repudiates its insurance contract, the insured is at liberty to negotiate a settlement that best protects the interests for which insurance was purchased. Trustees, 815 F.2d at 901; Alfiero, 500 A.2d at 172. The rationale of Alfiero as reiterated by Trustees permits the insured to protect itself from risks created by the insurer's refusal of coverage: "Prohibiting two-tiered settlements . . . may force insureds to turn down advantageous settlement offers."[12] 815 F.2d at 901-02. "[P]recluding such

---

[10] The Hospital of the University of Pennsylvania agreed to pay plaintiff the first tier of $200,000 from its self-insurance plan and the second tier of $2 million provided by the Pennsylvania Medical Professional Liability Catastrophe Loss Fund, plus an additional $4.8 million if it won a suit against its insurer, Lexington, which had refused coverage. Trustees, 815 F.2d at 893-94, 900.

[11] Defendants also cite Alfiero v. Berks Mut. Leasing Co., 500 A.2d 169, 171 (Pa. Super. Ct. 1985) ("Alfiero [injured plaintiff] did not agree to release Berks [tortfeasor] from further liability. . . . a final judgment had been entered in separate declaratory judgment proceedings . . . [which] . . . could be enforced by garnishment")), appeal denied (Sept. 9, 1986).

[12] "Insurance policies are risk-spreading devices. They exist primarily because the stakes of liability to an insured are greater than they are to the insurer, which can spread the loss across all of the its customers. The impact of a settlement offer may be sufficiently great on an insured that it must risk the hazards of even greater liability after trial despite odds that make the settlement advantageous. Prohibiting two-tiered settlements therefore may force insureds to turn down advantageous settlement offers." Trustees, 815 F.2d at 901-02.

settlements is undesirable." Greater N.Y., 85 F.3d at 1091-92 n.4 (reaffirming the rationale of Alfiero).

On the other hand, two-tiered conditional settlements present recognized dangers – primarily that an insured will enter into an unreasonably high settlement. Trustees, 815 F.2d at 902; see also Greater N.Y., 85 F.3d at 1092 ("the prospect of self-dealing and self-serving testimony"). But nothing in Pennsylvania law suggests that such settlements should be completely prohibited to avoid these dangers. Our Court of Appeals and Pennsylvania courts have all held that the insurer is adequately protected by the requirements that the settlement be "reasonable" and "in good faith." See Trustees, 815 F.2d at 900, 901-02; Alfiero, 500 A.2d at 172. Trustees upheld recovery for the conditional top tier, finding that Pennsylvania courts would not view the danger that an insured will enter into a collusive or unreasonably high settlement as the principal policy concern. 815 F.2d at 901-02 (noting "this agreement exempts HUP completely from liability for part of the settlement").

No doubt Pennsylvania also would not recognize defendants' theory of damages for a further reason – it is not supported by Pennsylvania's rules for the interpretation of insurance contracts. Defendants: The phrase, "by reason of liability imposed by law for damages," should be interpreted as strictly a promise to indemnify that comes into play only when liability for actual loss or damage has been shown. However, Pennsylvania's Supreme Court has held the phrase to be ambiguous, Egger v. Gulf Ins. Co., 903 A.2d 1219, 1225-26

(Pa. 2006),[13] and ambiguity in policy language is to be construed in favor of coverage. Id. (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). As a coverage provision, it must be construed to afford the greatest possible protection to the insured. Bombar v. W. Am. Ins. Co., 932 A.2d 78, 87 (Pa. Super. Ct. 2007). If construed in favor of GRC, the phrase could be interpreted to mean "by reason of liability imposed by law for loss when GRC entered into the settlements." Moreover, the policy must be read in its entirety. Nationwide Ins. Co. v. Schneider, 906 A.2d 586, 591 (Pa. Super. Ct. 2006) (quoting Riccio v. Am. Republic Ins. Co., 705 A.2d 422, 426 (Pa. 1997) ("intent of the policy is gathered from consideration of the entire instrument")), aff'd, 960 A.2d 442 (Pa. 2008); see footnote 8 for insurance agreements.

What is more, Pennsylvania law allows an insured to assign to the injured plaintiff its rights against its insurer. Egger, 903 A.2d at 1229 (post-loss assignment of rights under excess liability policy changed only the identity of the party who was entitled to recover under the policy and was valid); Greater N.Y., 85 F.3d at 1092 n.5 (citing Gray v. Nationwide Ins. Co., 223 A.2d 8 (Pa. 1966)); Barr v. Gen. Acc. Group Ins. Co. of N. Am., 520 A.2d 485, 487 (Pa. Super Ct.), appeal denied, 536 A.2d 1327 (Pa. 1987) (applying Gray). See also Alfiero, 500 A.2d at 171 ("Alfiero [injured plaintiff] did not agree to release Berks [tortfeasor] from further liability. Its agreement was to seek recovery of an agreed

---

[13] "[T]he term 'by reason of liability imposed by law' could mean, for example: (1) only after a judgment has been entered; (2) only after all appeals are exhausted and verdict stands; (3) only after efforts to execute judgment have begun; (4) the occurrence upon which the liability is based . . . ; or (5) only after the tender of primary coverage." Egger v. Gulf Ins. Co., 903 A.2d 1219, 1225-26 (Pa. 2006).

debt from a specific asset, i.e., the contractual rights owed to Berks by CNA."); Resource, No. 02709 Apr. Term 2003, 77 Pa. D. & C.4th 347, 2005 WL 503126, *1 (Pa. Com. Pl., Phila. Co. Feb. 25, 2005) (Sheppard, J.) (rejecting insurer's argument that settlement was invalid because insured had not paid any portion of the settlement amount, citing Gray and Barr); Annotation, "Assignment of insured's right to recover over against liability insurer for rejection of settlement offer," 12 A.L.R.3d 1158, § 4[a] (1967 & West Supp. 2012) (citing Gray for the proposition that an insured's assignment of its rights against its insurer before entry of judgment is valid). GRC's settlement agreements would be permissible in Pennsylvania as assignments of any damages recovered in this action.

Defendant's theory of damages does not take into account the important distinction long recognized by Pennsylvania courts between contracts of indemnity and contracts of insurance where an insurer denies coverage and refuses to defend:

> The insured left to fend for himself should be able to negotiate a settlement which will protect his interests. If the injured party cannot acquire the right to bring suit against the insurer, he will not be willing to enter into such a settlement agreement. The injured party likewise would be hampered by a prepayment rule for as was stated in Gray if the insured is insolvent there would be no need for the insurance company to act, if the only cause of action available requires payment of a judgment before it is actionable. The injured party would thus be able to recover only from the insured and if the insured is insolvent, he would be unable to pay and would have little incentive to seek payment from the insurance company.

Barr, 520 A.2d at 488. To apply principles for enforcement of a promise to indemnify is inappropriate here, where defendants have denied coverage and the only valuable asset the insured may have is its causes of action against its insurers. See Trustees, 815 F.2d at 900

(citing <u>Am. Family Mut. Ins. Co. v. Kivela</u>, 408 N.E.2d 805, 813 (Ind. Ct. App. 1980) ("an insurer may not hide behind the 'legally obligated to pay' language of the policy after it abandons its insured and the insured settles the claim against him by agreement")).

An order accompanies this memorandum.


                                        BY THE COURT:

                                         /s/ Edmund V. Ludwig
                                        Edmund V. Ludwig, J.