IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENERAL REFRACTORIES COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST STATE INSURANCE CO., et al. | : | No. 04-3509 |

**MEMORANDUM**

Ludwig, J.                                                                                                  April 26, 2012

Defendants Lexington Insurance Company and AIU Insurance Company move for reconsideration of the order and memorandum entered on January 30, 2012 (doc. nos. 406, 407). See General Refractories Company v. First State Insurance Company, No. 04-3509, fn. 1 for decision and case history (Jan. 27, 2012 memorandum).[1] Jurisdiction is diversity. 28 U.S.C. § 1332.

The reconsideration motion asserts that the granting of plaintiff's motion for partial summary judgment (doc. no. 315), denial of movants' cross-motion for partial summary judgment (doc. no. 360), and dismissal of the counterclaims amount to "manifest injustice."[2] See, e.g., defs. br. at 3-6, 10, 11 (doc. no. 413).

Specifically, movants aver that the memorandum decision "misapprehends" the basis of their counterclaims and motion for partial summary judgment: "at the time their

---

[1] By order and memorandum, reconsideration was also denied in companion case motions. General Refractories Company v. First State Insurance Company, No. 04-3509 (orders and memoranda dated Apr. 13, 2012 (doc. nos. 439, 440) and Apr. 20, 2012 (doc. nos. 446, 447)).

[2] "Manifest injustice" is one of three limited grounds for reconsideration. Cottrell v. Good Wheels, No. 11-3409, --- Fed. App'x ----, 2012 WL 171941, *3 (3d Cir. Jan. 23, 2012) (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

respective policies were issued, both parties to the Lexington and AIU policies held the mistaken belief that the policies, as written, excluded asbestos by virtue of following form to an underlying umbrella policy with an asbestos exclusion." Defs. br. at 3-4, 6-7 (emphasis in original omitted). The motion characterizes the issue: "When Lexington [AIU] issued [its] policy . . . did GRC (through its broker) and Lexington [AIU] share a mutual belief that the lead umbrella policy would contain an asbestos exclusion?" Id. at 4. Also: the memorandum decision "ultimately overlooks [that issue] by limiting the analysis to the question of whether Lexington and AIU made a mistake by not including a separate asbestos exclusion in their policies." Id. at 7-8 ("After its passing reference . . . on pages 2 and 3 of the opinion, the Court never again considers the following form argument). But see mem. at 2-3 & n.3, 8-9, 8-12.

Saying so (even repeatedly in bold and italic font) is not enough. And the statement "there also has been no determination as to whether the Lexington and AIU policies incorporate an asbestos exclusion by virtue of their following-form provisions" (defs. br. at 17) is incorrect. While the memorandum decision is interlocutory, it nevertheless reaches the essence of the parties' claims: "Today's order holds that reformation or rescission of the policies is not warranted. Plaintiff's motion for partial summary judgment will be granted, the counterclaims will be dismissed, and defendants' cross-motion will be denied." Mem. at 3.

None of the narrow reasons or categories for reconsideration apply here. The motion

for reconsideration reargues previously presented matters, asserts arguments that could have been but were not raised before, and expresses disagreement with the memorandum decision. See Bostic v. AT&T of the V.I., 312 F. Supp. 2d 731, 733-34 (D.V.I. 2004); see, e.g., previous argument: defs. br. at 14 (doc. no. 360-2); defs. reply br. at 2, 11, 16-17 (doc. no. 386); defs. sur-reply br. (doc. no. 387).

All of the movants' theories of mistake, including the now-revised version based on the follow-form policy language, were fully considered in the original memorandum. Movants had the burden to show mutual mistake by the high threshold of clear and convincing evidence. See mem. at 9-10; West v. Lincoln Benefit Life Co., 509 F.3d 160, 171 (3d Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits"); N.W. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 129 (3d Cir. 2005) (heightened standard of proof must be taken into account) (citing Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521-22 (3d Cir. 2004) (clear and convincing evidentiary standard applied on summary adjudication).

The memorandum concluded: "The evidence submitted is speculative about the parties' intent and the purported mistake." Mem. at 10. Movants say this was a "critical error" because: "It is absolutely clear from the record that the parties believed at the time the . . . policies were issued that they would follow form to a Granite State umbrella policy with

an asbestos exclusion," and they quote a portion of the binders for the Lexington and AIU policies:

> Subject to: Following all wordings and coverages of first layer umbrella with Granite State Ins. Co., including but not limited to: . . . 2) Exclude asbestos and warrant U/L aggregate not exhausted by asbestos.

Doctors Aff. 9/9/11, Ex. 24 (doc. no. 361); defs. br. at 8, 10. In their view, "[t]he language of the binders is not in any way ambiguous" and "[t]he clear and unequivocal language of the binders leaves no room for any other conclusion." Id. at 8, 9.

In any event, this is not proper argument on reconsideration. The memorandum decision considered the binders in their entirety and in light of the totality of the evidence, including the language extracted by movants. See mem. at 4-5, 10-11. The attributed errors are the product of movants' selective emphasis of portions of the record and exclusion of other important evidence. Id.

Movants say it was a "manifest error of law" to conclude that the binders "evidence an 'agreement to agree.'" Mem. at 11; defs. br. at 9-10. The binders' "unmistakable directive, 'Exclude asbestos,' is self-explanatory." Id. Although not fully developed, their argument suggests that the binders were complete contracts of insurance and were not replaced or terminated by the policies themselves. Or, perhaps the parties' mutual intent, as evidenced by the binders, continued in force through execution of the policies: "Because the binders were enforceable agreements in their own right and their language is unambiguous, the Court need look no further than the binders themselves to determine the intent of the

4

parties. . . . [T]he binders alone are more than sufficient to establish beyond peradventure that GRC, Lexington, and AIU all believed that the underlying Granite State umbrella policy would contain an asbestos exclusion . . . ." Id. at 10.

As the memorandum summarized: "Simply stated, these submissions do not fill the vacuum of evidence as to what the parties knew, intended, and agreed to in regard to the policies issued for the 1984-85 period. On this record, the written insurance contracts provide the only reliable evidence of the agreements that were actually made." See mem. at 11-12 & n.4.

Instead, the record, in its entirety, established the absence of clear and convincing evidence that might warrant reformation or rescission of the policies. Various fact versions germane to the parties' transactions, both before and after execution of the policies, support contradictory explanations as to why the policies of these three insurers – Granite, Lexington, and AIU – did not contain asbestos-related exclusions.[3] Rather than mistake, plaintiff's evidence was that these insurers may have intentionally omitted asbestos-related exclusions because "an AIG asbestos-related exclusion was still under development and had yet to be submitted to the Pennsylvania Department of Insurance for approval." See Pl. reply br. at

---

[3] These three insurers are affiliated but separate corporations. In 1984-85, they operated as "sister companies" of the American International Group, but are now known as "Chartis companies." Defs. br. at 19 n.6 (doc. no. 360-2); defs. br. at 1 n.2, 11 (doc. no. 284); defs. reply br. at 1 (doc. no. 405) ("AIG was a holding company"). It is not controverted that AIG's State Relations & Compliance Department "was responsible for regulatory approval of asbestos-related exclusions that would be used by AIG "sister' companies, such as Lexington and AIU. Pl. reply br. at 11, doc. no. 372. Michael J. Bruzzi, Jr., who underwrote the Granite State policy, testified that asbestos-related exclusions would have been provided to the underwriters by AIG "corporately" and "the carrier would never put the broker's wording on the policy." Bruzzi dep., Conley Aff. 9/23/11, Ex. H, 44:10-19, 62:9-24, 67:2-25 (doc. no. 372-1).

3, 4, 5, 7, 10-11, 11 & n.5 (doc. no. 372); Conley Aff. 9/23/11, Exs. B, G (doc. no. 372-1). Movants disagreed on this point. See defs. reply br. at 2-3, 12-15 (doc. no. 386). Yet in discovery these insurers did not produce a single insurance policy issued before August 1984 to a Pennsylvania policyholder that included an asbestos-related exclusion. See Pl. reply br. at 10 (doc. no. 372); defs. reply br. at 14-15 (doc. no. 386). Among other evidentiary shortcomings, nothing was proffered to show that these insurers' representatives relied on specific exclusionary language in the Granite State policy.

The absence of evidence can be a double-edged sword. The memorandum concluded that, after many years of discovery, movants remain unable to present evidence of the requisite intent and mistake to warrant reformation or rescission of the policies. See Celotex v. Catrett, 477 U.S. 317, 323, 332-33 (1986).

Movants assert that Jennifer Romano or "someone" else who worked at the insurance brokerage firm of Marsh & McMcLennan must have acted as plaintiff's agent. See defs. br. at 7 & n.2, 8 & n.3 (doc. no. 413). This is at odds with the record, which established that Ms. Romano was employed by GRC's broker for the procurement of the policies. On their face, the binders confirm that Romano's offer to purchase insurance on behalf of GRC was "accepted and agreed" to by the insurers' underwriters. Doctors Aff. 9/9/11, Ex. 24 (doc. no. 361). However, the record did not disclose who prepared the binders. See mem. at 4. Some evidence was that Romano may have acted in different roles as the insurers' agent as well. See mem. at 4, 5-6. The relevance of these fact issues involves whether movants made their

6

case by clear and convincing evidence. See Regis Ins. Co. v. All Am. Rathskeller, Inc., 976 A.2d 1157, 1168-68 (Pa. Super. Ct. 2009) (quoting Taylor v. Crowe, 282 A.2d 682, 683-84 (Pa. 1971) ("'broker may be found to have acted on behalf of an insurer in negotiations between the latter and the insured so as to be deemed the agent of the insurer and not the insured'")); id. (quoting Sands v. Granite Mut. Ins. Co., 331 A.2d 711, 715 (Pa. Super. Ct. 1974) (broker "'had apparent, if not actual, authority to bind' the insurer")).

According to movants, the broker had an obligation to apprise Lexington and AIU that the Granite State policy did not contain an asbestos exclusion as referenced in the binders. See defs. br. at 14, 15. Movants do not acknowledge responsibility for not having discovered that "extrinsic fact" for themselves. Id. at 4. Disavowing that they "controlled their own policies," they place blame for the omission on Marsh, the broker, or Granite State, the follow-form policy issues. Id. at 12-13. Their position is that the memorandum decision "improperly imputes to Lexington and AIU knowledge that was held only by GRC's broker and Granite State." Id. at 14-15 (emphasis in original omitted). Furthermore, they object to bearing the risk of mistake as to the contents of the Granite State policy because they "could not have discovered that mistake at the time the policies were issued by reading the policies." Id. at 13.

Movants' other arguments are also without merit. Movants disagree with the legal principles set out in the memorandum decision, mem. at 13-14, and disregard substantial evidence contrary to their position. Lexington and AIU were not novices lulled into a

misplaced trust by the broker's representations. Lexington's and AIU's underwriters testified it was indeed their responsibility in the ordinary course of business to have requested or made other efforts to obtain a copy of the Granite State policy. See John Gibson dep., Doctors Aff. 10/11/11, Ex. 8, 27:21-28 (doc. no. 381); Conley Aff. 9/23/11, Ex. D, 63:12-19 (doc. no. 372-1); see also Paul Sanchez dep., Conley Aff. 9/23/11, Ex. E, 245:15-19 (doc. no. 372-1); Conley Aff. 6/8/11, Ex. H, 117:17-118:20 (doc. no. 315-2). Eventually, it appears, AIU did so. On May 8, 1985, AIU endorsed its policy to identify the Granite State policy number. See mem. at 6; Doctors Aff. 9/9/11, Ex. 30 (doc. no. 361). See also Pl. reply br. at 8-9 (doc. no. 372); defs. reply br. at 23 (doc. no. 386).

Movants again complain that in denying reformation of the policies the decision creates "inconsistencies" and an "anomalous situation" in which some of the policies in the "quota share" excess layers are subject to asbestos exclusions, while their policies are not. Defs. br. at 15-16 (doc. no. 413). See mem. at 11 n.4; see, e.g., defs. br. at 18-19 (doc. no. 360-2); defs. sur-reply br. at 5 (doc. no. 387) (same arguments).

An order accompanies this memorandum.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.