IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENERAL REFRACTORIES COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST STATE INSURANCE CO., et al. | : | No. 04-3509 |

**MEMORANDUM**

Ludwig, J.                                                                                                          May 4, 2012

      Defendants Republic Insurance Company and Government Employees Insurance Company jointly move (doc. no. 437) and Westchester Fire Insurance Company also moves (doc. no. 438) for reconsideration of the order and memorandum entered on March 21, 2012 (doc. no. 428). Defendants Lexington Insurance Company and AIU Insurance Company, original movants, join in these motions (doc. nos. 435, 436, 454, 455). See General Refractories Company v. First State Insurance Company, No. 04-3509, fn. 1 for decision and case history (Mar. 21, 2012).[1] Jurisdiction is diversity. 28 U.S.C. § 1332.

      The reconsideration motions assert that denial of the motions for partial summary judgment amounts to "manifest injustice."[2] See, e.g., Republic's and Geico's br. at 2 ("R. & G. br.," doc. no. 437) and Westchester's br. at 3, 9 ("W. br.," doc. no. 438).

      Specifically, it was error to deny summary adjudication because plaintiff's response

---

[1] By order and memorandum, reconsideration was also denied in companion case motions. General Refractories Company v. First State Insurance Company, No. 04-3509 (orders and memoranda dated Apr. 13, 2012 (doc. nos. 439, 440), Apr. 20, 2012 (doc. nos. 446, 447), and Apr. 26, 2012 (doc. nos. 456, 457).

[2] "Manifest injustice" is one of three limited grounds for reconsideration. Cottrell v. Good Wheels, No. 11-3409, --- Fed. App'x ----, 2012 WL 171941, *3 (3d Cir. Jan. 23, 2012) (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

1

did not cite any evidence of industry custom and trade usage germane to the exclusionary terms in their policies, and "the record contains no such evidence." R. & G. br. at 1, 3, 6-7; W. br. at 1-2, 3, 5. Movants say that the "conclusion that the summary judgment record is insufficient . . . to apply the clear and unambiguous language of the . . . exclusions is based on the wrong standard of law and ignores well-settled, black letter law regarding the nature of asbestos-related bodily-injury claims . . . ." R. & G. br. at 1-2, 8-10; W. br. at 2, 5-8.

None of the recognized reasons or categories for reconsideration apply here. The motions for reconsideration reargue previously presented matters,[3] assert arguments that could have been but were not raised before, and express disagreement with the memorandum decision. See Bostic v. AT&T of the V.I., 312 F. Supp. 2d 731, 733-34 (D.V.I. 2004).

---

[3] Substantially the same arguments were argued on movants' motions for summary judgment:

 Republic's br. (doc. no. 344) at 2, 3-4 (exposure to or inhalation of asbestos is the "operative event," citing testimony of Barry L. Katz, Esq.), 5-6, 8 (exposure to asbestos is "an essential element necessary for any asbestos-related bodily injury action," citing testimony of Gene Locks, Esq.).
 Geico's br. (doc. no. 345) at 2, 4 (inhalation of asbestos, which "necessarily requires exposure to asbestos," is the "operative event," citing Katz's testimony), 5-6 (exposure to asbestos is "an essential element necessary for any asbestos-related bodily injury action," citing Locks' testimony).
 Westchester's br. (doc. no. 343) at 1, 5 (inhalation of asbestos fiber or dust is the "operative event"), 6-7, 13 (exposure to asbestos fiber or dust is an "essential element necessary for any asbestos-related bodily injury action"), 6-9 (proposed plain meaning of the exclusionary terms, citing Locks' testimony), 9-10 ("Plaintiffs' Master Long Form Complaint," Phila. Ct. Com. Pleas., 1986), 11 (evidence of use of the terms, citing sworn statement by GRC's general counsel, Dorothy Stassun Costello).
 See also Republic's and Geico's reply br. (doc. no. 401) at 2-4, 6, 7-9 ("'exposure to asbestos' has become a ubiquitous descriptor of the mechanism of injury which must be established in every asbestos-related bodily injury case"), 10-11 ("it is black-letter law that 'a plaintiff must show that he inhaled asbestos fibers shed by the specific manufacturer's product' to recover for an asbestos-related bodily injury"), 12 (citing Costello statement); Westchester's reply br. (doc. no. 402) at 2-3, 8-9, 10-14 (same arguments).

2

The memorandum decision is interlocutory and did not terminate any claims on the merits:  "[G]enuine triable disputes exist as to the meaning and application of the exclusionary terms.  The questions whether those terms are clear or ambiguous and whether those terms provide or preclude insurance coverage for GRC's defense or indemnification of the underlying claims are not decided."  Mem. at 7.  It "'decides only one thing – that the case should go to trial.'"  Apr. 20, 2012 mem. at 3 (doc. no. 446) (quoting Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 25 (1966)).

Summary judgment decisions involve burden analyses.  "On a motion for summary judgment, the movant must show that there is 'no genuine issue as to any material fact,' such that he is 'entitled to judgment as a matter of law.'"  NAACP v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011) (citing Fed. R. Civ. P. 56(a)); see Apr. 20, 2012 mem. at 4 (doc. no. 446).  Movants had the burden of establishing their defenses based on the policy exclusions.  Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999); accord Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 962 (Pa. Super. Ct. 2007), appeal denied, 946 A.2d 688 (Pa. 2008).  "An exclusion from liability must be clear and exact and unambiguous to be given effect."  Id. at 963 (citing Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1177 (Pa. 2006)).  Here, plaintiff met its burden in opposing summary adjudication, and movants did not fulfill their burden of establishing the absence of triable issues as to the meaning of the policy exclusions or the application of those terms to the allegations contained in the underlying lawsuits.  Mem. at 3-6 & nn.5-8.

The memorandum decision was based on the entire record. When determining whether a moving party has proven the absence of a genuine material issue of fact, "the record taken as a whole" must be considered. NAACP, 665 F.3d at 475 (citation and internal quotation marks omitted). As explained by our Court of Appeals at 723 F.2d 238, 258 (1983) (reversed on other grounds), "'[i]f . . . there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment . . . .'" (quoted in Celotex v. Catrett, 477 U.S. 317, 330 n.2 (1986) (White, J., concurring) ("court is obliged to take account of the entire setting of the case and must consider all papers of record as well as any materials prepared for the motion")).

Merely saying that the record is factually inadequate is not enough. Considered in its entirety, "substantially all of the proffered evidence presents triable disputes as to the meaning and application of each exclusion at issue." Mem. 6, 5-6. Plaintiff's response on the summary judgment papers contained extensive extrinsic evidence as to how the insurance industry, insurance policies, and litigants of asbestos-related claims used and regarded the exclusionary terms. See pl. br. at 4-5, 7-12, 14, 22-23 (doc. no. 368). Movants submitted rebuttal evidence. Defs. reply br. at 2-3 (doc. no. 401); def. reply br. at 2-3 (doc. no. 402). They now acknowledge that plaintiff "submitted some limited custom and usage evidence that . . . the word 'asbestos' does not mean the same thing as 'asbestos-containing product' . . . ." R. & G. br. at 3.

Movants mistakenly read into the denial of partial summary judgment various decisional findings inconsistent with their view of the record. Positing error, they now ask for an adjudication in their favor as a matter of law. For example: "the standard applicable to the duty to defend, rather than the standard applicable to the duty to indemnify . . ." was applied. R. & G. br. at 7, 8; W. br. at 2, 5-6.

Although not fully developed, movants' argument on this point appears to conflate rules for summary judgment adjudications with those for determining the liability of an insurance company to its insured. "Where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril." Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc., 2 A.3d 526, 542 (Pa. 2010). Pennsylvania's Supreme Court explained:

> An insurer's duty to defend is broader than its duty to indemnify. . . . It is a distinct obligation, separate and apart from the insurer's duty to provide coverage. . . . As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend. . . . . (quoting Judge Learned Hand's assertion in Lee v. Aetna Casualty & Surety Co., 178 F.2d 750, 752 (2d Cir. 1949) . . . . Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.

Id. at 540-41 (citations omitted); id. at 541 (citing Springfield Twp. v. Indem. Ins. Co. of N. Am., 64 A.2d 761, 762 (1949) ("It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend.")). Here, the decision did not grant the motions for partial summary judgment. Reasonable inferences can be drawn from the evidence that favor plaintiff's interpretation of the policy terms.

Framing the issue as purely one of law, movants dismiss inferences to be drawn from the record and propose that the plain meaning of the policy terms is restricted by tort principles controlling a defendant's liability for asbestos-related bodily injury. Some examples:

- asbestos-related bodily injury claims necessarily involve exposure to asbestos

- the use of the phrase 'exposure to asbestos' in the . . . policies is consistent with the common use of that phrase not only in court decisions, but also in the statutes and rules that govern the underlying asbestos litigation, which use the phrase . . . as a broad description of all asbestos-related bodily injury litigation

- this ubiquitous use . . . describe[s] all asbestos-related claims

- proof of exposure to asbestos is an element of all asbestos-bodily injury claims

- As Republic and Geico noted in their [original] motion papers, the overwhelming majority of asbestos cases for which GRC seeks coverage are located in Pennsylvania and Texas, and proof of exposure to asbestos is an element of all asbestos-bodily injury claims in those jurisdictions.

R. & G. br. at 8, 8-9 (emphasis in original omitted). Also Westchester:

- exposure to asbestos fibers is a necessary element of all claims for asbestos bodily injury; there simply is no such thing as an asbestos-related bodily injury liability that does not involve exposure to asbestos fibers

- a plaintiff must show that he inhaled asbestos fibers shed by the specific manufacturer's product

- in Texas, to recover for asbestos-related injury, a claimant must show that exposure to asbestos is a 'substantial factor' in causing his asbestos-related disease

W. br. at 6-7 (emphasis in original omitted). Completing the circular argument, movants conclude that the plain meaning of the policy terms eliminates coverage for all of the

6

underlying asbestos-related lawsuits. They over-simplify here as well: "As the underlying claims must involve exposure to asbestos as a matter of law, . . . there is no genuine dispute for trial regarding the nature of the underlying claims." R. & G. br. at 10 (emphasis in original omitted).

All of the plain-meaning theories – including the now-expanded version based on tort liability for asbestos-related bodily injury – were fully considered in the original memorandum. The argument remains unpersuasive. "Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. . . . Such intent is to be inferred from the written provisions of the contract." Am. & Foreign Ins. Co., 2 A.3d at 540. "The primary aim of third-party insurance is to defend and indemnify insureds against liability for claims made against them as a result of their own conduct." Port Auth. of N.Y. & N.J., 311 F.3d 226, 233 (3d Cir. 2002); Ryan Homes, Inc. v. Home Indem. Co., 647 A.2d 939, 942 (Pa. Super. Ct. 1994), appeal denied, 657 A.2d 491 (Pa. 1995) ("where the insured's product or work causes personal injury or damage to the person or property of another"). While liability insurance focuses on the insured's legal obligation to pay for injury or damage, what the parties intended to insure is not the same question. Interpretation of contract terms is not controlled or affected by causation analyses used in determining the insured's liability. See, e.g., Vermont Mut. Ins. Co. v. Walukiewicz, 966 A.2d 672, 681 & n.18 (Conn. 2009) (rejecting argument that the objective rule of intent used in tort and criminal law should

control interpretation of an intentional injury exclusion).  In any event, more and repetitious articulation by movants of the plain meaning of the terms is not proper on reconsideration.

Geico contends that it is entitled to partial summary judgment because of the exclusionary terms contained in its policy GXU 30166 – those terms would eliminate coverage for certain underlying lawsuits.  R. & G. br. at 2, 10-11; see pl. br. at 1-3, 22 (doc. no. 368).  However, the parties have not identified those lawsuits.  Moreover, plaintiff's position is that all of the exclusions at issue in this action are invalid and unenforceable because they violate public policies expressed in Pennsylvania's insurance laws.  See pl. br. (doc. nos. 311, 312).  It has already been ruled that genuine triable disputes exist on these issues.  Feb. 21, 2012 order and mem. (doc. nos. 417, 418).  Fed. R. Civ. P. 56(a); see Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2737 at 322-25 (1998) (partial summary judgment "simply delimits the issues and is not a judgment").  Here again, this is not proper argument on reconsideration.  Geico unsuccessfully made the same argument before.  Mem. at 3 n.4; def. br. at 2, 3, 6, 8 (doc. no. 345).

The April 27, 2012 order (doc. no. 459) accompanies this memorandum.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.