IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GENERAL REFRACTORIES : CIVIL ACTION
COMPANY :
:
v. :
:
FIRST STATE INSURANCE CO., et al. : NO. 04-3509

MEMORANDUM

L. FELIPE RESTREPO, J.                                                         SEPTEMBER 6, 2013

Plaintiff, General Refractories Company ("GRC"), sues multiple defendant insurance carriers for a declaration of excess insurance coverage for underlying claims.[1] Of those insurance carriers, five have settled with GRC ("Settled Carriers") and seven remain litigants ("Litigating Defendants").[2] Plaintiff GRC and the defendant Settled Carriers move for

---

[1] Plaintiff General Refractories Company, a manufacturer and supplier of asbestos-containing products, is a defendant in some 33,000 asbestos-related lawsuits throughout the United States. On July 23, 2004, plaintiff GRC filed this action against its umbrella and excess insurance carriers, suing for a declaration of insurance coverage for asbestos bodily or personal injury claims and for breach of insurance contract. (Compl., doc. no. 1). All defendants denied coverage, maintaining that the policies sold to GRC contain exclusions of such claims.

On June 7, 2010, fact discovery closed. (Orders, Feb. 19, 2008, Jan. 21, 2010, doc. nos. 199, 239). On April 29, 2011, expert discovery was closed. (Order, Mar. 17, 2011, doc. no. 303). After all dispositive motions were decided, the insurance regulatory issue was bifurcated for trial. (Orders, Apr. 10, 2013 and Aug. 15, 2013, doc. nos. 482, 509). On July 19, 2013, this case was re-assigned to the undersigned from its original assignment in 2004 to the Honorable Edmund V. Ludwig (Order, doc. no. 501). On August 19, 2013, during a conference with lead counsel, the insurance regulatory issue was set for trial on January 13, 2014.

Only those facts pertinent to the issues presented are included here. For the history and factual background of this action, see previous Memoranda, Jan. 27, 2012, Feb. 7, 2012, Feb. 21, 2012, Mar. 21, 2012, Mar. 26, 2012, doc. nos. 406 at 2 n.1, 411 at 2 n.1, 417 at 1 n.1, 428 at 1 n.1, 432 at 1 n.1.

[2] The defendant litigants – as a group self-described as the "Certain Defendants" – are: AIU Insurance Company; Continental Insurance Company, as successor-in-interest to certain insurance policies issued by Harbor Insurance Company; Government Employees Insurance Company; Lexington Insurance Company; Republic Insurance Company; Travelers Casualty and Surety Company, formerly known as The

dismissal with prejudice of all claims asserted against the Settled Carriers (doc. no. 492). Jurisdiction is by diversity, 28 U.S.C. § 1332.

Here, the defendant insurance carriers would be jointly and severally liable for the loss claimed by GRC. Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440 (3d Cir. 1996) (citing J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502 (Pa. 1993)). The question presented is whether the Settled Carriers[3] are protected from contribution claims by other defendants whose policies might also be required to pay for GRC's claim.

## 1. BACKGROUND

On January 7, 2011, American Empire and GRC executed a settlement agreement. See Apr. 7, 2011 def. letter br., Ernesto R. Paloma, Esq. (doc. no. 305). Thereafter, GRC and the other carriers settled. Reportedly, the settlements fully and finally resolved the Settled Carriers' obligations for GRC's asbestos liabilities. The settlements were negotiated in good faith and at arm's length over a considerable period of time. No question is presented as to whether the terms are fair or reasonable, or whether the agreements were the product of fraud, collusion, or other improper motive.

The motion requests dismissal of the Settled Carriers as parties and dismissal with

---

Aetna Casualty and Surety Co., and incorrectly designated in the Complaint as "St. Paul Travelers"; and Westchester Fire Insurance Company.

[3] The Settled Carriers are: American Empire Surplus Lines Insurance Company; Hartford Accident & Indemnity Company; First State Insurance Company; Westport Insurance Corporation, formerly known as Puritan Insurance Company; Sentry Insurance, a Mutual Company, as assumptive reinsurer of Great Southwest Fire Insurance Company, sued here as Vanliner Insurance Company.

2

prejudice of "all claims, cross-claims or third-party claims that any party has asserted or could have asserted against any of the Settled Carriers with respect to coverage for asbestos lawsuits brought against GRC in this action."[4] See Movants' br. (doc. no. 492-1, at 1), proposed order ¶ 1 (doc. no. 492-2). The proposed dismissal order provides the litigating defendants with the right to a set-off under Koppers – that is, a credit against any judgment of the apportioned share of the coverage responsibility of a Settled Carrier for GRC's claimed loss or damage. See proposed order ¶ 2 (doc. no. 492-2).

Litigating defendants do not oppose the requested dismissal, with one proviso – that dismissal be entered without prejudice to their crossclaims against the Settled Carriers for contribution. See Def. br. (doc. no. 500 at 2). Dismissal with prejudice, they assert, would be a "premature" adjudication on the merits. Id. at 2-3. This is so, in their view, because their rights to contribution have not accrued: "no judgment has been entered against any non-settling insurer in this action," and they have not paid GRC any money. Id. at 3. Also: "the Court has not been requested to determine the amount of any set-off attributable to the Settled Carriers' apportioned share," and "[i]f GRC ultimately obtains a judgment against any non-settling defendant, the parties can address at that time the set-off to which the non-settling defendant would be entitled." Id. at 3-4. Alternatively, should dismissal with prejudice be granted, certain terms are proposed for the dismissal order. Id. at 4-5.

---

[4] The motion does not identify the procedural ground for dismissal. See also the parties' previous letter briefs (doc. nos. 305-310). During the August 19, 2013 conference in this case, counsel requested dismissal under Fed. R. Civ. P. 41, discussed infra.

3

Defendants acknowledge that their crossclaims are "contingent" on any liability they might incur as a result of GRC's claim. See Def. br. (doc. no. 500 at 2); see also Fed. R. Civ. P. 13(g).[5] These are typical, derivative crossclaims for indemnity and contribution that are entirely dependent upon GRC's rights.[6] No other crossclaims have been stated or suggested.

## 2. DISCUSSION

There is no question that GRC has standing to move for voluntary dismissal of its complaint against the Settled Carriers. At this stage, the complaint may be dismissed at GRC's request by court order. See Fed. R. Civ. P. 41(a)(2).[7] GRC's standing to move for dismissal of a defendant's crossclaim is not clear. But the targets of the crossclaims – the Settled Carriers – have standing, and they have moved for dismissal of the crossclaims asserted against them.

---

[5] "A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant." Fed. R. Civ. P. 13(g).

[6] GRC sues for a declaration "that any asbestos-related exclusions in the Policies are invalid and unenforceable" and that defendants are required "to pay for GRC's defense of the Underlying Actions, and to reimburse GRC for, or pay on behalf of GRC, any and all judgments or settlements reached in the Underlying Actions, until such time as the total aggregate limits of each of the foregoing insurance policies have been exhausted." See Compl. ¶¶ 59-66, "Wherefore" clause Count I (doc. no. 1 at 10-11). GRC also sues for breach of contract, claiming that defendants "refused to honor their obligations to provide GRC with a defense or indemnification in and for the Underlying Actions." Id. ¶ 73 (doc. no. 1 at 11).

[7] A voluntary dismissal by court order: "[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2).

4

Whether these crossclaims should be allowed is a matter of discretion. See, e.g., Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 253, 255-56 (3d Cir. 2010) (no abuse of discretion where the court denied on grounds of futility a defendant's request to assert crossclaims – one was barred and the other failed to state a claim). Basically, "the general policy behind allowing crossclaims is to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps." 6 Charles Alan Wright, et al., Federal Practice and Procedure, "Federal Rules of Civil Procedure," § 1431 (3d ed.) (Westlaw Apr. 2013). Rule 13(g) "does not authorize the assertion of every claim that might exist between coparties," and "a party's ability to maintain a crossclaim against a motion to dismiss may depend on the party's substantive rights under state law." Id.

Litigating Defendants correctly assert that an involuntary dismissal with prejudice would operate as an adjudication on the merits for *res judicata* purposes, unless the dismissal order states otherwise. See Fed. R. Civ. P. 41(b), (c).[8] See also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (Alito, Cir. J.) (as to a Rule 12(b)(6) dismissal of a complaint, "[b]ecause the order did not specify that the dismissal was without prejudice, under Fed. R. Civ. P. 41(b) the dismissal 'operates as an adjudication on the merits'"); N.V. Siravo v. Country Wide Home Loan, 349 Fed. Appx. 766, 769 (3d Cir. 2009) (citing Gambocz v.

---

[8] "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under the rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). "This rule applies to a dismissal of any counterclaim, crossclaim, or third-party claim." Fed. R. Civ. P. 41(c).

5

Yelencsics, 468 F.2d 837, 840 (3d Cir. 1972) (*res judicata* bars relitigation because "[d]ismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial")). Here, however, defendants' concerns are largely unfounded – an involuntary dismissal with prejudice will not deprive them of any rights.

The parties agree that Pennsylvania law "governs the substantive aspects of this action to the extent of establishing the scope of defendants' liability." Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 313 (3d Cir. 2007). It was also ruled in this case that Pennsylvania law "plainly holds that once multiple policies have been triggered for an indivisible loss (as is the case here), the insured is 'free to select the policy or policies under which it is to be indemnified.'" Id. (quoting J.H. France, 626 A.2d at 508). Furthermore, "'[w]hen the policy limits of a given insurer are exhausted,' the insured 'is entitled to seek indemnification from any of the remaining insurers which was on the risk.'" Id. (quoting J.H. France, 626 A.2d at 509). In sum, "there can be no doubt that, as in J.H. France, liability for coverage in the instant matter is similarly joint and several." Id. at 313-14 (citing Koppers, 98 F.3d at 1449 (noting that J.H. France held that "the insurers . . . were jointly and severally liable for the full amount of the claim up to policy limits, and . . . the insured was entitled to select the policy or policies under which it would be indemnified")).

Where liability is joint and several among multiple defendant insurers, as it is in this case, Pennsylvania law promotes the fair sharing of the burden of judgment:

6

> Cognizant of insurers' fear that a single company might be "stuck" with full liability for an injury, the Pennsylvania Supreme Court added that its opinion "does not alter the rules of contribution or the provisions of 'other insurance' clauses in the applicable policies. There is no bar against an insurer obtaining a share of indemnification or defense costs from other insurers under 'other insurance' clauses or under the equitable doctrine of contribution."

Gen. Refractories, 500 F.3d at 313 (quoting J.H. France, 626 A.2d at 509)). See generally 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes ("Handbook") § 9.04[a], at 827-29 (16th ed. 2013) (discussing Koppers and J.H. France).

The crucial question is how to fairly apportion responsibility among multiple insurers. Pennsylvania's Supreme Court in J.H. France was called on to allocate coverage responsibility among six primary insurers, each of which was obligated to cover an indivisible loss. However, none of the insurers had settled. In Koppers, the insured settled with some primary and excess insurers. Koppers noted that "J.H. France does *not*, of course, hold that an insured, having recovered part of its loss from one insurer, can recover an amount equal to its entire loss from another." Koppers, 98 F.3d at 1452. Because a double recovery could not be permitted, the question then became how to fairly allocate responsibility where several insurers had completely settled the insured's claim against them.

Koppers considered but refused to apply a rule that would "permit the non-settling insurers to seek contribution from the settling insurers and, in turn, permit the settling insurers to seek reimbursement from [the insured]." Id. at 1452 (referring to recovery of amounts in excess of a particular insurer's policy limits). Instead, Koppers predicted that Pennsylvania's highest court "would modify the J.H. France rule to hold the [excess insurers]

7

jointly and severally liable for the amount of the loss *in excess of* the settling insurers' pro rata shares of liability." Id. This "apportioned share set-off rule," id., requires

> that each non-settling insurer whose policy was triggered to cover an indivisible loss is jointly and severally liable, up to the limits of its policy, for the full amount of the judgment, *less* the settling insurers' apportioned shares.

Id. at 1453. Importantly, Koppers plainly holds that "there must be a set-off, rather than a subsequent contribution action." Id. & nn.14, 15 (set-off rule promotes judicial economy and settlement).

Pennsylvania's highest court has not decided how to allocate coverage responsibility in a case comparable to this one. Nonetheless, the holding in Koppers was and is today consistent with Pennsylvania law. Id. at 1452-53 (citing Charles v. Giant Eagle Mkts., 522 A.2d 1(Pa. 1987); Gould, Inc. v. Continental Cas. Co., 585 A.2d 16 (Pa. Super. Ct. 1991)).

In Charles, Pennsylvania's Supreme Court considered a plaintiff's settlement with some jointly and severally liable tortfeasors. That case adopted the apportioned set-off rule. Charles, 522 A.2d at 2-3. Contribution from the settling defendants was rejected because such an action would defeat the finality of the settlement. Id. "Any subsequent trial against the remaining defendants should not disturb the resolution reached between the plaintiff and the settling tortfeasor." Id. at 2-3. Accord Taylor v. Solberg, 778 A.2d 664, 668-69 (Pa. 2001) ("sound policy of encouraging settlements as well as the 'proper interpretation of the pertinent statutory authority'[9] compelled a holding that the non-settling tortfeasor was

---

[9] The Comparative Negligence Act, 42 Pa. C.S. § 7102, and the Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S. §§ 8321-8327.

8

required to pay his full *pro rata* share") (quoting Charles, 522 A.2d at 2)) (footnote added).

In addition, Koppers gave "great deference" to the holding in Gould, a decision by Pennsylvania's intermediate appellate court: "where two insurers are obligated to cover the same loss and one insurer settles but one does not, the litigating insurer cannot seek contribution from the settling insurer." Koppers, 98 F.3d at 1453 (citing Gould, 585 A.2d at 19). Koppers explained that a litigating insurer would be entitled to prorate its share of responsibility for coverage based on the settling insurer's proportionate share of the adjudged liability, with those shares to be determined under the "other insurance" clauses of the applicable policies:

> [P]roration of a litigating insurer's liability will not be impaired by the dismissal of any settling insurers because "the applicable limits and pro rata shares pertaining to the policies issued by the [settling insurers] will be examined and their proportionate share of liability determined, even if they are no longer parties to the action."

Koppers, 98 F.3d 1453 (quoting Gould, 585 A.2d at 19) (citation and internal quotation marks omitted) (alteration in original)). Pennsylvania's appellate courts have not revisited Gould.

Dismissal of the Settled Carriers would not impair the Litigating Defendants' rights. On an appeal after remand in Koppers, our Court of Appeals upheld its earlier ruling applying an apportioned share set-off. It did so where some insurers were absent:

> "We recognize that some of Koppers' insurers are not part of this action because they are non-diverse with the plaintiff. Under [Gould] . . . , however, these insurers need not participate in the case in order for the district court to determine their apportioned shares of liability for purposes of reducing the

judgment against [other defendant excess insurers]. See [Gould,] 585 A.2d at 19 (stating that court need only look at the policies' terms and limits)."

Koppers, 158 F.3d 170, 172 (3d Cir. 1998) (quoting Koppers, 98 F.3d at 1456 n.21).

Litigating Defendants are correct that a question as to the amount of any apportioned share set-off is not presented. No judgment has been entered. The insurance policies are not contained in the record. What has been established is that Koppers "requires that the amount for which the litigating insurers are liable be reduced by the settling insurers' apportioned shares," rather than by a subsequent contribution action. Koppers, 98 F.3d at 1453.

Litigating Defendants also correctly assert that their contribution rights never accrued. See Koppers, 98 F.3d at 1453 n.14 ("claim does not accrue until money is actually paid out"). However, defendants are mistaken that their contribution claims have not matured. Those claims are foreclosed by the settlements between GRC and the Settled Carriers – *i.e.*, "extinguished." See Apr. 7 & Apr. 15, 2011 def. letter bfs., Paloma, Esq. (doc. nos. 305, 309). That is, they were dismissed with prejudice by operation of law under Koppers and Gould.

Alternatively, should dismissal with prejudice be granted, Litigating Defendants propose that the following terms be added to the dismissal order:

> any judgment entered against any non-settled carrier in this matter shall be reduced to reflect: (a) the total amount of policy limits directly underlying the insurance policies issued by that non-settled carrier to GRC; and (b) the combined pro rata shares of any other settled carrier.

Defs. bf. (doc. no. 500 at 4-5). In their view, this clause more accurately reflects Koppers.

10

Koppers predicted as well that Pennsylvania's Supreme Court "would adopt the widely-followed rule that the policyholder may recover on the excess policy for a proven loss to the extent it exceeds the primary policy's limits." Koppers, 98 F.3d at 1454. It was also held that "settlement with the primary insurer functionally 'exhausts' primary coverage and therefore triggers the excess policy – though by settling the policyholder loses any right to coverage of the difference between the settlement amount and the primary policy's limits." Id. See 2 Handbook § 13.04, at 1185-87 (citing, *inter alia*, Koppers, 98 F.3d at 1454; Stargatt v. Fid. & Cas. Co. of N.Y., 67 F.R.D. 689, 691 (D. Del. 1975) (Stapleton, J.) (payment not required because to "require an absolute collection of the primary insurance to its full limits would in many, if not most, cases involve delay, promote litigation, and prevent an adjustment of disputes which is both convenient and commendable"), aff'd without op., 578 F.2d 1375 (3d Cir. 1978); Trinity Homes LLC v. Ohio Cas. Ins. Co., 629 F.3d 653, 658-59 (7th Cir. 2010) (umbrella coverage triggered by the insured's below-limits settlement with the primary insurer) (citing Koppers, 98 F.3d at 1454).

The proposed language is unnecessary. Litigating defendants are protected under Koppers "which is binding precedent" in this case. Gen. Refractories, 500 F.3d at 315. Furthermore, additional concerns are presented by the proposal to reduce any judgment by (a) the "total amount of policy limits directly underlying" a Litigating Defendant's policy, and (b) the "combined pro rata shares" of the Settled Carriers. It has not been determined which policies qualify as "underlying insurance" for another policy, or how the policies' respective limits of insurance operate. Each Settled Carrier's share of any adjudged liability

must be shown. Questions involving a credit against any judgment of the underlying policy limits and the apportioned share of a Settled Carrier will be issues at trial.

The Settled Carriers are protected from contribution claims. The Litigating Defendants will have the right to assert a claim for an apportioned share set-off under Koppers (applying Pennsylvania law).

An appropriate Order follows.