## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GENERAL REFRACTORIES COMPANY :    CIVIL ACTION
                                  :
                v.                    :
                                  :
FIRST STATE INSURANCE CO., et al.    :      NO.  04-3509

### ORDER - MEMORANDUM

**AND NOW**, this 25th day of September, 2013, upon consideration of the parties' submissions,[1] it is hereby **ORDERED** that the "Motion in Limine to Preclude Argument and Evidence that the Asbestos-Related Exclusions at Issue Were 'Manuscript' Endorsements" (doc. 491) filed by Plaintiff, General Refractories Company ("GRC"), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants[2] are precluded from proffering evidence and argument at trial that any insurance policy form or language at issue in this case is a "manuscript" form, and that "manuscript" policy forms are exempted from the regulatory requirements of Pennsylvania's insurance laws – in particular, 40 P.S. § 477b.[3]

The motion in limine asserts that the policies sold by Defendants to GRC are not

---

[1] Pl's Mot. in Limine (document 491), with Mem. of Law (doc. 491-1); Michael Conley, Esq. Aff. dated 6/4/13, with Exs. 1-3 (doc. 491-4); Pl.'s Reply Br. (doc. 512); Defs.' Resp., with Exs. 1-5 (doc. 498 sealed); Defs.' Sur-Reply Br., with Exs. A-F (doc. 507 sealed).

[2] Defendants are:  AIU Insurance Co.; Continental Insurance Co., as successor-in-interest to certain policies of insurance issued by Harbor Insurance Co.; Government Employees Insurance Co.; Lexington Insurance Co.; Republic Insurance Co.; Travelers Casualty and Surety Co. (formerly known as The Aetna Casualty and Surety Co., and incorrectly designated in the Complaint as "St. Paul Travelers"); and Westchester Fire Insurance Co.

[3] Plaintiff GRC sues seven defendant insurance carriers for a declaration of excess insurance coverage for underlying asbestos-related claims.  For the history and factual background of this action, see Mem. Op. 9/6/13 (doc. 520) at n.1.

"manuscript" forms.  This is so, it is contended, because GRC did not draft and did not negotiate any

of the language contained in the policies at issue.  It is also contended that there is no competent and

relevant evidence to the contrary.  Defendants oppose the motion, saying that they are prepared to

adduce an "abundance of evidence" to show that GRC negotiated the asbestos-related policy

exclusions at issue in this case.  See Defs.' Resp. (doc. 498) at 2, 11.  However, they have not done

so.

A "manuscript" policy form is "one that is specially designed for a particular insured."  See

Mem. Op. 2/21/12 (doc. 417) at n.7 (citing Port. Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311

F.3d 226, 231, 235 (3d Cir. 2002) (insureds drafted the policies with the aid of counsel and insurance

professionals and negotiated in some respects with the underwriters)).  Defendants acknowledge as

much, saying that a manuscript form is a "non-boilerplate, specific policy or provision prepared for

a particular insured and . . . is the product of negotiations between the parties."  See Defs.' Resp.

(doc. 498) at 8-9, 10 (citing Port Auth., 311 F.3d at 231; Treesdale, Inc. v. TIG Ins. Co., 681 F. Supp.

2d 611, 621 n.6 (W.D. Pa. 2010)) (such forms "do not provide 'boilerplate' coverage, but are

negotiated between the parties as to each item").  They are "the result of negotiation between

knowledgeable parties."  Id. (citing Port Auth.).  Defendants approve a leading commentator's

explanation:

> Since business risks are often extremely complicated and specialized, many business
> insurance arrangements are consummated in the form of individually negotiated and
> drafted policies known in the industry as "manuscript" policies.  While "standard
> form" policies . . . may properly be viewed as contracts of adhesion for which a
> contra-insurer rule is appropriate, individually negotiated manuscript policies, by
> their nature, reflect the bargaining power of the insured.

Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 1.05[b][4]

at 66 (16th ed. 2013); see Defs.' Resp. (doc. 498) at 9.

Defendants say that section 477b's requirements[4] do not apply to "manuscript" policy forms. In support of this assertion, they provide the opinion of their expert, Linda Kaiser Conley, Esquire: "during 1979-1986, the Insurance Department did not require that licensed insurance companies file or obtain approval of manuscript policy forms."  See Kaiser Conley Dep. 3/16/11 (doc. 334-3), at 111:8-112:19 (quoting her expert report).  Kaiser Conley was "not aware of any writing" reflecting this practice.  Id. at 111:19-24, 113:11-20, 118:17-119:15.  At deposition, she did not opine as to whether any of the specific policy forms sold to GRC were manuscript.

As to the policies sold to GRC during 1979 through 1985, Defendants proffer one policy sold by Republic and another sold by International, which both insure the 1984-85 period.  It is asserted that these exemplars show that language contained in all of the policies at issue was specially prepared for GRC and was the product of negotiations between GRC and the insurance carriers. This position is largely based on four letters written by individuals who worked at one or the other insurance brokerage firms – Marsh & McLennan ("Marsh") and NBA Excess and Surplus Lines, Inc. ("NBA").  Each letter was submitted earlier in this case.  See, e.g., Defs. Lexington's and AIU's Cross-Mot. Summ. J., Doctors Aff. 9/9/11, Exs. 15, 16, 21, 33 (doc. 381); Certain Defs. Cross-Mot. Summ. J., DiFebbo Aff. 6/28/11, Exs. 1, 2, 5, 6 (doc. 325).  On each occasion, the letters were found by the Honorable Edmund V. Ludwig[5] not to establish the parties' intent as to the contents of

---

[4] "It shall be unlawful for any insurance company, . . . doing business in this Commonwealth, to issue, sell, or dispose of any policy, contract, or certificate, covering . . . all forms of casualty insurance . . . or any other contracts of insurance, or use applications, riders, or endorsements in connection therewith, until the forms of the same have been submitted to and formally approved by the Insurance Commissioner, and copies filed in the Insurance Department, . . . except any forms which, in the opinion of the Insurance Commissioner, do not require his approval."  40 P.S. § 477b.

[5] This case was originally assigned to Judge Ludwig, and on July 19, 2013 it was reassigned to my calendar.

insurance contracts at issue in this case.[6]

In addition, Defendants proffer deposition testimony by three underwriters – Leslie Ross, Marilyn Schultz, and Roger Quigley.[7]  However, none of these  witnesses offer firsthand, personal knowledge about negotiations for any policy sold by Defendants to GRC, and none offer competent testimony that GRC drafted any policy language.

Defendants' evidence does not have "any tendency to make a fact more or less probable than it would be without the evidence," and it is not "of consequence in determining the action."  See Fed. R. Evid. 401; see also Fed. R. Evid. 402 ("irrelevant evidence is not admissible"); Fed. R. Evid. 103(d) ("court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means").  Once again, the "evidence submitted is speculative about the parties' intent," and "the written insurance contracts provide the only reliable evidence of the agreements that were actually made," as was previously ruled.  See Mem. Op. 1/27/12 (doc. 406) at 10, 12.  Moreover, that either Marsh or NBA acted as an agent for GRC for purposes of drafting and negotiating language contained in any policy is not supported by competent, relevant evidence.  See, e.g., Mem. Op. 4/26/12 (doc. 456) at 6 ("Some evidence was that Romano [Marsh McLennan] may have acted in different roles as the insurers' agent as well.").

Importantly, in deciding Defendants' respective motions for partial summary judgment on

---

[6]See Judge Ludwig's previous rulings, infra.

[7] Mr. Leslie Ross worked for Professional Coverage Managers and provided services to Defendants, GEICO and Harbor.  Marilyn Schultz worked for Cravens Dargan & Company in Houston, Texas and provided services for Defendant Republic.  Roger Quigley worked for the Crum & Forster Companies and provided services for Defendant International.  Defendants previously submitted Quigley's personal opinion as to the exclusion contained in International's policy: "This being a manuscript endorsement, no such submission [to the Insurance Department] was required."  See Quigley dep. 1/21/10, at 165:4-20, Certain Defs. Cross-Mot. Summ. J., DiFebbo Aff. 6/28/11, Ex. 12  (doc. 325).

the interpretation and application of the policies' exclusionary language (docs. 338, 340, 341, 342, 343, 344, 345), it was ruled that: "The following facts are not in dispute. Defendants drafted the policy exclusions; they were not specially crafted or designed for GRC and GRC did not negotiate any of the exclusionary terms. GRC received copies of the exclusions only after the policies were sold." <u>See</u> Mem. Op. 3/21/12 (doc. 428) at 3. Here again, Defendants' submissions do not present a genuine dispute. <u>See also</u> Mem. Op. & Orders 6/20/11 (docs. 318-320); Mem. Op. & Order 1/27/12 (docs. 406, 407); Mem. Op. & Order 2/21/12 (docs. 417, 418); Mem. Op. & Order 4/19/12 (docs. 446, 447); Mem. Op. & Order 4/26/12 (docs. 456, 457).

These rulings will not be revisited. <u>See</u> Order 8/15/13 (doc. 509).


BY THE COURT:


  s/ L. Felipe Restrepo                                
L. FELIPE RESTREPO
UNITED STATES DISTRICT JUDGE