IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GENERAL REFRACTORIES COMPANY | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 04-3509 |
| FIRST STATE INSURANCE COMPANY, et al. | : | |

*MEMORANDUM*

**L. Felipe Restrepo**, District Judge                                                    June 1, 2015

Plaintiff General Refractories Company ("GRC"), a manufacturer and supplier of refractory products that at times contained some asbestos, sues its insurance carriers for a declaration of excess insurance coverage against underlying asbestos-related lawsuits and for breach of insurance contract. Since about 1978, GRC has been named as a defendant in a multitude of asbestos-related suits throughout the United States. Each of those insurance carriers has now settled with GRC, except one – defendant Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company (collectively, "Travelers"). A jury trial is scheduled for June 15, 2015.

Travelers moves to preclude GRC from presenting "any evidence of damages at trial." Def. Mot., Br. at 1, 3 (doc. nos. 649, 649-1). The motion contends that GRC cannot prove any insured damages because Travelers' policies incorporate an asbestos exclusion contained in an umbrella liability policy that the Insurance Company of the State of Pennsylvania ("ICSOP") sold to GRC. ICSOP Exclusion, Def. Ex. 1 (doc. no. 649-3 at 12); Travelers' policies, Def. Exs. 2 and 3 (doc. nos. 649-4 and 649-5). Travelers' policies do not physically contain or attach the ICSOP exclusion, and they do not mention ICSOP by name. Nor does ICSOP's policy refer to Travelers' policies. A "Schedule of Underlying Insurance" contained in Travelers' policies names "Granite State" and Granite State's "policy number 44851093" as the controlling underlying umbrella liability insurance. The motion requests that the language of Travelers' Schedule be construed to mean that ICSOP's

policy – and not Granite State's policy – is the controlling underlying umbrella liability insurance. GRC opposes the motion on several grounds. Principally, GRC maintains that under the guise of policy language interpretation, the Schedule cannot be reformed to make ICSOP's policy the controlling umbrella insurance – "particularly where, as is the case here – such an 'interpretation' is inconsistent with the facts." Pl. Resp. at 1, 4 (doc. no. 654). For the background of this motion, see Memorandum, dated May 29, 2015, at 1-2, 4 & nn.1-2 (doc. no. 662).

## II. DISCUSSION

### A. Travelers' Policies Define Granite State's Policy as the Controlling Underlying Umbrella Liability Insurance for the August 1, 1985-86 Period

Travelers' motion repeatedly asserts that the ICSOP policy "is the Controlling Underlying Insurance" for Travelers' policies and contends that "there is nothing for the Court to reform." Def. Br. at 2, 5, 6, 9-10; Def. Reply at 3, 5 & n.2 (doc. no. 658). This position is not soundly tethered to the written terms of Travelers' policies. It is also not consistent with Pennsylvania's "well established" rules for analysis of insurance policies. Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 163 (3d Cir. 2011) (citing Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 171 (3d Cir. 2006) (citing E. Associated Coal Corp. v. Aetna Cas. & Surety Co., 632 F.2d 1068, 1075 (3d Cir. 1980)). The parties agree that Pennsylvania law applies in this diversity action.

The analysis "begins with the language of the policy." Meyer, 648 F.3d at 163 (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)). "A policy must be construed as a whole and its meaning construed according to its plain language." Id. (citing Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)). "The "polestar of our inquiry, therefore, is the language of the policy." Madison, 735 A.2d at 106. Where the

language of a policy "'is clear and unambiguous, a court is required to give effect to that language.'" Meyer, 648 F.3d at 164 (quoting Madison, 735 A.2d at 106)). Pennsylvania's Supreme Court has long held that where "the language of the contract is clear and unambiguous, a court is required to give effect to that language." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). This was recently reaffirmed: "When the language of an insurance policy is plain and unambiguous, a court is bound by that language." Pennsylvania Nat'l Mut. Cas. Ins. Co. v. St. John, 106 A.3d 1, 15 (Pa. 2014). That principle, which is at the core the analysis here, controls.

Travelers agreed to indemnify GRC "against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability . . . and to all of the terms of this policy." Travelers' policies, "Indemnity Agreement," Def. Exs. 1 and 2 (doc. nos. 649-4 and 649-5 at 5-6). This insuring agreement is defined more specifically, as follows:

> EXCESS NET LOSS means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limits of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all policies described in Section 3. Schedule of Underlying Insurance; whether or not such policies are in force.

Id. As referenced in the Indemnity Agreement, the "Schedule of Underlying Insurance" is set forth on a separate page of Travelers' policies and provides in part:

| POLICY NUMBER | INSURER | COVERAGE | EACH OCCURRENCE | AGGREGATE |
|---|---|---|---|---|
| | | * * * | | |
| 44851093 | GRANITE STATE | UMBRELLA LIABILITY | $2,000,000 | $2,000,000 |
| | | * * * | | |
| 44851093 | GRANITE STATE | CONTROLLING INSURANCE UMBRELLA LIABILITY | | |

Def. Exs. 2 and 3 (doc. nos. 649-4 and 649-5 at 6).

3

Travelers' motion fundamentally skews the anlysis of the Schedule's plain language in order to reach the desired conclusion – that ICSOP's policy is the controlling umbrella insurance. There is no dispute that the ICSOP policy is numbered "4485-1093," and declares $2 million limits of liability, "any one occurrence" and "in the aggregate," for the period, August 1, 1985 to August 1, 1986. ICSOP "Declarations," Def. Ex. 1 (doc. no. 649-3 at 4). Basically, these terms defining the policy number, limits, and period are the same as those contained in Travelers' Schedule. Based largely on this comparison, the motion asserts: "It is clear from the matching policy number and policy limits . . . that the ICSOP Policy is the Controlling Underlying Insurance." Def. Reply at 3. What is omitted from this analysis of the Schedule's plain language is any consideration of the Schedule's naming of "Granite State" as the carrier for a "Granite State" controlling umbrella policy.

Importantly, Travelers' policies indemnify GRC against liability claims for damages "which would be covered by the terms of the Controlling Underlying Insurance . . . whether or not such policies are in force." Indemnity Agreement. Accordingly, crossing out "Granite State," and inserting "ICSOP," would materially alter the insurance protection that GRC purchased.

As to the Schedule's identification of the controlling umbrella policy, there is no ambiguity to be found within the four corners of Travelers' policies. The plain language of the Indemnity Agreement and the Schedule define one "umbrella liability insurer" – that is, "Granite State," for one "Granite State" policy numbered "44851093." The parties agree that the Schedule's use of "Granite State" denotes a non-party carrier, Granite State Insurance Company. Accordingly, the Schedule contained in Travelers' policies will be enforced according to its plain written terms, as required by Third Circuit and Pennyslvania law. Even though this ruling is dispositive of the questions presented for decision here, the following clarifies certain issues and arguments posited by Travelers' motion.

4

The proposition that "Granite State" really means "ICSOP" is an assertion of fact founded on inferences drawn from circumstances and materials that are extrinsic to the plain language of Travelers' policies. In short, Travelers' motion is not one to interpret the meaning of the Schedule's express terms. Instead, it is one to reform Travelers' policies to coincide with the parties' supposed intent – in Travelers' view, that the ICSOP policy should be the controlling umbrella insurance. Yet Travelers did not plead a counterclaim for reformation or resscission of its policies. Moreover, Travelers' motion does not identify the mistake that supposedly led to the naming of Granite State – how it came about, who made it when, or why the omission of ICSOP should be readily apparent as a mistake.

Our Court of Appeals has long recognized that under the guise of contract interpretation, a court is not empowered to "'rewrite policies.'" Union Paving Co. v. Thomas, 186 F.2d 172, 176 (3d Cir. 1951) (quoting Globe Indem. Co. v. Liberty Mut. Ins. Co., 138 F.2d 180, 184 (3d Cir. 1942) ("A court may not rewrite policies of insurance or supply missing allegations to a petition.")). "Nor can the insurer's obligation be enlarged or varied by judicial construction." Id. (internal quotation marks and citation omitted). The "burden of drafting with precision rests with the insurance company, the author of the policy." Meyer, 648 F.3d at 163 (citing J. C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 365 (3d Cir. 2004)).

Pennsylvania's law is in accord. For example, in Pennsylvania Gen. Ins. Co. v. Barr, 257 A.2d 550 (Pa. 1969), the two policies at issue provided uninsured motorist coverage, but neither specified the limits of the insurer's liability. A demand for arbitration of disputed amounts owed under the policies was made. The insurer sued for an injunction to restrain arbitration until the nature and extent of the UIM coverage had been judicially determined. The trial court dismissed the

complaint, ruling that arbitration, not judicial proceedings, was the sole forum for resolution of the dispute. On appeal, the insurer asserted that the absence of an express limit of liability was readily apparent on the face of the policies, and the lower court should have reformed the policies to remedy that mistake. Barr affirmed the dismissal, ruling that the question of mistake and request for reformation were not properly presented below:

> Of course, a court of equity has the power to reform a written instrument where mutual mistake is shown. In this case, however, there was no such showing. Nothing in the record, or in [the insurer's] brief or argument, indicates what precisely the mistake was, how it came about, why it was readily apparent to the policy holder, and what provisions of the policies are in need of reformation. Indeed, [the insurer] did not plead mistake, mutual or otherwise, and failed to pray for reformation. Rather, the complaint sought only interpretation of certain contractual provisions.

Id. at 460-61. Here, Travelers asserts that the Schedule is incorrect; otherwise the record and arguments in this case are comparable to the unsuccessful suit in Barr.

On this record, the evidence submitted is speculative about the parties' intentions and any supposed mistake as to the Schedule's contents. Travelers' motion cites GRC's acknowledgment that "it purchased an ICSOP policy for 1985." Def. Reply at 2 (citing Pl. Resp. at 2 n.2). It is also undisputed that Granite State did not issue a policy to GRC for the August 1, 1985-86 period. Id. The motion notes that no one produced in discovery any policy numbered, "44851093," that declares $2 million limits of liability, any one occurrence and in the aggregate, for the period, August 1, 1985-86, except the ICSOP policy. Id. It is also noted that GRC and ICSOP produced a copy of the ICSOP policy from their files. In Travelers' view, these facts compel the conclusion that the ICSOP policy is the controlling umbrella policy. However, the proposed finding does not necessarily follow from the cited facts. The cited facts do not show what the parties intended or whether any mistake was made as to the identity of the controlling umbrella carrier and policy.

6

Travelers' motion is supported for the most part by materials that are extrinsic to the policies. See Def. Exs. 5-8 (doc. nos. 649-7 through 649-10). These materials provide some evidence as to the underwriting of the policies. In particular, the motion cites deposition testimony of Michael Bruzzi, Jr., of Pacific Starr of New York, Inc., dated June 29, 2010, who was the underwriter for the Granite State and ICSOP policies. Def. Br. at 12; Def. Ex. 8 (doc. no. 649-10). This testimony also does not evidence the parties' intent. Bruzzi testified that he did not recall working on GRC's account. Id., Bruzzi Dep., 14:24-15:3. He also testified that the ICSOP policy was prepared after he was no longer employed by Pacific Starr. Bruzzi Dep., 60:4-61:24, Declaration of Michael Conley ¶ 7, dated May 1, 2015 ("Conley Decl."), Pl. Ex. D (doc. nos. 657, 657-4). Simply stated, the proffered extrinsic materials do not fill the vacuum of evidence as to what the parties knew, intended, and agreed to in regard to the policies issued for the 1985-86 period.

Moreover, the parties' submissions present conflicting inferences. GRC disputes that the Schedule incorporates the ICSOP policy. GRC's position is that Travelers made Granite State the controlling umbrella carrier and made Granite State's policy applicable "'whether or not such policies are in force.'" Pl. Resp. at 2 & n.1 (quoting the Indemnity Agreement). Id. GRC asserts that "the reference to Granite State was not a mistake, but was consistent with Travelers' underwriting guidelines and reflected the information known to Travelers when it underwrote the policies." Id. at 3 (citing Deposition of Clinton Greene, dated May 27, 2010, at 26, Conley Decl., Pl. Ex. B (doc. no. 657-2)). Greene testified that Travelers' guidelines required the underwriter to review the underlying policy. Id. (citing Greene Dep., 26:3-7). Greene also testified that Travelers' policies were typed on October 28, 1985, and Travelers' standard practice at that time was for the underwriter to have a copy of the underlying policies. Id. (citing Greene Dep., 27:3-24). The record

7

is not clear as to the date that the ICSOP policy was completed and sent to GRC. Id. It appears this happened sometime between February and May, 1986. Id. GRC asserts that "Travelers could not have reviewed or even seen the ICSOP policy prior to the issuance of its policies." Id. At the time that Travelers wrote its policies, GRC maintains, what was available was Granite State's umbrella policy issued to GRC for the 1984-85 period, and a binder for Granite State's umbrella policy for the 1985-86 period, which binder was signed and dated August 16, 1985. Id. See Binder, Conley Decl. ¶ 6, Pl. Ex. C (doc. no. 657-3). The Granite State umbrella policy for the 1984-85 period did not contain an asbestos exclusion, as was previously so ruled. See Orders and Mem. dated June 20, 2011, at 2 & n.2 (doc. nos. 318, 319, 320). GRC submits that may have been why Travelers chose to include its own asbestos exclusion in its policies for the 1985-86 period. Id. at 4.

On the other hand, Travelers' cites another binder for ICSOP's umbrella policy for the 1985-86 period, which was dated August 26, 1985, but was not signed. Def. Br. at 11. See "Premium Binder," Def. Ex. 6 (doc. no. 649-8). GRC responds that Bruzzi, who actually signed Granite State's binder for the 1985-86 period, testified that for a binder to be effective, it must be signed. Pl. Resp. at 3 & n.4 (citing Bruzzi Dep., 69:13-20, Conley Decl. ¶ 7, Pl. Ex. D (doc. no. 657-4)).

As was previously ruled in this case, an insurance contract may be reformed to correspond to the understanding of the parties where the mistake is mutual between the parties. Mem., dated Jan. 27, 2012, at 9 (doc. no. 406). The moving party has the burden of showing mistake by "clear, precise and indubitable evidence." Id. at 9-10 (quoting General Elec. Credit Corp. v. Aetna Cas. & Sur. Co., 263 A.2d 448, 456 (Pa. 1970) (citing Easton v. Washington Cnty. Ins. Co., 137 A.2d 332, 337 (Pa. 1958)). The proffered mistake as well as the parties' intentions must be clearly proven. Id. at 10 (citing Kramer v. Schaeffer, 751 A.2d 241, 246 (Pa. Super. Ct. 2000)). Absent a mutual

8

mistake warranting equitable relief, the policies cannot be rewritten in order to give effect to the parties conflicting views about the underwriting history of the policies. Id. at 12 (citing American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010) ("mutual intention of the parties at the time they formed the contract governs its interpretation"); Guardian Life Ins. Co. of Am. v. Zerance, 479 A.2d 949, 953 (Pa. 1984) ("we may not rewrite the insurance contract, under the guise of judicial interpretation, to expand [or contract] the coverage beyond that as provided in the policy.")).

On this record, equitable reformation would not be warranted. The written insurance contracts provide the only reliable evidence of the agreements that were actually made.

## B. The Time to Present Defenses Based on the ICSOP Policy Has Passed

Travelers' motion will be denied on an alternative ground – that is, the time to present any defenses based on the ICSOP policy passed for Travelers some years ago. This too is dispositive of the questions presented for decision here

Travelers contended that additional discovery is needed before trial of GRC's damages. Def. Statement of Issues for Adjudication at 3 (doc. no. 640). That request was denied. Fact discovery closed on June 7, 2010. Orders, Jan. 21, 2010, and Feb. 19, 2008 (doc. nos. 239, 199). Expert discovery closed on April 29, 2011. Order, Mar. 17, 2011 (doc. no. 303). Despite previous opportunities to request additional discovery, Travelers did not do so. See generally Transcript of Hearing ("Hr'g Tr."), 9:3-10:6, 31:23-32:11, 33:20-35:9, dated Mar. 24, 2015 (doc. no. 644).

Before the close of discovery, Defendants Lexington Insurance Company and AIU Insurance Company were permitted to amend their answer to state counterclaims for reformation and rescission of their policies. Order, dated Mar. 24, 2011 (doc. no. 304). On July 19, 2011, after the close of

9

discovery, Lexington and AIU made their first request for additional discovery to support the counterclaims, which GRC opposed. Letters, dated July 19, 22, and 29, 2011 (doc. nos. 332, 336, 351). These Defendants were granted limited discovery. Order, dated Aug. 3, 2011 (doc. no. 352). They were also granted enlargements of time to respond to GRC's motion for summary judgment by September 9, 2011. On that deadline, they cross-moved for partial summary judgment, contending their policies should be reformed to exclude asbestos-related claims or should be rescinded. Defs. Mot. (doc. no 306). Despite the lenient deadlines and additional discovery granted to other litigants, Travelers did not request leave to amend its answer to state a counterclaim for reformation and rescission of its policies. Travelers did not do so at any time in this litigation.

Dispositive motions were due by August 1, 2011. Order, Feb. 19, 2008 (doc. no. 199). On that date, Travelers moved for summary judgment "on the grounds that the Travelers Policies clearly and unambiguously do not provide coverage for the underlying asbestos-related claims asserted against GRC." Def. Mot., Br. at 12 (doc. no. 338). GRC responded (doc. no. 376), and Travelers replied (doc. no. 397). Among other defenses, Travelers' summary judgment motion asserted that:

> the Controlling Underlying Insurance for the policy period of August 1, 1985 to August 1, 1986, is a policy issued by [ICSOP] . . . No. 4485-1093 . . . . The ICSOP Policy contains an express and unambiguous exclusion that precludes coverage for asbestos-related claims asserted against GRC.

Def. Br. at 4-5, 9-11 (doc. no. 338) (quoting ICSOP exclusion). Travelers also asserted: "Because the ICSOP Policy excludes coverage for the asbestos-related claims asserted against GRC, there is no coverage for such claims under the Travelers Policies under the clear and unambiguous language contained in the Indemnity Agreement of the Travelers Policies." Id. at 11, 9-11. GRC responded that Travelers' policies do not reference an ICSOP policy, but instead Travelers' policies reference

10

a Granite State policy, as the controlling umbrella insurance. Pl. Resp. at 2-3, 13-16 (doc. no. 376).

GRC asserted that ICSOP's exclusion was not part of Travelers' policies:

> As such the applicability of the ICSOP exclusion is in dispute. In addition, the scope of the ICSOP exclusion is also in dispute.

Id. at 2-3, 14, 13-16. In sum, Travelers' motion for summary judgment presented precisely the same questions and arguments that are asserted once again here.

On March 21, 2012, the Court denied Travelers' motion for summary judgment, ruling that there were factual issues for trial both as to the meaning of the exclusionary terms and their application to the allegations of the underlying lawsuits. Order and Mem., dated Mar. 21, 2012 (doc. nos. 428, 429).

On April 18, 2014, Defendants – including Travelers – jointly submitted a pretrial memorandum identifying disputed issues for trial on the meaning of the asbestos-related exclusions. Defs. Pretrial Mem. (doc. no. 599). It was asserted that "[e]ach of the policies at issue in this phase of the action contains or incorporates an asbestos exclusion." Id. at 2. Defendants identified the ICSOP policy and the ICSOP asbestos exclusion – quoting the exclusion's wording: "exposure to . . . asbestos products, asbestos fibers or asbestos dust" – and further stating that:

> the ICSOP Policy is at issue in this phase of the case because the policies issued by Defendant Travelers do not provide coverage for any claims that are excluded by the "Controlling Underlying Insurance." The ICSOP Policy is the "Controlling Underlying Insurance" for the Travelers policies. Consequently, there can be no coverage for GRC's claims under the Travelers policies to the extent that those claims are excluded from coverage under the asbestos exclusion in the ICSOP Policy. The Travelers policies also have their own asbestos exclusions that Travelers will rely upon in its defense to GRC's claims.

Id. at 2 & n. 4.

11

By Orders dated April 24, 2014, and May 5, 2014 (doc. nos. 600, 604), a bench trial was scheduled to determine the meaning and application of the asbestos-related exclusions. It was ordered that "in [this] phase two of trial, all questions concerning the meaning of the exclusions will be tried and decided." Id. (doc. no. 604 at 2).

On July 9, 2014, GRC and each of the defendant insurance carriers – except Travelers – settled. See Stipulation and Order of Dismissal (doc. no. 617). On October 2, 2014, a pretrial hearing was held to identify the issues to be tried by GRC and Travelers on November 3, 2014. See Hr'g Tr., dated Oct. 2, 2014 (doc. no. 625). Travelers stated that the only exclusion in dispute was the one "Asbestos Exclusion" contained in each of its two policies:

> There's one exclusion . . . and it says "arising out of asbestos." That's what Travelers is relying on and Travelers is asking that based on the plain, ordinary meaning of those words, GRC's claims are excluded.
> \* \* \*
> Travelers' exclusion uses one word, in effect one word, "asbestos." There are no other words in there that somehow we're arguing have the same meaning or something like that.
> \* \* \*
> Again, two exclusions, two policies, they both have the same words. . . . Here we're only talking one year, '85 -'86 . . . . It is that language and that language only.
> \* \* \*
> Again, all those other words but "asbestos" are not in this case. The only word is "asbestos" and the only thing Travelers has asked is that that word be interpreted in accordance with its plain, ordinary, customary meaning.

Id., Hr'g Tr., 17:11-16, 20:8-11, 21: 5-11, 22:3-7. When questioned, Travelers repeated its position:

> THE COURT: It's a much narrower case, as it were, than it was three months ago.
> \* \* \*
> TRAVELERS: Yes. And my concern is that, you know, GRC appears to be trying the case from six months or a year ago as opposed to the case as it stands now: one defendant; two policies; but one exclusion; and it's one very short exclusion which only uses a single word, "asbestos." And it's the position of Travelers that that word, when reasonably interpreted - - interpreted, would preclude the claims or exclude the claims that are the - - for which coverage is sought in this action.
> \* \* \*

12

THE COURT: So, if - - if I understand you correctly, it's really very simple: Look at the exclusion in the two policies and interpret the word "asbestos"; that's it.

\* \* \*

TRAVELERS: Yes.

Id., Hr'g Tr., 22:22-23:13. In a later challenge to the relevancy of expert testimony about "basic industry practices in terms of how exclusions are drafted and how they come about," as proffered by counsel for GRC, Travelers reiterated its position:

> he's getting into the old case that "asbestos" means one thing, "asbestos products" means something else, "asbestos-containing products" means something else.
> Travelers is saying that we're just asking for an interpretation of the word "asbestos." It would be their job to show that there was some other meaning.

Id., Hr'g Tr., 36:16-18, 37:21-38:3.

On November 3, 2014, during the bench trial, Travelers introduced the ICSOP policy into evidence. Trial record ("R."), transcript dated Nov. 3, 2014, 11:14-12:7 (doc. no. 634); Def. Trial Ex. 3. GRC did not object to the authenticity of that trial exhibit. GRC then sought to introduce the Granite State policy for the 1984-85 period. R. 55:16-57:4, 58:1-60:20; Pl. Trial Ex.13. The following colloquy took place, in part:

> TRAVELERS: [I]t is Travelers' position that its asbestos exclusion controls and that's all the Court needs to consider. . . . I'm not going to be arguing the controlling underlying insurance. . . . I'm happy to continue the position that Travelers has that what we're talking about is arising out of asbestos.
>
> \* \* \*
>
> GRC: But if Mr. Fitch [Travelers' counsel] says he's not arguinig the language of the [ICSOP] policy, I don't know why we need to continue with this. If his argument is that they today are relying upon exposure to asbestos then that's what we're here to deal with, is exposure to asbestos.
>
> \* \* \*
>
> THE COURT: So is that your position?
>
> \* \* \*
>
> TRAVELERS: That's my position.
>
> \* \* \*

13

> THE COURT: If that's your position, and then I'm assuming Mr. Conley [GRC's counsel] would withdraw 13 [Granite State's policy], is that right?
>
> \* \* \*
>
> GRC: I'll withdraw 13.

R. 58:1-60:20.

Travelers' statements to the Court had significant consequences. Because of these representations by Travelers, GRC withdrew its proffer of the Granite State policy and did not present evidence or argument at trial as to the Granite State and ICSOP policies.

After conclusion of the bench trial, Travelers did not prevail on its defense that the "Asbestos Exclusion" contained in its policies barred GRC from recoverying insurance benefits. On March 3, 2015, it was ruled that the Exclusion is ambiguous, requiring a ruling that favors coverage for the policyholder, GRC: "That is, the Asbestos Exclusion is not enforceable and is not effective to preclude insurance coverage for GRC against underlying asbestos-related lawsuits, which sue 'typically . . . for bodily injuries . . . resulting from exposure to asbestos-containing products manufactured, sold, and distributed by GRC.'" Order and Mem., dated Mar. 3, 2015 (quoting Compl. ¶ 23) (doc. nos. 637, 636); Gen. Refractories Co. v. First State Ins. Co., No. 04-3509, --- F. Supp. 3d ----, 2015 WL 918797 (E.D. Pa. Mar. 3, 2015) (Restrepo, J.).

On April 17, 2015, Travelers filed the present motion, reasserting defenses under the ICSOP policy's asbestos exclusion that were abandoned at the hearing held on October 2, 2014, and the bench trial held on November 3, 2014. In response, GRC maintains that Travelers should not be allowed to proceed with the ICSOP defenses, because "the Court would need to hold a second trial on the interpretation of another asbestos-related exclusion" – the ICSOP exclusion. Pl. Resp. at 2. This is a fair assessment.

The efficient disposition of this action will be preserved. Rule 16 of the Federal Rules of Civil Procedure "contemplates that a trial court should assume an 'active managerial role' in the litigation process to expedite the efficient disposition of a case." Lassiter v. City of Philadelphia, 716 F.3d 53, 55-56 (3d Cir. 2013) (Roth, J.), cert. denied, 134 S. Ct. 902 (U.S. 2014). The "notes to Rule 16(c) state that the rule was drafted to 'clarify and confirm the court's power to *identify the litigable issues* . . . in the hope of promoting efficiency and conserving judicial resources by *identifying the real issues* prior to trial, thereby saving time and expense for everyone.'" Id. (quoting Fed. R. Civ. P. Advisory Comm. Notes to 1983 Amendment, Subdivision (c) (emphasis added by Judge Roth)). Here, GRC disputes that the ICSOP policy is the controlling umbrella liability insurance underlying Travelers' policies. It is also disputed that the scope of the ICSOP exclusion precludes insurance benefits for the underlying asbestos-related claims asserted against GRC. These issues could have been presented at the bench trial held on November 3, 2014. Travelers made a strategic choice not to do so – and Travelers will be held to that decision.

In order to "protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment," Travelers' evidence and argument as to the ICSOP policy will not be permitted at trial. Ryan Operations G. P. v. Santiam–Midwest Lumber Co., 81 F.3d 355, 358, 358-60 (3d Cir. 1996). Trial is now over on all genuine disputes of fact and law concerning any exclusions to Travelers' liability under its policies.

Travelers' motion will be denied, and the objections set forth in Travelers' motion in their entirety are overruled.

An appropriate order accompanies this Memorandum.