IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GENERAL REFRACTORIES COMPANY : CIVIL ACTION
:
v. :
:
FIRST STATE INSURANCE CO., *et al.* : NO. 04-3509

**MEMORANDUM**

L. FELIPE RESTREPO, J.                                                                            JUNE 11, 2015

Plaintiff, General Refractories Company ("GRC"), a manufacturer and supplier of refractory products that at times contained some asbestos, sues its insurance carriers for a declaration of excess insurance coverage in underlying asbestos-related lawsuits and for breach of insurance contract. Since about 1978, GRC has been named as a defendant in a multitude of asbestos-related suits throughout the United States. Each of those insurance carriers has now settled with GRC, except one – defendant Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company (collectively, "Travelers"). A jury trial is scheduled for July 13, 2015.

Travelers moves to preclude evidence at trial of any underlying asbestos-related claim for which GRC sues to recover insurance benefits, but "has not established coverage" under Travelers' policies. See Def. Br. at 1(ECF document nos. 651, 651-1); Def. Reply at 2-4 (doc. no. 660); Travelers' policies, Def. Exs. 2 and 3 (doc. nos. 651-3 and 651-4). Travelers' motion contends that GRC "has not and will not be able to establish the predicate facts to obtain coverage." See Def. Br. at 1. GRC opposes the motion on several grounds. See Pl. Resp. (doc. no. 655). Principally, GRC maintains that Travelers' motion does not present any genuine

disputes for trial. Id. at 1-2, 11. Granting the relief requested by the motion, GRC submits, would be tantamount to ordering the parties to "now retroactively adjust each claim." Id. at 2 & n.1. For the background of this motion, see Memorandum dated May 29, 2015, at 1-2, 4 & nn.1-2 (doc. no. 662).

A.  **GRC Has Shown Sufficient Facts to Bring Its Claim Within the Affirmative Grant of Coverage Under Travelers' Policies and to Submit Its Claim to a Jury**

Travelers and GRC agree that "a policyholder has the obligation to establish a right to coverage under a policy." See Def. Reply at 1 (quoting Pl. Resp. at 2). The parties disagree about what that showing entails.

"In Pennsylvania, the insured bears the burden of proving facts that bring its claim within the policy's affirmative grant of coverage." Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996) (citing Riehl v. Travelers Ins. Co., 772 F.2d 19, 23 (3d Cir. 1985)); accord State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009). On the other hand, "the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." Koppers, 98 F.3d at 1446. Ordinarily, in insurance coverage disputes, the insured must show an "accident,"[1] or in other words, "an 'occurrence' or a loss, during the policy

---

[1] Travelers' policies insure GRC's liability "on account of any one accident or occurrence." See "Indemnity Agreement," Def. Exs. 1 and 2 (doc. nos. 651-3 and 651-4, at 5-6). Fortuity of the events is the "key factor" to consider in determining whether there has been an "accident":

> An accident, simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more

period." Riehl, 772 F.2d at 23.

In those cases where multiple layers of excess liability policies insure the same risk – as is the case here with GRC's liability for its products – additional Third Circuit and Pennsylvania rules of law control the analysis of coverage. One of those rules is that an excess carrier's liability under its policies "would be triggered" once "the underlying coverage has been 'exhausted,' either by settlement or by payment" of the underlying claims asserted against the policyholder. Koppers, 98 F.3d at 1454-55. In such event, an excess insurer would be held "jointly and severally liable for the full amount of [the policyholder's proven] loss in excess of . . . the policy limits of the directly underlying, 'exhausted' primary [and excess] policies." Id. at 1455.

Travelers' motion maintains that "GRC is required to produce evidence upon which a jury could conclude that GRC has established that . . . each of the policies underlying the two respective Travelers policies ha[s] been exhausted by settlement or payment."[2] See Def. Br. at 3-4. Whereas the Third Circuit has not expressly ruled as to which party has the burden to prove exhaustion of any specified underlying limits of liability, a fair reading of Koppers supports

---

perfect is the resulting accident.
Estate of Mehlman, 589 F.3d at 111 (quoting Brenneman v. St. Paul Fire & Marine Ins. Co., 192 A.2d 745, 747 (Pa. 1963)). Here, it is not disputed that the underlying claims arise from fortuitous events. There is no evidence that any underlying claimant expected or intended to suffer asbestos-related bodily injury or disease.

[2]Under the Indemnity Agreement contained in Travelers' policies, Travelers agreed to pay, in part: "all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence . . . , which is in excess of . . . the total of the applicable limits of liability of all policies described in Section 3. Schedule of Underlying Insurance; whether or not such policies are in force." See Def. Exs. 1 and 2 (doc. nos. 651-3 and 651-4 at 5). Accordingly, Travelers' policies provide excess liability insurance over certain underlying policy limits, as specified in the "Schedule of Underlying Insurance" that is contained in Travelers' policies. See Mem. dated June 1, 2015 (doc. no. 664); see also "Schedule of Underlying Insurance," Def. Exs. 1 and 2 (doc. nos. 651-3 and 651-4, at 6).

Travelers' position. GRC does not dispute this point. On this record, it need not be determined which party has the burden to prove exhaustion, because GRC has produced sufficient facts to create a triable dispute as to the coverage afforded under Travelers' policies.

GRC's proffered evidence – that is, the Claims Database and the Queue – is admissible to present in excess of $120 million in damages, either by settlement or by payment of the underlying claims asserted against GRC, which would exhaust the specified underlying coverage during the effective period of Travelers' policies, August 1, 1985-86. See Mem. dated May 29, 2015 (doc. no. 662). At trial, GRC's summary evidence would satisfy the requirement to come forward with sufficient facts to bring its claim for insurance benefits within the ambit of the insuring agreement contained in Travelers' policies.

Requiring GRC to prove exhaustion of the specified policy limits directly underlying Travelers' policies is not an onerous burden. There is no reason to doubt that GRC can present the requisite facts establishing those limits of liability. In addition, as was previously ruled, GRC's "two-tiered or conditional" settlements with the underlying claimants are permissible under Pennsylvania law and constitute damages within the meaning of the excess insurance policies issued by Defendants in this action – including Travelers. See Mem. dated Mar. 26, 2012 (doc. no. 432), and amending Order dated Mar. 28, 2012 (doc. nos. 434, 434-1); Gen. Refractories Co. v. First State Ins. Co., 862 F. Supp. 2d 382 (E.D. Pa. Mar. 27, 2012) (Ludwig, J.). GRC's summary evidence[3] is admissible to present in excess of $120 million in damages, which GRC is legally obligated to pay or has actually paid to settle the underlying claims. See Mem. dated May 29, 2015 (doc. no. 662).

---

[3]GRC's "summary evidence," as used herein, refers to the Claims Database and the Queue.

Furthermore, Travelers incorrectly asserts: "GRC must identify the claims that are allocated to other [underlying] insurance policies, as well as the claims that it intends to allocate to the Travelers policies." See Def. Br. at 3-4, 7-8; Def. Reply at 5-6. There is no such requirement under controlling Third Circuit and Pennsylvania law. See Mem. dated May 29, 2016, at 27-29 (doc. no. 662). GRC's summary evidence is admissible to "prove any and all claims that trigger the policies on the risk for 1985-86, to establish GRC's entire loss" – that is, "a total damages figure" in excess of $120 million. Id.

On another ground, Travelers asserts that in order to recover insurance benefits, GRC must show: "the 'accident or occurrence' – the claimant's exposure to a GRC asbestos product – occurred" during the period insured by Travelers' policies, August 1, 1985-86. See Def. Br. at 3, 5-7; Def. Reply at 2-4 (citing A.W. Chesterton Co. v Mass. Insurers Insolvency Fund, 838 N. E.2d 1237, 1250-53 (Mass. 2005)). This too is incorrect. There is no such requirement under controlling Third Circuit and Pennsylvania law. See Mem. dated May 29, 2015 (doc. no. 662). GRC's summary evidence is admissible to present in excess of $120 million in damages, which happened during the period insured by Travelers. Id.

On an additional ground, Travelers incorrectly asserts that GRC is required to establish, but cannot prove that "each of the Asbestos Claims for which it seeks coverage involves a claim for injury due to exposure to an 'asbestos-containing product' manufactured or sold by GRC, not 'asbestos' manufactured or sold by GRC." See Def. Br. at 3, 6-7; Def. Reply at 2, 4-5. This objection was overruled because GRC has produced sufficient evidence to create a triable dispute as to this element of its case. See Mem. dated May 29, 2015 (doc. no. 662). GRC's summary evidence is admissible to present in excess of $120 million in damages on account of the

5

underlying claimants' exposure to an asbestos-containing product supplied by GRC. Id.

### B. GRC Has Presented Sufficient Evidence for a Jury to Find That the Underlying Settlements Were Fair and Reasonable and Concluded in Good Faith

Travelers' motion asserts that GRC has the burden to prove that the settlements of the underlying asbestos-related claims were reasonable. See Def. Br. at 4, 8-9; Def. Reply at 6-7. The motion requests a ruling that GRC be required to prove that each settlement was reasonable, and in the absence of such evidence, that GRC be precluded from presenting any evidence as to its damages on account of that settled claim. In essence, GRC responds that Travelers' motion does not present a genuine dispute. See Pl. Resp. at 9-10.

In order to present a triable dispute, an opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Rather, '[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record,' or 'showing that the materials cited do not establish the absence or presence of a genuine dispute.'" Stanford v. Nat'l Grange Ins. Co., No. 11-7144, --- F. Supp. 3d ---, 2014 WL 5527744, at *4 (E.D. Pa. Nov. 3, 2014) (quoting Fed. R. Civ. P. 56(c)(1) and citing Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

Travelers neither identifies any specific settlements as being unfair or unreasonable, nor submits evidence that a single settlement was not reasonable or was not concluded in good faith. Indeed, there is nothing in the record that even suggests GRC might have engaged in self-dealing or might have carelessly expanded Travelers' potential liability beyond reason.

Citing Trustees of Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890 (3d Cir. 1987), Travelers' motion warns of the dangers that might be presented by GRC's "two-tiered or conditional" settlements with the underlying claimants. However, those dangers – primarily, that a self-dealing plaintiff might collusively enter into an unreasonably high settlement – are not presented here, as was previously so ruled in upholding the validity of GRC's settlements. Gen. Refractories Co. v. First State Ins. Co., 862 F. Supp. 2d 382, 387-89 & nn.11, 12 (E.D. Pa. Mar. 27, 2012) (Ludwig, J.) (citing Trustees, 815 F.2d at 900, 901-02, and Alfiero v. Berks Mut. Leasing Co., 500 A.2d 169 (Pa. Super. Ct. 1985)).

As to which party bears the burden of persuasion that a settlement was reasonable, Pennsylvania law on that point is not clear. As Judge Becker noted in Trustees, "the cases are split about which party should normally bear the burden of proof." Trustees, 815 F.2d at 902 n.9. Because the insured in that case did not dispute that it had the burden of proof, Trustees found that "we need not determine the Pennsylvania rule." Id.

Since Trustees was decided in 1987, the Third Circuit and Pennsylvania courts have not clarified which party bears the burden of persuasion. However, district courts in the Third Circuit have placed the ultimate burden of persuasion on the insurer to show that a settlement was not reasonable, particularly where the insurer declines coverage and refuses to negotiate on the ground that the matter is not covered by the policy. See, e.g., Mega Constr. Corp. v. Quincy Mut. Fire Ins. Co., 42 F. Supp. 3d 645, 660 (E.D. Pa. 2012) (citing TIG Ins. Co. v. Nobel Learning Comties., Inc., No. 01-4708, 2002 WL 1340332, at *12 (E.D. Pa. June 18, 2002) (citing American Int'l Underwriters Corp. v. Zurn Indus., Inc., 771 F. Supp. 690, 701-02 (W.D. Pa. 1991)).

7

Travelers' motion suggests that GRC "has a heavy burden of establishing reasonableness," and requests imposition of a "'clear and convincing' burden of proof" in this case. See Def. Br. at 9. Travelers disclaims coverage on the basis of the "Asbestos Exclusion" contained in its policies. See Mem. dated May 29, 2015, at 10 & n.5 (doc. no. 662) (discussing Travelers' reservation of rights letter). That Exclusion has been ruled to be ambiguous and unenforceable against GRC to defeat recovery of insurance benefits in this action. See Mem. dated Mar. 3, 2015 (doc. no. 636); Gen. Refractories Co. v. First State Ins. Co., No. 04-3509, --- F. Supp. 3d ---, 2015 WL 918797 (E.D. Pa. Mar. 3, 2015). It is widely recognized that "[w]hen an insurer declines coverage and refuses to negotiate on the grounds that the matter is not covered, 'it does so at its own peril.'" TIG Ins., 2002 WL 1340332, at *12 (quoting Am. Int'l Underwriters, 771 F. Supp. at 702) (citing Luria Bros. & Co. v. Alliance Assurance Co., 780 F.2d 1082, 1091 (2d Cir. 1986)). Moreover, the disclaimer has "the effect of relaxing judicial scrutiny of the settlement[s], limiting it to a search for reasonableness." TIG Ins., 2002 WL 1340332, at *12 (quoting Am. Int'l Underwriters, 771 F. Supp. at 701)).

Here too, Pennsylvania's rule as to which party bears the burden of proof that a settlement was reasonable need not be decided. GRC's summaries provide sufficient evidence to present the settlements to the jury as being reasonable "in view of the size of possible recovery and degree of probability of claimant's success against the insured." TIG Ins., 2002 WL 1340332, at *12 (quoting Am. Int'l Underwriters, 771 F. Supp. at 702)). GRC submits:

> The average payout of claims on the Queue is $3,186. Sixty-three percent of [the] claims were settled for $1,500 or less. A RAND study from 2008 looked at 327,000 claims paid in bankruptcy trusts and the average for non-malignancy [cases] was $3,000, and the average for malignancy cases was $34,100.

8

Pl. Resp. at 10 (citing Lloyd Dixon, et al., <u>Asbestos Bankruptcy Trusts: An Overview of Trust Structure and Activity With Detailed Reports on the Largest Trusts</u>, 33 (Rand 2010)). GRC's summary evidence demonstrates settlements for amounts on average that are far less than potential verdicts at trial. Whereas "[n]o central registry tracks asbestos lawsuits filed yearly or their outcomes," GRC submits:

> ["]A tabulation of jury verdicts and settlements, based on an average of all asbestos-related lawsuits reported in Westlaw Journal Asbestos, a Thomas Reuters publication, found that the average award was $6.3 million in 2009, $17.6 million in 2010, and $10.5 million in 2011 – amounts much greater than what lawyers say was the norm more than a decade earlier." GRC's settlements are well pale [sic] in comparison to the liability it faced if it tried even a very small percentage of the case[s] against it.

Pl. Resp. at 10 n.5 (citation to website omitted). Significantly, Judge Becker in <u>Trustees</u> found comparable proof sufficient to establish reasonableness.[4] <u>Trustees</u>, 815 F.2d at 902-03.

For many years now, Travelers has had access to the information needed to assess whether or not the settlements were reasonable. <u>See</u> Mem. dated May 29, 2015, at 5-14 (doc. no. 622) (reviewing the record). Travelers acknowledges that the disease codes listed on the Queue are "highly relevant" as to whether a settlement listed on the Queue is reasonable as compared to the claimant's disease. <u>See</u> Def. Br. at 6 (doc. no. 651-1); Def. Br. at 10 (doc. no. 650-1). The record shows that GRC's Claims Database contains information about each claimant's medical

---

[4] In <u>Trustees</u>, the insured hospital introduced evidence that the insurer's claims examiner "commented that the potential jury verdict could have amounted to '$7 million to 10, 12 million,' stating that 'in essence the sky was the limit,'" and "a mock jury panel returned a verdict of $10 million" in favor of the injured claimant, "with some jurors indicating a willingness to award a substantially higher amount." <u>Trustees</u>, 815 F.2d at 902. The Third Circuit ruled: "the mock trial evidence was probative, and if credited by a jury, it provided ample evidence from which the jury could conclude that the settlement figure of $7 million was reasonable." <u>Id.</u> at 902.

diagnosis.  In addition, GRC added disease codes on the April 2015 iteration of the Queue.  See Pl. Resp. at 10 (Travelers has "disease codes for over 25,000 of the claims.").  Travelers had a fair opportunity to fully discover details about the settlements.  See Mem. dated May 29, 2015, at 20 (doc. no. 622).  Yet the record to date does not present a genuine dispute about the reasonableness of the settlements.

Travelers' demand for a jury trial, during which the reasonableness of more than 30,000 individual settlements would be explored, is neither a rational nor a feasible approach.  Federal Rule of Evidence 1006 is designed to achieve a fair trial on the evidence in those cases – such as this one – that present voluminous records.  GRC's summary evidence is admissible to present in excess of $120 million in damages, either by reasonable settlement or by reasonable payment of the underlying claims asserted against GRC.  Id.; Gen. Refractories Co. v. First State Ins. Co., 862 F. Supp. 2d 382 (E.D. Pa. Mar. 27, 2012) (Ludwig, J.).  Whether the settlements and payments were reasonable is now a question for the jury to resolve.

Travelers' motion is denied, and the objections set forth in Travelers' motion are overruled in their entirety.  At trial, Travelers may challenge GRC's proof with admissible, material evidence that presents a genuine dispute for the jury to resolve as to the reasonableness of the settlements and payments made in the underlying asbestos-related claims.  Travelers' evidence and argument shall be limited strictly to the question of whether those settlements and payments were reasonable "in view of the size of possible recovery and degree of probability of claimant's success against the insured." TIG Ins., 2002 WL 1340332, at *12 (quoting Am. Int'l Underwriters, 771 F. Supp. at 702)).

An appropriate Order accompanies this Memorandum.