**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GENERAL REFRACTORIES COMPANY** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **FIRST STATE INSURANCE CO.,** *et al.* | **:** | **NO.  04-3509** |

<u>**MEMORANDUM**</u>

**L. Felipe Restrepo, J.**                                                                 **September 9, 2015**

Plaintiff General Refractories Company ("GRC"), a manufacturer and supplier of refractory products that at times contained some asbestos, sues defendant Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company (collectively, "Travelers"), for excess liability insurance coverage against a multitude of underlying asbestos-related lawsuits. Travelers denied coverage under two policies that it sold to GRC for the period, August 1, 1985-86, maintaining that an exclusion contained in each policy eliminates any insurance for the underlying claims.  GRC has settled tens of thousands of those claims.  Whereas some settled claimants have been paid, the lion's share have been assigned a right to future payment from any funds that GRC should succeed in recovering under its insurance policies.  Here, GRC has prevailed on its claim that Travelers breached its duty under the insurance contracts to indemnify GRC for part of those settlements.  These parties have agreed that judgment should be entered in favor of GRC and against Travelers for $21 million–the policies' combined limits of liability.  Joint Stipulation of Damages (ECF document no. 685).

GRC moves for an award of prejudgment interest in addition to the stipulated $21 million damages and entry of judgment against Travelers.  <u>See</u> Pl. Mot. (doc. no. 686).  Under Pennsylvania

law, it is asserted, prejudgment interest must be awarded as a matter of GRC's legal right, using the six percent (6%) statutory rate for simple legal interest under 41 P.S. § 202, starting from when proceeds were owed under the policies for the settlements but were withheld by Travelers, through the date that judgment is entered on the docket in this action.  See Pl. Br. at 3-4 (doc. no. 686-1).

It is GRC's position that the stipulated sum of $21 million in damages comprises principal amounts that GRC promised to pay settled claimants during 2003-04.  Id. at 3; Pl. Reply at 3, 6 (doc. no. 692).  Those settlements are evidenced by a database submitted by GRC, which is referred to as "the Queue."  Affidavit of Michael Conley ("Conley Aff.") ¶ 3, dated July 24, 2015 (doc. no. 686-2), Ex. B, "Redacted Queue With Interest Calculations" (doc. no. 690).  The unpaid principal of the claims numbered 3,146 through 10,486 on the Queue total $21 million: "Travelers' liability for the $21 million was fully incurred by January 5, 2004, by what should have been the payment of claims without interest."  Pl. Reply at 3.

GRC proposes, and Travelers does not genuinely dispute, that legal interest, if any is owed for these settlements, should be computed as follows:  Interest starts to accrue on January 23, 2003, the date that the earliest unpaid claim numbered 3,146 was settled when GRC received a signed release from that claimant.  Thereafter, interest starts to accrue separately on each unpaid claim on the date that each was settled and GRC received a signed release, and interest accumulates on all unpaid principal amounts.  As of January 5, 2004, the date that the last unpaid claim numbered 10,486 was settled, legal interest accumulates on the total outstanding principal sum of $21 million, through the date that judgment is entered on the docket in this action.  See Pl. Br. at 3; Pl. Reply at 3, 6.

Travelers opposes the motion, responding that it does not owe any prejudgment interest.  See

2

Def. Resp. at 2-3 (doc. no. 691).  This opposition is founded on the undisputed fact that GRC promised to pay each settled claimant simple interest accruing at the rate of four percent (4%) per annum on the unpaid principal obligation, starting from the date that GRC received the claimant's signed release.  Travelers and GRC agree that the stipulated $21 million sum constitutes GRC's insured damages.  However, it is Travelers's position that the stipulated $21 million sum comprises all amounts set forth in the settlement contracts, including both principal and the four percent (4%) interest that GRC promised to pay the settled claimants.  Travelers maintains that GRC has no right to recover any other amounts, either damages or prejudgment interest, that would exceed the policies' combined limits of liability, $21 million.  Id.

In the alternative, should prejudgment interest be awarded, Travelers maintains that the rate of its liability for prejudgment interest must be limited to four percent (4%) simple interest, which is the rate of interest that GRC promised to pay the claimants.  See Def. Resp. at 3, 8.  According to Travelers: "To permit GRC to recover prejudgment interest at the statutory rate would be contrary to Pennsylvania law, and would lead to the recovery of a windfall."  Id. at 9.  Otherwise, Travelers does not specifically dispute GRC's calculation of  prejudgment interest.  See id. at 2 & n.2, Ex. 1 (doc. nos. 691, 691-2) (stating that it "will not be in a position to 'agree' with . . . 'how this was done'"); cf Pl. Reply at 6-7 (noting that no other opposition to GRC's calculation has been presented).

The present motion presents the questions: Should prejudgment interest be awarded in addition to the stipulated damages of $21 million, in excess of the policies' combined limits of liability?  If so, should that interest be calculated at Pennsylvania's six percent (6%) statutory rate for legal interest, as detailed in GRC's submission, the Queue (doc. no. 690)?  For the reasons set

forth below, the answer to both questions is yes.

I.   **Factual and Procedural Background**[1]

Since about 1978, GRC has been named as a defendant in about 31,440 asbestos-related lawsuits throughout the United States.  On June 10, 2002, GRC tendered the underlying claims to its excess liability insurance carriers.  All of them denied coverage, maintaining that the policies sold to GRC contain exclusions of such claims.  On July 23, 2004, GRC commenced this action against its excess insurance carriers, suing for a declaration of insurance coverage and for breach of insurance contract.  Each of those carriers has now settled with GRC except one – Travelers.

The policies that Travelers sold to GRC for the August 1, 1985-86 period contain an "Asbestos Exclusion."  On March 3, 2015, it was ruled that this exclusion was not enforceable and not effective to preclude insurance coverage for GRC against the claims made in the underlying asbestos-related lawsuits.  See Order and Mem. dated Mar. 3, 2015 (doc. no. 636), Gen. Refractories Co. v First State Ins. Co., No. 04-3509, --- F. Supp. 3d ---, 2015 WL 918797, *2, 13 (E.D. Pa. Mar. 3, 2015).  That ruling, along with other pretrial determinations as to Travelers' defenses, left the scope of damages to be decided.[2]  A jury trial was scheduled for June 15, 2015, but was continued

---

[1] No genuine dispute has been presented as to the material facts.  For a full discussion of pertinent facts, with references to the record, see Mem. dated May 29, 2015 (doc. no. 662), General Refractories Co. v. First State Ins. Co., No. 04-3509, 2015 WL 3450391, *2-8 (E.D. Pa. May 29, 2015).

[2] See previous rulings in this case: Order and Mem. dated May 29, 2015 (doc. nos. 662, 663), Gen. Refractories, 2015 WL 3450391 (E.D. Pa. May 29, 2015); Order and Mem. dated June 1, 2015 (doc. nos. 664, 665), Gen. Refractories, 2015 WL 3466832 (E.D. Pa. June 1, 2015); Order and Mem. dated June 11, 2015 (doc. nos. 667, 668), Gen. Refractories, 2015 WL 3643554 (E.D. Pa. June 12, 2015); Order and Mem. dated June 11, 2015 (doc. nos. 669, 670), Gen. Refractories, 2015 WL 3648601(E.D. Pa. June 12, 2015); Order and Mem. dated June 11, 2015 (doc. nos. 671, 672), Gen. Refractories, 2015 WL 3643568 (E.D. Pa. June 12, 2015).

to July 13, 2015, and was continued once again to accommodate the parties' settlement discussions.

On July 14, 2015, GRC and Travelers filed their stipulation of "the quantum of GRC's alleged damages," specified as damages in the amount of $21 million, which "is sufficient to exhaust the limits of liability" of the policies that Travelers sold to GRC for the 1985-86 period.  See Joint Stip. of Damages ¶ 3 (doc. no. 685).  It was also stated that "Travelers preserves and expressly reserves all of its arguments for appeal."  Id. ¶¶ 1-3.  Following these stipulations and the previous rulings as to Travelers' liability under the policies, the parties have submitted for judicial decision the following remaining questions: whether Travelers should be assessed prejudgment interest on the stipulated damages, and if so, how much should be awarded at what rate.  Id. ¶¶ 4-5.

Historically, The Travelers Indemnity Company ("The Travelers") defended and indemnified GRC under primary liability insurance policies for asbestos-related bodily injury and property damage claims.  Ultimately, GRC's liabilities far exceeded and exhausted its primary insurance, and The Travelers no longer defended or indemnified GRC.  GRC's excess liability insurers disclaimed coverage for the underlying claims.

Left to fend for itself, GRC has negotiated settlements on its own since about 2002, largely using the claims resolution structure initially put in place by The Travelers, which includes the maintenance of claims databases.  GRC has collected the same categories of evidence and has recorded the same types of information that The Travelers required.  GRC remains a defendant in tens of thousands of asbestos-related lawsuits.  New cases continue to be filed against GRC, and GRC continues to record and settle new and pending claims.

In essence, GRC has settled with underlying claimants by agreeing to pay a specific, principal dollar amount, which is derived from valuations that claimants with similar types of asbestos-related

diseases have previously recovered.  Since about 2000-01, in lieu of a present cash payment, each

settling claimant has been assigned a right to payment from funds that GRC recovered in previous

coverage litigation or is successful in recovering in this action.[3]  The record establishes that GRC

and each claimant agreed to settle under a standardized form

> for and in consideration of the promise of General Refractories Company to pay in
> the future the sum of . . . $ [stated dollar amount] (the "Settlement Obligation") plus
> interest on the Settlement Obligation accruing at the rate of 4% per annum, not
> compounded, under the terms set forth below, as well as the Assignment (as defined
> below) . . .

"Compromise Settlement Agreement and Release" dated Sept. 22, 2005, Conley Aff., dated July 24,

2015, ¶ 5, Ex. D (doc. no. 686-2 at 13) (also submitted Locasale Aff. dated Aug. 1, 2011), ¶ 19, Ex.

18 (doc. no. 346)); see also "Compromise Settlement Agreement and Release," dated Jan. 5, 2009,

Declaration of Michael Conley ("Conley Decl.") dated May 1, 2015,  ¶¶ 17-18, Exs. J, K (doc. nos.

657, 657-10, 657-11); "Assignment and Security Agreement," dated Jan. 1, 2001, Locasale Aff., ¶

17, Ex. 16; "Amendment to Assignment and Security Agreement," dated Feb. 10, 2004, Locasale

---

[3]  Barry L. Katz, Esq., GRC's Rule 30(b)(6) representative, testified at deposition:

Q.     Who first proposed that the underlying claimants settle cases without accepting a present
       cash payment?
A.     I did. . . . Because General Refractories was running out of insurance . . . as to which the
       carriers had agreed to provide coverage. . . . Originally the proposal was that as to any
       settlements entered into, they would get half cash and half an interest in the litigation. . . .
       The reason being that there was still insurance companies covering General Refractories
       and money available.  But it was clear that the writing was on the wall. . . . GRC would run
       out.  And, so, originally it was half cash, half the arrangement to be paid later.  And when
       the insurance actually ran out, it became fully to be paid later.
                              *       *       *
Q.     Aside from insurance proceeds, at the time when – I'm using your words – the insurance ran
       out, did GRC have any other assets?
A.     Effectively, no.  It did not.

Katz Dep., 1110:4-1111:6, 1117:17-21, Affidavit of Gregory T. Locasale ("Locasale Aff.") dated Aug. 1,
2011, Ex. 12 (doc. no. 346).

Aff. ¶ 18, Ex. 17.

For each settlement, GRC has required the claimant to provide specified information and supporting documents, with the recognition that "it is not a done deal until we get the release."  See Deposition Testimony of Jamie P. Yadgaroff, Esq., 20-21, 51:9-15, dated Aug. 11, 2010, Conley Decl. dated May 1, 2015, ¶ 12, Ex. 1 (doc. nos. 657, 657-9); Yadgaroff Dep., 20:6-51:15, Conley Aff. dated Sept. 16, 2011, Ex. 2 (doc. no. 364) (how she processed underlying claims and settlements).  GRC has paid claims from insurance recoveries on a "first-in-time" basis.  This is done by using one of the databases that GRC has maintained, the Queue.  In printed form, it is an excel spreadsheet arranging categories of data in vertical columns, and itemizing the details of each claim horizontally per line.  Among other categories, it records the date of receipt of a signed release, which establishes the priority in which the underlying claims are to be paid.[4]  Released claims first entered on the Queue are paid prior to subsequently released claims.  See Order and Mem. dated May 29, 2015 (doc. nos. 662, 663), Gen. Refractories, 2015 WL 3450391, *4-5, 8 (E.D. Pa. May 29, 2015).

The Queue also contains an entry for each claim as to the accrued interest owed to that claimant.  In previous iterations, the Queue recorded interest accruing at the rate stated in the settlement contracts–that is, the rate of four percent (4%) per annum, not compounded (simple interest).  See Def. Resp. at 4 (doc. no. 691) (discussing the April 2015 Queue).  In support of the

---

[4] As submitted here, the Queue redacts the social security numbers of the listed individual settled claimants.  Among other data, it records as to each claim:  the date that GRC received a signed release from that claimant, the total "Settlement Obligation" (combined secured and unsecured portions), the total interest owed to each claimant to date using the six percent (6%) statutory rate for legal interest, the amount of interest accruing per diem, and GRC's payment of some claims.  Total running sums for settlement amounts, interest owed, and interest accruing per diem are also stated.  See Conley Aff. ¶ 3, dated July 24, 2015 (doc. no. 686-2), Ex. B, "Redacted Queue With Interest Calculations" (doc. no. 690).

present motion, GRC submitted a modified iteration of the Queue, which removes the previous entries for interest accruing at the rate of four percent (4%) and substitutes entries for interest accruing at Pennsylvania's statutory rate of six percent (6%) for legal interest. See Conley Aff. ¶ 3, dated July 24, 2015 (doc. no. 686-2), Ex. B, "Redacted Queue With Interest Calculations" (doc. no. 690); see also Pl. Br. at 4 (doc. no. 686-1), Pl. Reply at 3, 5-6 (doc. no. 692).

Should GRC successfully recover insurance proceeds, GRC is contractually obligated to pay those proceeds to the underlying claimants. See Pl. Br. at 4 (doc. no. 686-1); Conley Aff., dated July 24, 2015, ¶ 5 (doc. no. 686-2); Pl. Reply at 4, 5-6 (doc. no. 692); see also exemplar settlement documents: "Amendment to Assignment and Security Agreement" dated Feb. 10, 2004, ¶¶ 4-6(i)-(iii), Locasale Aff. ¶ 18, Ex. 17 (doc. no. 346), which amends Sections 1(a), 2(a), and 2(b) of the "Assignment and Security Agreement" dated Jan. 1, 2001, Locasale Aff. ¶ 17, Ex. 16) (doc. no. 346). Under this claims resolution structure and the settlement agreements, legal and administrative expenses are deducted before payments are made to claimants. Id. However, given GRC's massive, ongoing liabilities for its refractory products, it is not likely that any recovered monies will remain for payment to the last party on that claims resolution list, which is GRC. Id.; Conley Aff. ¶ 3, dated July 24, 2015 (doc. no. 686-2), Ex. B, Tab of the Queue labeled, "Claims Data Queue" (doc. no. 690); Pl. Reply at 4-6 (doc. no. 692).

As was previously ruled, GRC's "two-tiered or conditional" settlements[5] with the underlying

---

[5] "A settlement in which the plaintiff is paid additional money in the event a specified condition is met is . . . 'two-tiered.' The conditional portion of the settlement constitutes the 'second tier.'" Greater N.Y. Mut. Ins. Co. v. N. River Ins. Co., 85 F.3d 1088, 1090 n.1 (3d Cir. 1996). "[T]his type of settlement provides for the tort victim to recover a larger amount if the insurer is liable than if the tortfeasor must pay the settlement out of its own pocket." Trustees of the Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890, 893 (3d Cir. 1987).

claimants are permissible under Pennsylvania law and constitute damages within the meaning of the excess insurance policies issued by defendants in this action – including Travelers.  See Order and Mem. dated Mar. 26, 2012 (doc. nos. 432, 433), and amending Order dated Mar. 28, 2012 (doc. nos. 434, 434-1), Gen. Refractories, 862 F. Supp. 2d 382 (E.D. Pa. Mar. 27, 2012) (Ludwig, J.).  In response to this motion, Travelers revives its opposition to that decision in 2012, objecting that the settlements "do not obligate GRC to make any payments of its own funds to the underlying claimants."  See Def. Resp. at 2 (doc. no. 691).  However, the March 26, 2012 decision rejecting that objection remains the law of this case, and reconsideration is neither properly presented nor warranted here.

## II.   Jurisdiction and Governing Law

Jurisdiction is based on diversity, 28 U.S.C. § 1332(a)(1).  A federal court exercising diversity jurisdiction must apply the law of the state that governs the issue to be decided.  Mitchell Partners, L.P. v. Irex Corp., 656 F.3d 201, 203 (3d Cir. 2011) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)); Thabault v. Chait, 541 F.3d 512, 521 (3d Cir. 2008) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)) (validity of a theory of damages is "a matter uniquely subject to state law principles" ).  The choice of law rules of the state in which the district court sits must also be applied to determine which state's laws govern each issue.  Klaxon, 313 U.S. at 496.  Here, the forum's choice of law rules require application of Pennsylvania's substantive law.

Under Pennsylvania law and the Restatement (Second) of Conflict of Laws § 187 (1971), "the first question to be answered is whether the parties explicitly or implicitly have chosen the relevant law."  Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999); see

Miller v. Allstate Ins. Co., 763 A.2d 401, 403 (Pa. Super. Ct. 2000) (enforcing a choice of law provision in an insurance policy).  Since the commencement of this action, the parties have agreed, or have effectively acknowledged by their briefing, that Pennsylvania's law governs.  On more than one occasion, it was also ruled that Pennsylvania's substantive law governs interpretation of the insurance contracts in question and scope of damages to be recovered.  See, e.g., Gen. Refractories, 862 F. Supp. 2d at 386-87; Gen. Refractories, 2015 WL 340391, *11-12, 13-14, 17 (E.D. Pa. May 29, 2015).  No party has challenged that determination at any time.

As to whether prejudgment interest should be awarded on the proceeds payable under the insurance contracts between GRC and Travelers, Pennsylvania's law also controls.  Our Court of Appeals has predicted that "the Pennsylvania Supreme Court would conclude that prejudgment interest in contract actions is a substantive rather than a procedural matter."  Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am., 609 F.3d 143, 171 (3d Cir. 2010).  That prediction recognized that Pennsylvania's rules provide for an award of prejudgment interest in contract actions as a matter of right "to compensate for 'the fact that the breaching party has deprived the injured party of using interest accrued on money which was rightfully due and owing to the injured party.'"  Id. at 172-73 (quoting Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459, 469 (Pa. Super. Ct. 2003), appeal denied, 852 A.2d 313 (Pa. 2004), and Palmgreen v. Palmer's Garage, Inc., 117 A.2d 721, 722 (Pa. 1955) ("In all cases of contract interest is allowable at the legal rate from the time payment is withheld after it has become the duty of the debtor to make such payment; allowance of such interest does not depend upon discretion but is a legal right.")); see also McDowell–Wellman Eng'g Co. v. Hartford Accident & Indem. Co., 711 F.2d 521, 524, 528 (3d Cir. 1983) (state law controls the scope of coverage and availability of prejudgment interest on proceeds payable under a liability policy); Jarvis v. Johnson,

10

668 F.2d 740, 742-44 & n.4, 746 & n.8 (3d Cir. 1982) (Pennsylvania's rules for prejudgment interest apply in diversity actions).

III.   **Prejudgment Legal Interest May Be Awarded in Addition to the Stipulated Damages**

    A.    **Prejudgment Interest Must Be Awarded as a Matter of GRC's Legal Right**

Under Pennsylvania law, prejudgment interest is mandated by statute, 41 P. S. § 202. That statute sets the rate of interest but does not set forth any criteria to govern its application:

> Reference in any law or document enacted or executed heretofore or hereafter to "legal rate of interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.

Id. The statutory legal rate of interest is simple interest and may not be compounded. Ralph Myers Contracting Corp. v. Pa. Dep't of Transp., 436 A.2d 612, 614 (Pa. 1981) ("It is generally true that the law of this Commonwealth frowns on an award of compound interest on a debt except where the parties agree to it or a statute expressly authorizes it."); Widmer Eng'g, 837 A.2d at 469 (contractual prejudgment interest "is limited to simple interest at no more than the legal rate").

Under Pennsylvania's common law rules governing prejudgment interest in contract actions, "even where a party's right to the payment of interest is not specifically addressed by the terms of a contract, a nonbreaching party to a contract may recover, *as damages*, interest on the amount due under the contract." Truserv Corp. v. Morgan's Tool & Supply Co., Inc., 39 A.3d 253, 263, 264-65 (Pa. 2012) (emphasis in original). Pennsylvania's Supreme Court "refers to such interest as prejudgment interest." Id. at 263. Eligibility for prejudgment interest is determined under the Restatement (Second) of Contracts, which provides in pertinent part:

11

> (1)  If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

Id. § 354 (1981).  Pennsylvania's Supreme Court has long adhered to that rule for the recovery of prejudgment interest as damages in breach of contract actions:

> "For over a century it has been the law of this Commonwealth that the right to interest on money owing upon contract is a legal right.  West Republic Mining Co. v. Jones & Laughlins, 108 Pa. 55 (1885).  That right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment. Palmgreen v. Palmer's Garage, Inc., 383 Pa. 105, 108, 117 A.2d 721, 722 (1955)."

Truserv Corp., 39 A.3d at 263 (quoting Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988) (adopting Section 354)); see also Penneys v. Pennsylvania R.R. Co., 183 A.2d 544 (Pa. 1962) (adopting Section 337(a) of the Restatement (First) of Contracts (1932), which was amended and renumbered as Section 354 in the Restatement (Second) of Contracts).

Under Section 354(1), an award of prejudgment interest is measured by the statutory legal rate of interest, 41 P.S. § 202.  Peterson v. Crown Fin. Corp., 661 F.2d 287, 293 (3d Cir. 1981) (citing Miller v. City of Reading, 87 A.2d 223 (Pa. 1952)).  Furthermore, an award "is not subject to a court's discretion."  Truserv Corp., 39 A.3d at 264 (citing Peterson, 661 F.2d at 293 (a court is "obligated to award 'simple interest at the statutory legal rate'" where "the plaintiff proves that the defendant breached a promise to pay 'a definite sum of money.'")).

 Also under Section 354(1), "a definite sum of money" or "a performance with fixed or ascertainable monetary value" will be found: "'where the damages are liquidated and certain, and the interest is readily ascertainable through computation.'"  Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 395-96 (3d Cir. 2000) (quoting Daset Mining Corp. v. Indus. Fuels Corp., 473 A.2d 584,

595 (Pa. Super. 1984)); <u>Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., Inc.</u>, 685 A.2d 141,

148 (Pa. Super Ct. 1996) (also quoting <u>Daset</u>, 473 A.2d at 595); <u>see also</u> <u>ECEM Europe Chem.</u>

<u>Mktg. B.V. v. Purolite Co.</u>, 451 F. App'x 73, 79 (3d Cir. 2011) (quoting <u>Spang & Co. v. USX Corp.</u>,

599 A.2d 978, 984 (Pa. Super. Ct. 1991)) (statutory rate of 6% per annum applies where "damages

are known or . . . ascertainable through mathematical calculations").  These requirements for proof

have been met here.

 The record establishes that Travelers breached its contractual duty to indemnify GRC for the

underlying settlements.  Travelers did so by disclaiming coverage based on the policies' "Asbestos

Exclusion," as was previously ruled, <u>see</u> <u>Gen. Refractories</u>, 2015 WL 918797, *2, 13 (E.D. Pa. Mar.

3, 2015).  GRC requests prejudgment interest on sums owed under its insurance contracts with

Travelers:  the stipulated sum of $21 million, which in turn comprises sums of principal owed by

GRC to the settled claimants.  The settlement agreements establish, and Travelers does not dispute,

that GRC's obligation to pay principal settlement amounts accrued on the date GRC received each

claimant's signed release.  At that time, each claimant settled for a definite, liquidated, and certain

sum that was recorded on the Queue.  Concurrently, Travelers' obligation to pay insurance proceeds

to GRC became fixed with an ascertainable monetary value.

 On June 10, 2002, GRC tendered the underlying claims to Travelers, along with the databases

that GRC was using to record information about the claims.  Travelers had the right to associate with

GRC and its other carriers in the defense and control of those claims.[6]  Travelers chose not to do so,

---

 [6]  The policies state that Travelers "shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding . . . ."  Section 4, Assistance and Cooperation.  Complete copies of the policies are docketed at multiple locations, <u>see, e.g.</u>: Def. Exs. 2, 3 (doc. nos. 649-4 at 7, 649-5 at 7), Def. Exs. 1, 2 (doc. nos. 650-3 at 7, 650-4 at 7), Def. Exs. 1, 2 (doc. nos. 651-3 at 7, 651-4 at 7).

electing instead to disclaim any duty to investigate or pay the claims.  On many occasions both before and after 2002, GRC fully informed Travelers of the details of the claims.  Travelers never requested any information as to GRC's methods for recording and settling the claims, and never objected to those methods until this litigation.  See Gen. Refractories, 2015 WL 3450391, *2-8 & n.3 (E.D. Pa. May 29, 2015) (history of GRC's tender of the claims).  During 2003 and early 2004, Travelers had everything it reasonably required in order to determine whether GRC should be indemnified for the underlying settlements.  Travelers chose not to indemnify GRC, withholding payment of the insurance proceeds then due and owing to GRC.

This record warrants an award of prejudgment interest based on Travelers' breach of its insurance contracts with GRC:

> The justification for an award of prejudgment interest is that because the defendant knew or at least could have learned the amount of his debt, he should have tendered that amount to the plaintiff.  Since he did not, and by failing to do so caused the delay of litigation, he has deprived the plaintiff of the use of that amount from the date of the breach to the date of the satisfaction of the judgment.

Frank B. Bozo, Inc. v. Elec. Weld Div. of the Fort Pitt Div. of Spang Indus., Inc., 498 A.2d 895, 898 (Pa. Super. 1985).  Because GRC made a demand for payment under the policies no later than June 10, 2002, and the settlement amounts owed by GRC to the underlying claimants were fully liquidated, certain, and readily ascertainable during 2003 to early 2004, GRC lost the use of that money and is legally entitled, as a matter of right, to prejudgment interest.  Palmgreen, 117 A.2d at 722.

### B.    GRC's Insurance Contracts With Travelers Do Not Preclude or Otherwise Limit an Award of Prejudgment Interest

Travelers asserts that the policies insure both the principal and the interest that GRC

promised to pay under the settlement agreements.  Travelers also asserts that GRC is not entitled to recover any amounts, either damages or prejudgment interest, in excess of the policies' combined limits of liability, $21 million.  See Def. Resp. at 2, 6.  Travelers is mistaken, for several reasons.

Pennsylvania's rules for the analysis of insurance contracts are "well established."  Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 163 (3d Cir. 2011).  The analysis "begins with the language of the policy."  Meyer, 648 F.3d at 163 (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).  "The "polestar of our inquiry, therefore, is the language of the policy."  Madison, 735 A.2d at 106.

Each  insurance contract between GRC and Travelers contains the same insuring agreement, which provides in pertinent part:

> AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.
>
> *       *       *
>
> "EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, . . . which is in excess of . . . the total of the applicable limits of liability . . . .

Policies, Section 2, Indemnity Agreement, Def. Resp., Exs. 2, 3 (doc. nos. 691-2, 691-3).  The policies, viewed as a whole, do not specify whether Travelers is or is not required to pay prejudgment interest in the event of insured loss or damage.  They are also silent as to whether Travelers is or is not required to indemnify GRC for any interest that GRC contracts to pay in settlement of claims.  They state that insured loss is "subject to the limits of liability," but nothing more is said about whether Travelers is liable for interest in excess of the stated limits.  Travelers acknowledges as much.  Id. at 5-6.

15

Neither side disputes that GRC is legally obligated to pay both principal and interest to the settled claimants.  However, Travelers contends that GRC's obligation to do so constitutes insured "EXCESS NET LOSS."  As Travelers states:  "The total amount of principal and interest provided for in the settlement agreements thus constitute EXCESS NET LOSS because they are 'sums' that GRC is 'legally obligated to pay . . . as damages on account of any one accident or occurrence . . . .'"  Def. Resp. at 6 (quoting Indemnity Agreement).  No further analysis or mention is made as to the terms, "EXCESS NET LOSS arising out of an accident or occurrence," which is further defined as "damages on account of any one accident or occurrence."  These are significant words that cannot be ignored. A "policy must be construed as a whole and its meaning construed according to its plain language." Meyer, 648 F.3d at 163 (citing Frog, Switch & Mfg. Co., Inc. v. The Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)).  This omission leads to basic error in Travelers' analysis.

There is a fundamental difference between Travelers' obligation to indemnify GRC for certain risks or perils, and Travelers' obligation to pay interest on money that it has withheld from GRC in breach of the insurance contracts.  Travelers and GRC are in a direct contractual relationship, and the policies establish the extent of Travelers' duty to indemnify GRC.  As plainly stated in the insuring agreement, Travelers agreed to indemnify GRC against loss or damage "arising out of an accident or occurrence" and "on account of any one accident or occurrence"– in this case, the claimants' bodily injury resulting from exposure to one of GRC's refractory products.  The "sums" insured are those that GRC is "legally obligated to pay" to third persons – here, the claimants.  In contrast, Travelers' liability for prejudgment interest does not arise out of, is not "on account of," and does not in any meaningful sense result from the claimants' bodily injury.  Instead, Travelers' liability for prejudgment interest is a consequence of its refusal to indemnify GRC against

the underlying claims.  Prejudgment interest is a liability imposed by law "to compensate for 'the fact that the breaching party has deprived the injured party of using interest accrued on money which was rightfully due and owing to the injured party.'"  Travelers Cas. & Sur. Co., 609 F.3d at 171, 172-73 (quoting Widmer Eng'g, Inc., 837 A.2d at 469); Palmgreen, 117 A.2d at 722.  Cf. SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N.C., 809 F. Supp. 2d 485, 494-95 (E.D. Va. 2011) (discussing this "fundamental difference" and holding that prejudgment interest "does not represent any liability on account of or for the accident or the policy" but is a liability imposed by law on proceeds that the insurer withheld in breach of the policy) (citation and internal quotation marks omitted).

In addition, Pennsylvania's supreme court has drawn a clear distinction between "contractual interest" and "prejudgment interest."  Truserv Corp., 39 A.3d at 260-61.  Where one party to a contract for the payment of money breaches the contract by failing to pay, there are two ways in which the nonbreaching party may recover interest on the amount owed:

> First, "[i]nterest may be reserved by the terms of the contract between the parties and is then called *conventional or contractual interest*." . . .
>
> Alternatively, where the parties to a contract have not specifically addressed the payment of interest in the terms of the contract, the nonbreaching party may recover, as damages, interest on the amount due under the contract. . . . as *prejudgment interest*.

Id. (citing 25 Williston on Contracts § 66:109 (4th ed.)) (emph. added in Truserv. Corp.); see 25 Williston on Contracts § 66:109  (citing Restatement (Second) of Contracts § 354);  Somerset Cmty. Hosp., 685 A.2d at 148 (quoting Section 354, comment a) (explaining that Section 354 "does not deal with the injured party's right to interest under the terms of a contract because '[i]f the parties have agreed on *the payment of interest*, it is payable not as damages but pursuant to a contract duty

that is enforceable.'") (emphasis in original).  Curiously, Travelers acknowledges this distinction, but misses its import.  See Def. Resp. at 9 (quoting Somerset, 685 A.2d at 148).

The obligation to pay four percent (4%) interest on unpaid settlement funds is a promise made by GRC to the settled claimants.  As between them, that "interest is said to become an integral part of the debt itself, and, therefore, is recoverable as of right under the terms of the contract." Truserv Corp., 39 A.2d at 261 (citing Restatement (Second) of Contracts § 354, cmt. a).  If GRC were to breach that promise, "a court's award of such interest in favor of the prevailing party is not discretionary."  Id. at 261-62, 264.  However, Travelers is a stranger to the settlement contracts. It cannot step into GRC's or the claimants' shoes to enforce those contracts.

Furthermore, GRC's legal obligation to pay four percent (4%) interest on unpaid settlement funds does not constitute insured "EXCESS NET LOSS."  GRC's promise to pay interest on unpaid settlement funds does not in any meaningful sense "aris[e] out of an accident or occurrence" and is not "on account of any one accident or occurrence" – in this case, the claimants' bodily injury. Instead, GRC's promise is a voluntary undertaking of a contractual duty to compensate the settling claimants for the time-value of money owed to them.  Importantly, Travelers never promised to provide indemnity for GRC's contractual liability to third persons.  No good reason has been presented that would permit Travelers to benefit from the settlement agreements.

Travelers conflates the settlement contracts with the insurance contracts, and further conflates GRC's contractual duty to pay interest to the claimants with Travelers' legal liability for prejudgment interest as a consequence of its breach of the insurance contracts.  In effect, Travelers proposes that the terms "contractual interest" and "prejudgment interest" should be read into the terms, "EXCESS NET LOSS," without any legal basis or support to be found in the record or in the plain language of

18

the policies.  That is not permissible:

> Words of "common usage" in an insurance policy are to be construed in their natural, plain, and ordinary sense . . . .
>
>> "Moreover, courts construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of 'interpreting' the policy.  If the terms of a policy are clear, this Court cannot rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used."

Allstate Fire & Cas. Ins. Co. v. Hymes, 29 A.3d 1169, 1172-73 (Pa. Super. Ct. 2011) (quoting Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 962 (Pa. Super. Ct. 2007), appeal denied, 946 A.2d 688 (Pa. 2008)).  Where the language of a policy "'is clear and unambiguous," as it is in this case, "a court is required to give effect to that language.'"  Meyer, 648 F.3d at 164 (quoting Madison, 735 A.2d at 106)).  Pennsylvania's supreme court has long held that rule, see Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983), which was recently reaffirmed, see Pa, Nat'l Mut. Cas. Ins. Co. v. St. John, 106 A.3d 1, 15 (Pa. 2014).  Here, the policies' insuring agreement simply does not insure Travelers' liability for prejudgment interest and does not insure GRC's liability for contractual interest owed to the claimants.

Travelers defends against liability for prejudgment interest on another ground.  Travelers contends that its does not owe anything more than the policies' combined limits of liability – the stipulated sum of $21 million, and  GRC is not entitled to recover any other amounts in excess of that sum.  Travelers cites a longstanding "general rule" that "absent an insurer's agreement to do so, an insurer is not liable for interest in excess of policy limits."  Incollingo v. Ewing, 379 A.2d 79, 84 (Pa. 1977); Def. Resp. at 5.  It is this sentence alone on which Travelers bases its argument that it cannot be required to pay prejudgment interest in excess of the policies' limits of liability.  No other authority is cited.  Taken as proffered in isolation, the sentence appears to support Travelers'

position.  Nonetheless, <u>Incollingo</u> does not so hold and does not bar prejudgment interest in excess of the policies' limits on the facts presented here.

In <u>Incollingo</u>, the insurers of three joint tortfeasors timely tendered a defense in a personal injury action.  One of the insurers paid all of the interest assessed by the court on the verdict that was rendered in favor of the claimant.  That insurer also indemnified its policyholder for the entire judgment that was entered against all three tortfeasors.  In a later action in garnishment, the question presented was whether the other insurers were required to pay some of the interest assessed on the verdict in addition to their limits of liability.  <u>Incollingo</u> affirmed "the general rule" that absent an insurer's agreement to do so, an insurer is not liable for interest in excess of policy limits.  <u>See</u> <u>Incollingo</u>, 379 A.2d at 84.  However, the insurers were found liable for interest in excess of their policy limits based on express promises in their insurance contracts to pay post-verdict interest.  As Pennsylvania's supreme court explains, <u>Incollingo</u> "merely held that a primary insurer that had contracted with its insured to pay post-judgment interest on verdicts was liable for all interest accruing on a verdict after it was entered."  <u>Walsh v. Med. Prof'l Liab. Catastrophe Loss Fund</u>, 838 A.2d 692, 700 (Pa. 2003); <u>see also</u> <u>Livornese, M.D. v. Med. Protective Co.</u>, 136 F. App'x 473, 479 (3d Cir. 2005) (<u>Incollingo</u> "held on a similarly worded contract that postjudgment interest is a cost of defense").  Contrary to Travelers' suggestion, <u>Incollingo</u> did not create a general rule that insurers are relieved of any legal obligation to pay prejudgment in excess of a policy's stated limit of liability.

<u>Incollingo</u>'s factual setting is wholly unlike the one presented here, where Travelers has breached its insurance contracts with GRC.  <u>Incollingo</u> is in line with a different category of cases, where the insurer has discharged its obligations by defending and paying a judgment against its policyholder, and then a claim is made that the insurer should pay pre- or post-judgment interest on

the claim asserted against the policyholder.  There is a crucial distinction between those cases and this case:  GRC directly sues Travelers to recover money that Travelers has wrongfully withheld from its policyholder as well as prejudgment interest accruing on that overdue money.  GRC stands in precisely the same position as other plaintiff insureds suing under liability, casualty, life, and fire insurance contracts to recover definite sums of overdue proceeds that are fixed, certain, and readily ascertainable.  In these cases, prejudgment interest in excess of the insurer's limits of liability has been awarded.  See, e.g., Trustees of the Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890, 908-09 (3d Cir. 1987); Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1178-80 (3d Cir. 1985) (finding a series of fire cases helpful and ruling that "prejudgment interest in insurance claims does not differ from other contractual disputes"); Howmet Aluminum Corp. v. Hartford Accident & Indem. Co., 665 F.2d 476, 479 (3d Cir. 1981) (policy limits "establish how much of the loss is covered, but they do not authorize withholding of monies due under the contract"); SunTrust Mortg., 809 F. Supp. 2d at 495-96 (rejecting a closely  analogous attempt to constrain prejudgment interest to the policy's limits).

### C.    Travelers May Not Reduce Its Liability for Prejudgment Legal Interest

Travelers proposes that any liability assessed for prejudgment interest should be reduced from Pennsylvania's statutory rate of six percent (6%) for legal interest to the contractual rate of four percent (4%) that GRC promised to pay the settled claimants.  See Def. Resp. at 8-10.  Travelers mistakenly asserts that Pennsylvania law supports this reduction.  Id. at 8-9.

Travelers cites three cases in addition to Somerset, 685 A.2d at 148 (discussed above), none

of which supports the proposed reduction.[7]  Basically, each case rules that when contracting parties have agreed to the payment of a specified rate of interest, that rate determines the amount of interest that is collectible after maturity or upon breach of the contractual obligation.  "A party may not recover interest pursuant to both the terms of the contract and Pennsylvania's statutory prejudgment interest provision."  Nutrition Mgmt. Servs. Co. v. Harborside Healthcare Corp., No. 01-902, 2005 WL 1176048, *5, 6-7 (E.D. Pa. May 17, 2005) (quoting 11 Arthur L. Corbin, Corbin on Contracts § 1045 (Joseph M. Perillo ed., interim rev. ed. 2002), and citing Am. Enka Co. v. Wicaco Mach. Corp., 686 F.2d 1050, 1056-57 (3d Cir. 1982)), aff'd, 181 F. App'x 315 (3d Cir. 2006).  This authority is inapposite.  GRC and Travelers never agreed to a specific rate of interest to be paid upon breach of the insurance contracts.  The policies do not specify any rate of interest.

Travelers asserts that application of the statutory rate "would lead to the recovery of a windfall."  See Def. Resp. at 9.  The record does not support this assertion.  GRC does not sue for a "double recovery" of both four percent (4%) contractual interest and six percent (6%) statutory legal interest.  The record also establishes that any money recovered will be paid to the underlying claimants with little, if anything at all, left for GRC.  On the other hand, Travelers has earned interest on the proceeds withheld from GRC for many years now, which benefit has been estimated to range between $14,405,016 and $66,994,796.  See Pl. Reply at 3-4 & n.2, Ex. 1 (doc. nos. 692, 692-1).

---

[7]  Travelers cites:  TIG Ins. Co. v. Tyco Int'l Ltd., 919 F. Supp. 2d 439, 473-74 (M.D. Pa. 2013), order amended (Apr. 8, 2013), appeal dismissed (3d Cir. Nos. 13-2134, 13-2288) (Nov. 20, 2013); Philadelphia Hous. Auth. v. Cedar Crestone, Inc., 562 F. Supp. 2d 653, 658-59 (E.D. Pa. 2008); Nutrition Mgmt. Servs. Co. v. Harborside Healthcare Corp., No. 01-902, 2005 WL 1176048, *5, 6-7 (E.D. Pa. May 17, 2005), aff'd, 181 F. App'x 315 (3d Cir. 2006).

**III.**     **Conclusion**

For the reasons set forth above, prejudgment interest will be awarded in addition to the stipulated damages of $21 million.  That interest will be calculated at Pennsylvania's six percent (6%) statutory rate for legal interest, as detailed in the Queue submitted by GRC (doc. no. 690).  A total judgment for damages plus prejudgment interest will be entered for GRC, and against Travelers, on the claims for breach of contract and declaratory relief stated in the Complaint.

An appropriate Order and Judgment accompanies this Memorandum.